UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

New Jersey Carpenters Health Fund, On Behalf of Itself and All Others Similarly Situated

Plaintiff,

-against-

NovaStar Mortgage Funding Trust, Series 2006-3, NovaStar Mortgage Funding Trust, Series 2006-4, NovaStar Mortgage Funding Trust, Series 2006-5, NovaStar Mortgage Funding Trust, Series 2006-6, NovaStar Mortgage Funding Trust, Series 2007-1, NovaStar Mortgage Funding Trust, Series 2007-2, NovaStar Mortgage Funding Corporation, Scott F. Hartman, Gregory S. Metz, W. Lance Anderson, Mark A. Herpich, The Royal Bank of Scotland Group, plc, Greenwich Capital Holdings, Inc., Greenwich Capital Markets, Inc. d/b/a RBS Greenwich Capital, Wachovia Securities, LLC, Deutsche Bank Securities, Inc., Moody's Investors Service, Inc., and The McGraw-Hill Companies, Inc.,

Defendants.

No.: 08-CV-5310 (DAB)
ECF Case

Oral Argument Requested

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 3

I. The Threshold Elements for CAFA Jurisdiction Are Satisfied ..... 3

II. Plaintiff's Attempt to Invoke an Exception to CAFA Jurisdiction is Expressly Precluded Under Second Circuit Law ..... 6

III. The Securities Act of 1933 Does Not Preclude Removal Under CAFA ..... 11

A. The Statutory Framework and Second Circuit Case Law Support Removal ..... 11
B. The Rule of Recency Further Supports Removal Jurisdiction ..... 15
C. The *Luther* Case Does Not Change This Result ..... 16

CONCLUSION ..... 19

**TABLE OF AUTHORITIES**

| **Cases** | Page |
|---|---|
| *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003) | 15n |
| *Brook v. UnitedHealth Group Inc.*, 2007 WL 2827808 (S.D.N.Y. Sept. 27, 2007) | 6 |
| *California Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004), *cert. denied*, 543 U.S. 1080 (2005) | *passim* |
| *Estate of Pew v. Cardarelli*, 527 F.3d 25 (2d Cir. 2008) | *passim* |
| *In re Global Crossing, Ltd. Securities Litigation*, 2003 WL 21659360 (S.D.N.Y. July 15, 2003) | 16 |
| *Gonsalves v. Amoco Shipping Co.*, 733 F.2d 1020 (2d Cir. 1984) | 13n |
| *In re Hulett Corp.*, 2008 WL 2357056 (Bankr. N.D. Ill. June 10, 2008) | 18n |
| *In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir. 1990) | 15 |
| *Luther v. Countrywide Home Loans Servicing, LP.*, 2008 U.S. Dist. LEXIS 26534 (C.D. Cal. Feb. 28, 2008) | 17, 18, 18n, 19, 19n, 20, 21n |
| *Luther v. Countrywide Home Loans Servicing, LP*, No. 08-55865, Slip Op. (9th Cir. July 14, 2008) | 17-20, 21n |
| *Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976) | 20 |
| **Court Filings** | |
| Brief for the Securities Industry and Financial Markets Association as *Amicus Curiae* in Support of Defendants-Appellants, Supporting Reversal, *Luther v. Countrywide Home Loans Servicing LP*, No. 08-55865 (9th Cir. June 13, 2008) | 17n, 18n |
| Brief of Appellants, *Luther v. Countrywide Home Loans Servicing, LP*, No. 08-55865 (9th Cir. June 9, 2008) | 20 |
| Brief of Appellees, , *Luther v. Countrywide Home Loans Servicing, LP*, No. 08-55865 (9th Cir. June 9, 2008) | 20 |
| **Statutes** | |
| Class Action Fairness Act of 2005 | |

                                                                                                | | Page |
|---|---|
| 28 U.S.C. § 1332 (c)(1) (2000) | 4 |
| § 1332 (d)(2) (2000) | 3, 15 |
| § 1332 (d)(6) (2000) | 4 |
| § 1332 (d)(9)(A) (2000), as amended | 6n, 7n, 12 |
| § 1332 (d)(9)(B) (2000), as amended | 6n, 7n |
| § 1332 (d)(9)(C) (2000), as amended | 6-12, 16, 17 |
| § 1453 (2000), as amended | 12, 19n |
| § 1453(d)(3) (2000), as amended | 6, 8, 11-12 |
| Judicial Code | |
| 28 U.S.C. § 1331 (2000) | 13n |
| 28 U.S.C. § 1441(a) (2000) | 14, 15n, 18n, 19n |
| 28 U.S.C. § 1441(c) (1982), as repealed by the Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5089 | 13n |
| 28 U.S.C. § 1441(c) (2000) | 13n |
| 28 U.S.C. § 1452(a) (2000) | 12-14, 16, 18, 19 |
| Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5089 | 13n |
| Securities Act of 1933 | |
| § 2(a)(1), 15 U.S.C. § 77b(a)(1) (2000), as amended | 6, 6n |
| § 11, 15 U.S.C. § 77k (2000), as amended | 3, 17 |
| § 12, 15 U.S.C. § 77l (2000), as amended | 3 |
| § 15, 15 U.S.C. § 77o (2000), as amended | 3 |
| § 22(a), 15 U.S.C. § 77v(a) (2000), as amended | 11-19 |
| Securities Litigation Uniform Standards Act | |
| § 22(a), 15 U.S.C. § 77v(a) (2000), as amended | 4, 11, 16, 18 |
| **Other Authorities** | |
| 151 Cong. Rec. H723 (daily ed. Feb. 17, 2005) | 5 |
| 151 Cong. Rec. S1086 (daily ed. Feb. 8, 2005) | 5 |
| 151 Cong. Rec. S1157 (daily ed. Feb. 9, 2005) | 20 |
| S. Rep. No. 109-14 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3 | 8 |

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

New Jersey Carpenters Health Fund, On Behalf of Itself and All Others Similarly Situated

Plaintiff,

-against-

NovaStar Mortgage Funding Trust, Series 2006-3, NovaStar Mortgage Funding Trust, Series 2006-4, NovaStar Mortgage Funding Trust, Series 2006-5, NovaStar Mortgage Funding Trust, Series 2006-6, NovaStar Mortgage Funding Trust, Series 2007-1, NovaStar Mortgage Funding Trust, Series 2007-2, NovaStar Mortgage Funding Corporation, Scott F. Hartman, Gregory S. Metz, W. Lance Anderson, Mark A. Herpich, The Royal Bank of Scotland Group, plc, Greenwich Capital Holdings, Inc., Greenwich Capital Markets, Inc. d/b/a RBS Greenwich Capital, Wachovia Securities, LLC, Deutsche Bank Securities, Inc., Moody's Investors Service, Inc., and The McGraw-Hill Companies, Inc.,

Defendants.

No.: 08-CV-5310 (DAB)
ECF Case

Oral Argument Requested

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

**INTRODUCTION**

Defendants' removal of this purported class action under the Class Action Fairness Act of 2005 ("CAFA") was entirely proper and Plaintiff's remand motion should be denied. CAFA's threshold elements — that the amount in controversy exceeds $5,000,000 and that "minimal diversity" exists — are both satisfied here. Plaintiff's remand motion offers no argument to the contrary. Nor does Plaintiff dispute that this case, arising as it does out of recent turmoil in the

subprime mortgage-backed securities market, involves issues of national importance — precisely the type of case for which CAFA was intended to provide federal jurisdiction. *See* Point I, *infra.*

Rather than contest the applicability of CAFA on its face, Plaintiff seeks remand based on two, equally unavailing, arguments.

***First***, Plaintiff argues that an exception to CAFA jurisdiction applies because, according to Plaintiff, the claims asserted involve "rights, duties and obligations" related to the mortgage-backed securities at issue. The argument is at direct odds with controlling authority from the Second Circuit, which holds that where, as here, the asserted claim arises out of purported misrepresentations in the marketing of securities, rather than the terms of the securities themselves, it does not "relate to" rights, duties, or obligations in the securities for purposes of the CAFA exception. That exception, therefore, does not apply. *See* Point II, *infra.*

***Second***, Plaintiff argues that anti-removal language in the Securities Act of 1933 (the "1933 Act"), adopted before CAFA, should preclude the exercise of jurisdiction even if CAFA would otherwise apply. This argument, too, is at odds with controlling Second Circuit authority, as well as with the general rule that when two statutes are in arguable conflict courts should give effect to the more recently enacted statute — here, CAFA. *See* Point III, *infra.*

In short, as demonstrated below, the requisite elements for removal under CAFA have been met and neither an exception to CAFA jurisdiction nor the anti-removal language of the 1933 Act preclude the exercise of jurisdiction by this Court. Plaintiff's motion to remand should accordingly be denied.

## BACKGROUND

Plaintiff's basic allegation, asserted on behalf of itself and other purchasers of various NovaStar Home Equity Loan Asset-Backed Certificates (the "NovaStar Certificates"), is that cer-

tain registration statements and prospectuses filed in connection with the offerings of the NovaStar Certificates contained misstatements and omissions in violation of Sections 11, 12 and 15 of the 1933 Act. *See* Complaint ¶¶ 1, 38, 42, 44, 75-106. The complaint names as defendants, *inter alia*, the issuing entity, the underwriters and the depositors for the offerings of the NovaStar Certificates. *See id.* ¶¶ 8-26. The complaint also asserts a Section 11 claim against two credit rating agencies that published credit ratings regarding tranches of the securities in the offerings: the Standard & Poor's division of The McGraw-Hill Companies, Inc., and Moody's Investors Services, Inc. *See id.* ¶¶ 27-28. Defendants The Royal Bank of Scotland Group, plc, Greenwich Capital Holdings, Inc., Greenwich Capital Markets, Inc. d/b/a RBS Greenwich Capital, Wachovia Capital Markets, LLC, sued herein as Wachovia Securities, LLC, and Deutsche Bank Securities, Inc., with the consent of the other defendants, removed this case on June 10, 2008, citing CAFA as the basis for jurisdiction. *See* Notice of Removal ¶¶ 3-9. Plaintiff now moves to remand on the basis that the removal was improper.

## ARGUMENT

### I. The Threshold Elements for CAFA Jurisdiction Are Satisfied

There is no dispute that the threshold elements for CAFA jurisdiction are met here. CAFA expands original federal jurisdiction to cover class actions where: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and (2) any member of a class of plaintiffs is a citizen of a State different from any defendant (*i.e.,* "minimal diversity"). *See* 28 U.S.C. § 1332(d)(2). Plaintiff alleges that the offerings of the NovaStar Certificates at issue totaled more than six billion dollars, that the certificates have decreased in value by 77% as a result of the disclosure of alleged material misstatements and omissions made by defendants, and that it reasonably believes there are thousands of members in the proposed class.

Complaint ¶¶ 1, 3, 30. The claims of individual members of the class are aggregated to determine the amount in controversy under CAFA, *see* 28 U.S.C. § 1332(d)(6), and thus there is no question that this requirement is satisfied. The minimal diversity requirement is also satisfied, as Plaintiff is a citizen of New Jersey, and Defendants Greenwich Capital Holdings, Inc. and Greenwich Capital Markets, Inc. d/b/a RBS Greenwich Capital are Delaware corporations with their principal places of business in Connecticut. Complaint ¶¶ 7, 23-24; Notice of Removal ¶ 8; *see* 28 U.S.C. § 1332(c)(1). Furthermore, Defendant The Royal Bank of Scotland Group, plc is a public limited company organized under the laws of the United Kingdom and headquartered in Edinburgh Scotland, Defendants Wachovia Capital Markets, LLC, sued herein as Wachovia Securities, LLC, and Deutsche Bank Securities, Inc., are Delaware corporations with their principal places of business in North Carolina and New York, respectively, and other defendants, on information and belief, are citizens of Kansas, Missouri, Delaware and New York. Complaint ¶¶ 8-20, 27-28; Notice of Removal ¶ 8.

Not only are the threshold elements satisfied, but removal of this case is entirely consistent with, and indeed furthers, CAFA's over-arching goal, described by the Second Circuit as follows:

> "to provide a federal forum for *securities cases that have national impact*, without impairing the ability of state courts to decide cases of chiefly local import or cases that concern traditional state regulation of the state's corporate creatures. CAFA does that by *expanding federal diversity jurisdiction*, by allowing removal of securities cases of national impact from the state courts . . . ."

*Estate of Pew v. Cardarelli*, 527 F.3d 25, 26 (2d Cir. 2008) (emphasis added). Indeed, the Second Circuit has held that a review of the Securities Litigation Uniform Standards Act ("SLUSA") and CAFA "confirms *an overall design to assure that the federal courts are available for all securities cases that have national impact* (including those that involve securities traded on na-

tional exchanges)." *Id.* at 32 (emphasis added); *see also id.* (subject to CAFA's exceptions "diversity jurisdiction is created under CAFA for all large, non-local securities class actions").[1]

The Second Circuit's holding is exactly aligned with the Congressional intent in enacting CAFA. CAFA's legislative history confirms that CAFA's jurisdictional provisions "should be read broadly, with a strong preference that interstate class actions should be heard in a Federal court if removed by any defendant." *See, e.g.,* 151 CONG. REC. H723, H727 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner); 151 CONG. REC. S1086, S1099 (daily ed. Feb. 8, 2005) (statement of Sen. Kohl) (when a case "involves a national problem, it is only fitting that the case be heard in federal court"); 151 CONG. REC. S1086, S1103 (daily ed. Feb. 8, 2005) (statement of Sen. Grassley, the author of the bill stating: "Why should a State county court be deciding these kinds of class action cases that impact people all across the country? Of course, that just doesn't make sense to me; hence, the authorship of this legislation.").

Plaintiff itself alleges that this is a securities class action involving issues of national importance and, therefore, the type of case CAFA was meant to address. *See* Complaint ¶ 35 (stating that "[c]urrently the *United States* is ensnared in a financial crisis" arising from the issuance of debt securities collateralized with mortgages which were improperly underwritten or originated, and that "[t]he Plaintiff and Class as purchasers of the Certificates have been the victims of just such negligent practices . . . .") (emphasis added).

---

1 The Second Circuit's statement that SLUSA and CAFA confirm the existence of a federal forum for "all securities cases that have national impact (*including* those that involve securities traded on national exchanges)," *Pew*, 527 F.3d at 32 (emphasis added), is of particular significance. By so stating, the Second Circuit confirms that CAFA expands federal jurisdiction beyond SLUSA's reach of cases involving securities traded on national exchanges. Indeed, following the enactment of CAFA, federal jurisdiction extends to *all* securities cases that have national impact "including," but in no way limited to, those covered by SLUSA.

In short, Defendants have met their initial burden of establishing removal jurisdiction under CAFA. The exercise of that jurisdiction here is entirely consistent with CAFA's purpose.

## II. Plaintiff's Attempt to Invoke an Exception to CAFA Jurisdiction is Expressly Precluded Under Second Circuit Law

Rather than contest the satisfaction of CAFA's threshold elements, Plaintiff argues in favor of an exception to federal jurisdiction. *See* Plaintiff's Memorandum of Law in Support of its Motion to Remand ("Pl. Br.") at 5-9. Because the threshold elements for CAFA jurisdiction have been met, it is Plaintiff's burden to demonstrate the applicability of an exception to CAFA's removal jurisdiction. *See Brook v. UnitedHealth Group Inc.*, 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007) ("[T]he party opposing the exercise of the Court's established jurisdiction bears the burden of demonstrating that a CAFA exception exists.") (collecting cases).

Plaintiff cannot meet its burden. Indeed, as detailed below, the exceptions to which Plaintiff appeals — 28 U.S.C. § 1332(d)(9)(C) and 28 U.S.C. § 1453(d)(3) — are, under recent Second Circuit precedent, ***not*** applicable where, as here, the core of the underlying claim is that securities were marketed on the basis of alleged misrepresentations or omissions.

Sections 1332(d)(9)(C) and 1453(d)(3), which are identical in their terms, except from the jurisdiction of the federal courts an action "that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 and the regulations issued thereunder)."[2] According

---

2 The NovaStar Certificates qualify as a security within the meaning of Section 2(a)(1) of the 1933 Act. *See* Pl. Br. at 2 n.3.

CAFA also excepts from the jurisdiction of the federal courts any claim (a) concerning a "covered security" under SLUSA, or (b) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the state in which such corporation or business enterprise is incorporated or organized. *See* 28 U.S.C. §

Footnote continued on next page.

to Plaintiff, this exception applies here because this action "challenges the representations made in a Registration Statement and Prospectus" and its claims "relate solely to the rights, duties, and obligations relating to or covered by the Certificates, issued by Defendants pursuant to the Registration Statement and Prospectuses, which Plaintiff and other class members purchased." Pl. Br. at 6-7.

The Second Circuit's holding in May of this year in *Pew*, 527 F.3d at 26, directly disposes of Plaintiff's argument. In *Pew*, plaintiffs alleged that officers of an issuer of debt certificates, abetted by the issuer's auditor, failed to disclose that the issuer was insolvent while marketing the certificates. Plaintiffs sought relief under New York's consumer fraud statute, and initially filed suit in New York State Supreme Court. Defendants removed the action under CAFA, and plaintiffs moved to remand the case to state court, arguing that their suit fell within the § 1332(d)(9)(C) exception. The district court agreed and remanded the case to state court.

The Second Circuit reversed, concluding that the § 1332(d)(9)(C) exception "cannot be read to cover any and all claims that relate to any security." *Id.* at 30-31. The Second Circuit continued:

> "The . . . Certificates - which the parties agree are 'securities' under CAFA - certainly create 'obligations,' and therefore corresponding 'rights' in the holders. . . . But the present suit does not 'relate[] to' those rights; rather, it is a state law consumer fraud action alleging that [defendant] fraudulently concealed its insolvency when it peddled the Certificates. Claims that 'relate[] to the rights . . . and obligations' 'created by or pursuant to' a security *must be claims grounded in the terms of the security itself*, the kind of claims that might arise where the interest rate was pegged to a rate set by a bank that later merges into another bank, or where a bond series is discounted, or where a failure to negotiate replacement credit results in a

Footnote continued from previous page.

1332(d)(9)(A) and (B). Plaintiff does not contend that either of these exceptions is applicable here. *See* Pl. Br. at 5-6.

> default on principal. *The present claim - that a debt security was fraudulently marketed by an insolvent enterprise - does not enforce the rights of the Certificate holders as holders, and therefore it does not fall within § 1332(d)(9)(C) and § 1453(d)(3).*"

*Id.* at 31-32 (alterations in original) (emphasis added). The court held that § 1332(d)(9)(C) and § 1453(d)(3) "should be reserved for 'disputes over the meaning of the terms of the security,'" and thus concluded that the § 1332(d)(9)(C) exception "appl[ies] only to suits that *seek to enforce the terms of instruments that create and define securities*, and to duties imposed on persons who administer securities." *Id.* at 33 (citing S. Rep. No. 109-14, at 45 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 42-43) (emphasis added); *see also* S. Rep. No. 109-14, at 45 ("The subsection 1332(d)(9) exemption to new section 1332(d) jurisdiction is . . . intended to cover disputes over the meaning of the terms of a security, which is generally spelled out in some formative document of the business enterprise, such as a certificate of incorporation or a certificate of designations.").

*Pew* is directly applicable here. The core claim in this case is that the members of the purported class purchased the NovaStar Certificates in reliance upon a registration statement and prospectuses that, according to Plaintiff, contained material misstatements and omissions in violation of the 1933 Act. *See* Complaint ¶¶ 1, 38, 42, 44. Plaintiff alleges that the registration statement issued in connection with the offerings "contained misstatements and material omissions including in connection with the underwriting of the collateral mortgages," and that the registration statement "contained misstatements and material omissions including that 'credit risk' and 'quality control' were materially disregarded." *Id.* ¶¶ 39-42. Plaintiff further alleges that the prospectuses at issue "contained material misstatements of fact and omitted facts necessary to make the facts stated therein not misleading . . . ." *Id.* ¶¶ 43-44. Plaintiff further alleges that the misrepresentations and omissions have resulted in a substantial collapse in the value of

the NovaStar Certificates. *Id.* ¶ 74. Plaintiff does ***not*** allege that any terms of the securities themselves were violated.[3]

Plaintiff's allegations, then, are indistinguishable from those at issue in *Pew*. In both, plaintiffs sought relief for having purchased debt instruments allegedly in reliance upon purported misrepresentations and omissions contained in the offering documents. *See id.* ¶¶ 34-62; *Pew*, 527 F.3d at 27. Plaintiff itself characterizes the nature of the claims as founded upon the registration statements for the NovaStar Certificates, which allegedly "omitted and/or misrepresented information about the underlying mortgages and the borrowers under those mortgages." *See* Pl. Br. at 3. *Pew* squarely holds that claims of this sort do not qualify for the § 1332(d)(9)(C) exception. *See* 527 F.3d at 30-33. *Pew* therefore precludes Plaintiff from invoking the § 1332(d)(9)(C) exception here.

Plaintiff's conclusion that the § 1332(d)(9)(C) exception applies because "the language of the statute creating the right to bring this action and the obligations of the sellers to plaintiff purchasers is clear," *see* Pl. Br. at 7, completely ignores *Pew* and is therefore meritless. The Second Circuit in *Pew* specifically rejected plaintiffs' claim that the right to bring an action under the 1933 Act is a basis for triggering § 1332(d)(9)(C). *See Pew*, 527 F.3d at 31 (rejecting plaintiffs' argument "that the term 'rights . . . relating to . . . any security' includes the right to bring any cause of action that relates to a security" because that interpretation would "defeat any limitation

---

3 The fact that the prospectuses included ratings of various tranches or classes of certificates does not change this analysis. Such ratings are not "terms" of the securities because they do not create any specific rights that are enforceable by the purchasers. Rather, they are simply additional alleged misrepresentations in the prospectuses upon which the Plaintiff purportedly relied in deciding to purchase the NovaStar Certificates. *See* Complaint ¶¶ 43-44 ("The statements contained [in the prospectuses] – and the initial ratings themselves – contained material misstatements of fact and omitted facts necessary to make the facts stated therein not misleading . . . .").

that was intended by the use of the term" and "this interpretation would render superfluous § 1332(d)(9)(A) (excepting class actions 'concerning a covered security') and § 1453(d)(1) (same), because all 'covered securities' are (of course) 'securities'") (alteration in original). The *Pew* court also made clear that claims that relate to the "rights . . . and obligations" "created by or pursuant to" a security, under § 1332(d)(9)(C), "must be claims grounded in the terms of the security itself, the kind of claims that might arise where the interest rate was pegged to a rate set by a bank that later merges into another bank, or where a bond series is discontinued, or where a failure to negotiate replacement credit results in a default on principal." *Pew* holds that a claim such as the one Plaintiff here makes, that "a debt security was fraudulently marketed," does not enforce the rights of the Certificate holders as holders, and therefore it does not fall within § 1332(d)(9)(C). *See id.* at 31-32.

In its remand motion, Plaintiff makes only the most cursory effort to distinguish *Pew*, the sum and substance of which is that, according to Plaintiff, *Pew* is not applicable because the plaintiff there sought relief under New York's consumer fraud law, whereas here Plaintiff seeks relief under the 1933 Act. *See* Pl. Br. at 10. *Pew*, however, is clear that the applicability of the § 1332(d)(9)(C) exception is based upon the nature of the allegations in the complaint, not the substantive law upon which the cause of action is founded, and the result in *Pew* had nothing to do with the fact that plaintiffs there brought suit under New York law. *See* 527 F.3d at 32 ("The *present claim* – that a debt security was fraudulently marketed by an insolvent enterprise – does not enforce the rights of the Certificate holders as holders, and therefore it does not fall within § 1332(d)(9)(C) and § 1453(d)(3).") (emphasis added). Indeed, the Second Circuit made clear in *Pew* that a complaint previously filed by the plaintiffs alleging violations of the 1933 Act had been dismissed with prejudice, at which point the plaintiffs "amended the complaint *to plead es-*

*sentially the same acts of concealment* under New York's consumer fraud law." *Id.* at 27 (emphasis added). Nor is it of any particular significance that "there was no countervailing federal statute which precluded the removal" in *Pew, see* Pl. Br. at 10, as the existence or non-existence of such a statute — whatever its relevance to the propriety of removal more generally — has no bearing on whether Plaintiff has met its burden of establishing the applicability of § 1332(d)(9)(C).

In short, Plaintiff has not sustained its burden of demonstrating the applicability of a CAFA exception. Neither § 1332(d)(9)(C) nor § 1453(d)(3) provides a basis for remanding this action to state court.

## III. The Securities Act of 1933 Does Not Preclude Removal Under CAFA

### A. The Statutory Framework and Second Circuit Case Law Support Removal

Plaintiff's remaining argument — that, because the NovaStar Certificates fall within the 1933 Act's definition of a security, Section 22(a) of the Act authorizes remand of this action to state court, *see* Pl. Br. at 8-9 — does nothing to undermine the propriety of Defendants' removal under CAFA.

Section 22(a) authorizes concurrent jurisdiction in state and federal courts for actions arising under the 1933 Act. *See* 15 U.S.C. § 77v(a). Section 22(a) also states that, with the exception of certain claims under SLUSA, "no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." *Id.* Plaintiff argues that because its claims are rooted in the 1933 Act, and the securities at issue do not qualify for the SLUSA exception, removal was inappropriate. Pl. Br. at 4, 8-9.[4]

---

4 Plaintiff also cites to portions of the Senate Report on CAFA and contends that CAFA's excep-

Footnote continued on next page.

The specific CAFA removal provision applicable here, 28 U.S.C. § 1453, enacted over 70 years after the 1933 Act, grants broad additional jurisdiction for class actions that meet its threshold elements. Nothing in CAFA suggests that Congress intended to exclude from CAFA's reach claims brought under statutes that have anti-removal provisions. There is, for example, no exception for cases arising under the 1933 Act, even though 1933 Act claims are often made in the class action context. This absence is more conspicuous given that Congress *did* exempt from CAFA the specific securities-related claims enumerated in §§ 1332(d)(9)(A) & (C). The clear implication of CAFA's framework is that all other securities-related claims (*i.e.*, ones that do not fall within the enumerated exceptions) *are* subject to CAFA and therefore removable, assuming (of course) that the statute's amount in controversy and minimal diversity requirements are satisfied. *See* 28 U.S.C. §§ 1332(d)(9)(A) & (C).

The Second Circuit has considered this very issue — how the anti-removal provision of the 1933 Act intersects with a conflicting federal statute conferring additional removal jurisdiction on the federal courts — and ruled in favor of removal. In *California Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004), *cert. denied*, 543 U.S. 1080 (2005), the Second Circuit considered whether a federal district court could exercise jurisdiction over claims brought under the 1933 Act in light of the tension between Section 22(a) and 28

---

Footnote continued from previous page.

tions "were designed to be *consistent with* the Securities Act as amended by SLUSA." *See* Pl. Br. at 6 n.6 (emphasis in original). The portions of the Senate Report highlighted by Plaintiff address only the intent of Congress to leave SLUSA itself undisturbed. Accordingly, CAFA expressly carves out claims covered by SLUSA. Congress made no such attempt to carve out *all* claims asserted under the 1933 Act from CAFA's removal jurisdiction, although it could have easily done so. This makes clear that Congress had no intent to limit CAFA in the manner Plaintiff now suggests.

U.S.C. § 1452(a), which permits removal of claims that are "related to" a bankruptcy case. After determining that § 1452(a), like CAFA, contained no exception for federal claims that are otherwise nonremovable under an Act of Congress, the Second Circuit held:

> "[W]hen an anti-removal provision such as Section 22(a) is invoked, the threshold question is whether removal is being effectuated by way of the general removal statute, 28 U.S.C. § 1441(a), or by way of a separate removal provision that 'grants *additional* removal jurisdiction in a class of cases which would not otherwise be removable under the prior grant of authority.' If removal is being effectuated through a provision that confers *additional* removal jurisdiction, and that provision contains no exception for nonremovable federal claims, the provision should be given full effect."

368 F.3d at 107 (emphasis in original).[5]

The Second Circuit further held that, because § 1452(a) authorized a broad grant of jurisdiction, so long as the two "enumerated exceptions" to § 1452(a) were not implicated, "Section 1452(a) confers removal jurisdiction over *all* claims 'related to' a bankruptcy case," including claims asserted under the 1933 Act. *Id.* at 96-97, 107-08. The Second Circuit reasoned that, because § 1452(a) did not "contain an exception for claims arising under an Act of Congress that otherwise prohibits removal," the "absence of such a *crucial exception* . . . suggests that . . .

---

[5] The Second Circuit cited to *Gonsalves v. Amoco Shipping Co.*, 733 F.2d 1020 (2d Cir. 1984). *See WorldCom*, 368 F.3d at 107. In *Gonsalves*, the court held that an expressly nonremovable Jones Act claim that was joined with a claim for unseaworthiness and a maintenance and cure claim was not removable pursuant to a pre-1990 version of 28 U.S.C. § 1441(c), which permitted removal of an entire case "whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action." *Gonsalves*, 733 F.2d at 1021; *see* 28 U.S.C. § 1441(c) (1982). The *Gonsalves* court interpreted a version of § 1441(c) that was in effect prior to the enactment of the Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5089, and to the extent that *Gonsalves* relied upon the pre-1990 version of § 1441(c), it has been superseded by statute. The current version of § 1441(c) only permits removal of generally nonremovable claims when they are joined with a claim that falls within the federal question jurisdiction conferred by 28 U.S.C. § 1331. *See* 28 U.S.C. § 1441(c). Defendants have not invoked § 1441(c) in removing this action to this Court. *See* Notice of Removal ¶¶ 3-9.

when it originally enacted Section 1452(a) as part of the Bankruptcy Code, Congress did not intend for Section 22(a) and its analogues to bar removal of 'related to' claims." *Id.* at 106 (emphasis added).

The *WorldCom* court's reasoning in relation to bankruptcy removal applies with equal force to CAFA removal. The bankruptcy removal provisions represent an affirmative decision by Congress to *extend* federal jurisdiction to a particular type of case that might not otherwise qualify for federal jurisdiction. Similarly, Congress enacted CAFA to extend federal jurisdiction to class actions that had not previously been removable to federal court, in recognition of the fact that class actions of national importance should not be decided in local courts. In both the bankruptcy code and CAFA, Congress enumerated the exceptions to this expansion of federal jurisdiction. Neither the bankruptcy code nor CAFA excepted 1933 Act claims from the reach of the expanded jurisdiction of the federal courts. Nor does this reading of CAFA and Section 22(a) entirely eliminate the prohibition on removal in Section 22(a). For example, removal of cases arising under the 1933 Act that are non-class actions or that do not meet CAFA's diversity or amount in controversy requirements is *still* prohibited from being removed by Section 22(a). In fact, it is Plaintiff's reading of CAFA and Section 22(a) that would frustrate the intention of Congress (and, if extended as it logically should be to the bankruptcy removal provisions, the Second Circuit's holding in *WorldCom*). Allowing the prohibition found in the 1933 Act to apply to cases that meet CAFA's threshold jurisdictional elements and are not subject to one of the statute's exceptions would *reverse* Congress' affirmative decision to extend federal jurisdiction to cover those matters.

That the *WorldCom* holding should apply in the CAFA context is illustrated perfectly in this case. Defendants removed this action not based upon the general removal statute, § 1441(a),

but rather CAFA. *See* Notice of Removal ¶¶ 4-8. The Second Circuit has specifically held that CAFA "expand[s] federal diversity jurisdiction . . . by allowing removal of securities cases of national impact from the state courts." *Pew*, 527 F.3d at 26. Moreover, CAFA does so "in a class of cases which would not otherwise be removable under the prior grant of authority" by permitting removal under circumstances where there exists only minimal diversity between the parties. *WorldCom*, 368 F.3d at 107 (internal quotation and citation omitted); *see* 28 U.S.C. § 1332(d)(2). CAFA does not exclude from its reach otherwise nonremovable federal claims or claims brought under statutes with anti-removal provisions. As the Second Circuit has held, the "absence of such a crucial exception" suggests that, when CAFA was enacted, "Congress did not intend for Section 22(a) and its analogues to bar removal" of claims arising under the 1933 Act where CAFA's threshold jurisdictional requirements have otherwise been satisfied. *WorldCom*, 368 F.3d at 106. Accordingly, CAFA's removal provisions "should be given full effect." *Id.* at 107.[6]

**B. The Rule of Recency Further Supports Removal Jurisdiction**

To the extent a conflict exists between the 1933 Act and CAFA, it is well established that courts "must give effect to the most recently enacted statute since it is the most recent indication of congressional intent." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 991 (2d Cir. 1990). "Ordi-

6 Plaintiff's reliance on *Breuer v. Jim's Concrete, Inc.*, 538 U.S. 691 (2003) (*see* Pl. Br. at 8), is puzzling, as that case did not interpret Section 22(a) and in fact concluded that the action there was properly removed to federal court. *Breuer* involved the question of whether a provision in the Fair Labor Standards Act authorizing an action to be maintained against any employer "in any Federal or State court of competent jurisdiction" provided an express exception to the general authorization of removal under 28 U.S.C. § 1441(a), a question which the Supreme Court answered in the negative. 538 U.S. at 693-94, 699-700 (internal quotation marks and citation omitted); *see* 28 U.S.C. § 1441(a) (authorizing removal of any case that could have been brought originally in federal court "[e]xcept as otherwise expressly provided by Act of Congress"). *Breuer*, therefore, has no relevance to the present issue, as it interpreted neither CAFA nor Section 22(a).

narily, the more recently enacted statute will control where it conflicts with a prior law." *In re Global Crossing Ltd. Securities Litigation*, 2003 WL 21659360, at *3 (S.D.N.Y. July 15, 2003). Here, that statute is CAFA.

The issue in *Global Crossing*, as in *WorldCom*, was whether Section 22(a) precluded removal of cases arising under the 1933 Act under the bankruptcy removal statute, § 1452(a). *Id.* at *1. The plaintiffs there initially filed an action arising under the 1933 Act in state court, which was removed to federal court under § 1452(a). *Id.* The plaintiffs moved to remand, and the court denied the motion, holding that,

> "[b]ecause the bankruptcy removal statute, *which is more recent than the Securities Act*, does not include among its listed exceptions one for actions filed under the Securities Act, and because plaintiff's claims could conceivably affect the . . . bankruptcy proceedings and therefore are sufficiently related to those proceedings to create federal bankruptcy jurisdiction, plaintiff's motion for remand will be denied."

*Id.* (emphasis added). The court concluded that, because § 1452(a) was Congress' "most recent 'indication of [its] intent'" on the matter at issue, "Section 22(a)'s earlier prohibition on removal of state-court suits, and its apparent purpose of respecting the plaintiff's choice of a state forum, must be given lower priority." *Id.* at *3.

Congress enacted CAFA on February 18, 2005, while Section 22(a) was enacted in 1933 and most recently amended as part of SLUSA in 1998. The stated purpose of CAFA was to broaden, not narrow, federal jurisdiction. *See Pew*, 527 F.3d at 26. The rule of recency thus provides further support to the conclusion that CAFA controls over Section 22(a). *Global Crossing*, 2003 WL 21659360, at *3.

**C. The *Luther* Case Does Not Change This Result**

Plaintiff cites no authority from this Circuit that supports either the application of § 1332(d)(9)(C) in these circumstances or the assertion that Section 22(a) of the 1933 Act should

"trump" the more recent expression of Congressional intent in CAFA. Instead, Plaintiff essentially relies on a non-binding decision from the United States District Court for the Central District of California — *Luther v. Countrywide Home Loans Servicing, LP*, 2008 U.S. Dist. LEXIS 26534 (C.D. Cal. Feb. 28, 2008), *aff'd*, No. 08-55865, Slip Op. (9th Cir. July 14, 2008). *See* Pl. Br. at 9-10. In *Luther*, as here, the complaint was initially filed in state court alleging violations of the 1933 Act. Defendants removed the action and plaintiffs sought remand. In granting the remand motion, the *Luther* court made clear more than once that it was *not* deciding the central issue in *Pew* and that raised by Plaintiff's first argument here — the applicability of the exception to CAFA jurisdiction found in § 1332(d)(9)(C). *Id.* at *3 n.2, *10. As already demonstrated, the law in this Circuit is crystal clear: that exception does not apply to this case. *Luther* does not hold to the contrary.

Instead, the *Luther* court held that Section 22(a) should preclude CAFA's subsequent grant of extended jurisdiction. In so holding, the *Luther* court rejected defendants' argument that the lack of an express exclusion of 1933 Act claims from CAFA meant that the grant of jurisdiction in CAFA should be given full effect. *Id.* at *9. On appeal, the Ninth Circuit affirmed the district court's decision, adopting the argument that Section 22(a) controls because it is more specific than CAFA, and holding that *Pew* is not controlling because it addressed a state law claim rather than a Section 11 claim. *See Luther v. Countrywide Home Loans Servicing, LP*, No. 08-55865, Slip Op. at 7 (9th Cir. July 14, 2008).[7] The Ninth Circuit, however, completely ig-

---

7 This Court should note that the Securities Industry and Financial Markets Association ("SIFMA") filed an *amicus* brief in support of the reversal of the district court's opinion ordering remand of the *Luther* case to state court. *See* Brief for the Securities Industry and Financial Markets Association as *Amicus Curiae* in Support of Defendants-Appellants, Supporting Reversal, *Luther v. Countrywide Home Loans Servicing LP*, No. 08-55865 (9th Cir. June 13, 2008). The brief filed

Footnote continued on next page.

nored the Second Circuit's declaration in *Pew* that SLUSA and CAFA confirm the existence of a federal forum for all securities cases that have a national impact.

The *Luther* decisions are directly at odds with controlling Second Circuit precedent from *WorldCom*, and are thus of no force here.[8] As detailed above (*supra* at Section III.A), in *WorldCom*, the Second Circuit found the absence of an express exclusion in the bankruptcy removal provision to be dispositive of the question of whether Section 22(a) should "trump" a later extension of removal jurisdiction by Congress. The Second Circuit found that, because § 1452(a) did not "contain an exception for claims arising under an Act of Congress that otherwise prohibits removal," the "*absence of such a crucial exception* . . . suggests that . . . when it originally enacted Section 1452(a) as part of the Bankruptcy Code, Congress did not intend for Section 22(a) and its analogues to bar removal of 'related to' claims." *WorldCom*, 368 F.3d at 106 (emphasis added). Neither *Luther* decision even cites to *WorldCom*. Thus, Plaintiff's reliance on *Luther* is misplaced.[9]

---

Footnote continued from previous page.

by SIFMA, which represents "the shared interests of more than 650 securities firms, banks and asset managers," further demonstrates the national importance of cases like the present one involving substantial public offering of securities that are not traded on a national exchange and thus, not covered under SLUSA. *Id.* at 1; *see also id.* at 2 (noting that the issue of the application of CAFA to such cases "is an issue of exceptional importance to the entire securities industry").

8 It is beyond dispute that a district court is bound only by the precedent of its own Circuit. A district court, therefore, cannot adopt a Court of Appeals' decision in another Circuit where, as here, its own Circuit has rejected the reasoning on which that decision was based. *See, e.g., In re Hulett Corp.*, 2008 WL 2357056, at *2, *5 (Bankr. N.D. Ill. June 10, 2008) (declining to follow a Fifth Circuit decision on the very issue before the court involving the interpretation of an Act of Congress where "Seventh Circuit panels have specifically rejected the reasoning upon which [the Fifth Circuit decision] is based" and the Fifth Circuit decision was "contrary to" Seventh Circuit authority interpreting the "purpose of" the Act of Congress at issue).

9 It is worth noting that, while *Luther* addresses the question of CAFA's applicability in 1933 Act cases, the opinion addresses removal under 28 U.S.C. § 1441(a), and suggests that defendants in

Footnote continued on next page.

The courts in *Luther* also rested their decisions on the view that Section 22(a) was "more specific" than CAFA. That finding, too, is incompatible with the law in this Circuit. In *WorldCom*, the Second Circuit held that Section 22(a) was not more specific than § 1452(a). In reaching this conclusion, the court held that § 1452(a) and Section 22(a) (like CAFA) apply to a class of claims. The court further found that the class of claims covered by Section 22(a) was "no more specific than the class of claims covered by Section 1452(a)," reasoning that, "just as Section 1452(a) applies to many claims that are not brought under the 1933 Act, Section 22(a) applies to many claims that are not 'related to' a bankruptcy." *WorldCom*, 368 F.3d at 102; *see also id.* at 103 ("Section 22(a) does not cover only a subset of the universe of claims that are 'related to' a bankruptcy case; rather, it applies to numerous claims that are in no way 'related to' a bankruptcy, just as Section 1452(a) applies to numerous claims that are not brought under the 1933 Act."). The same reasoning applies to a comparison between Section 22(a) and CAFA. Section 22(a) covers (*i.e.*, precludes removal of) more than just the subset of 1933 Act cases that are class actions of national importance, just as CAFA applies to numerous claims that are not brought under the 1933 Act. Neither of the *Luther* courts applied the *WorldCom* framework for analyzing the issue of specificity.

---

Footnote continued from previous page.

that case removed thereunder. 2008 U.S. Dist. LEXIS 26534, at *1, *8. Section 1441(a) authorizes removal for any case that could have been brought originally in federal court "[e]xcept as otherwise expressly provided by Act of Congress." 28 U.S.C. § 1441(a). Defendants here have not removed pursuant to § 1441(a), but rather § 1453. *See* Notice of Removal. Section 1453 does not contain the exception found in § 1441(a). Thus, it appears the *Luther* court focused upon a provision that has not even been invoked as a basis for removal here, rendering *Luther* all the more inapplicable.

The Second Circuit in *WorldCom* also concluded that, even if it were to find that Section 22(a) covered a more "specific" group of claims than § 1452(a), Section 22(a) would not necessarily control because, "where the application of a specific statute would 'unduly interfere' with the operation of a general statute that was enacted subsequent to the specific statute, the more general statute controls." *Id.* at 103 (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 156 (1976)). Neither *Luther* court sought to determine whether the application of Section 22(a) would "unduly interfere" with the operation of CAFA, as is required by both *Radzanower* and *WorldCom* when determining which of two statutes which are arguably in conflict is controlling. *Luther*, 2008 U.S. Dist. LEXIS 26534; *Luther*, 08-55865, Slip. Op. (9th Cir. July 14, 2008); *see WorldCom*, 368 F.3d at 103 (quoting *Radzanower*, 426 U.S. at 156). Indeed, it does not appear that the issue was even raised to the Ninth Circuit. *See* Brief of Appellants, *Luther v. Countrywide Home Loans Servicing, LP*, No. 08-55865 (9th Cir. June 9, 2008); Brief of Appellees, *Luther v. Countrywide Home Loans Servicing, LP*, No. 08-55865 (9th Cir. June 9, 2008). The *Luther* decisions, therefore, contravene both Supreme Court and Second Circuit authority on this issue.

In any event, there is no question that applying Section 22(a) as did the courts in *Luther* would "unduly interfere" with the Congressional intent underlying the passage of CAFA, as it would strip the federal courts of jurisdiction over all large class actions arising under the 1933 Act that would otherwise satisfy CAFA's jurisdictional requirements and "national importance" scope. Plaintiffs could thereafter bring large, nation-wide class actions alleging solely 1933 Act violations, thereby avoiding the jurisdiction of the federal courts. Congress enacted CAFA to avoid that very result. *See* 151 CONG. REC. S1157, S1179 (daily ed. Feb. 9, 2005) (statement of Sen. Hatch) (CAFA "would alleviate many of the problems present in the current class action

system by allowing truly national class actions to be filed in or removed to Federal court"); *see also Pew*, 527 F.3d at 26 (CAFA provides "a federal forum for *securities cases that have national impact*, without impairing the ability of state courts to decide cases of chiefly local import or cases that concern traditional state regulation of the state's corporate creatures. CAFA does that by *expanding federal diversity jurisdiction*, by allowing removal of securities cases of national impact from the state courts . . . .") (emphasis added).[10]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand the instant action to state court should be denied.

Dated: July 24, 2008

Respectfully submitted,

James G. Gamble
Jgamble@stblaw.com
Thomas C. Rice
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: 212-455-2000
Facsimile: 212-455-2502

*Attorneys for The Royal Bank of Scotland Group, plc, Greenwich Capital Holdings, Inc., Greenwich Capital Markets, Inc. d/b/a RBS Greenwich Capital, Wachovia Capital*

---

10 The repeated acknowledgement in *Pew* that CAFA provides a federal forum for class actions having a national impact further undermines Plaintiff's reliance on *Luther*. The District Court's opinion in *Luther* contains not one reference to CAFA's legislative history setting forth the statute's purpose to provide a federal forum for class actions having a national impact, and the Ninth Circuit's opinion mentions it only once and very briefly. *See Luther v. Countrywide Home Loans Servicing, LP*, No. 08-55865, Slip Op. at 6 (9th Cir. July 14, 2008). Inasmuch as *Pew* has divined from the legislative history of CAFA a purpose for the statute different from that focused upon by the *Luther* courts, the reasoning of *Pew* controls.

Floyd Abrams
Susan Buckley
Adam Zurofsky
Tammy L. Roy
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, NY 10005
Telephone: 212-701-3000
Facsimile: 212-269-5420

*Attorneys for Defendant The McGraw-Hill Companies, Inc.*

James J. Coster
Joshua M. Rubins
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, 11th Floor
New York, NY 10169
Telephone: 212-818-9200
Facsimile: 212-818-9606

*Attorneys for Defendant Moody's Investors Service, Inc.*

Floyd Abrams
Susan Buckley
Adam Zurofsky
Tammy L. Roy
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, NY 10005
Telephone: 212-701-3000
Facsimile: 212-269-5420

*Attorneys for Defendant The McGraw-Hill Companies, Inc.*

James J. Coster
Joshua M. Rubins
SATERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, 11th Floor
New York, NY 10169
Telephone: 212-818-9200
Facsimile: 212-818-9606

*Attorneys for Defendant Moody's Investor Service, Inc.*

Daniel P. Jaffe
dan.jaffe@huschblackwell.com
HUSCH BLACKWELL SANDERS, LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105-3441
Telephone: 314-480-1820
Facsimile: 314-480-1505

*Attorneys for Defendants NovaStar Mortgage Funding Trust, Series 2006-3, NovaStar Mortgage Funding Trust, Series 2006-4, NovaStar Mortgage Funding Trust, Series 2006-5, NovaStar Mortgage Funding Trust, Series 2006-6, NovaStar Mortgage Funding Trust, Series 2007-1, NovaStar Mortgage Funding Trust, Series 200 7-2, NovaStar Mortgage Funding Corporation, Scott F. Hartman, Gregory S. Metz, W. Lance Anderson, and Mark A. Herpich*