UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

New Jersey Carpenters Health Fund, On Behalf of
Itself and All Others Similarly Situated

                   Plaintiff,

       -against-

NovaStar Mortgage Funding Trust, Series 2006-3,
NovaStar Mortgage Funding Trust, Series 2006-4,
NovaStar Mortgage Funding Trust, Series 2006-5,
NovaStar Mortgage Funding Trust, Series 2006-6,
NovaStar Mortgage Funding Trust, Series 2007-1,
NovaStar Mortgage Funding Trust, Series 2007-2,
NovaStar Mortgage Funding Corporation, Scott F.
Hartman, Gregory S. Metz, W. Lance Anderson,
Mark A. Herpich, The Royal Bank of Scotland
Group, plc, Greenwich Capital Holdings, Inc.,
Greenwich Capital Markets, Inc. d/b/a RBS
Greenwich Capital, Wachovia Securities, LLC,
Deutsche Bank Securities, Inc., Moody's Investors
Service, Inc., and The McGraw-Hill Companies,
Inc.,

                 Defendants.

-------------------------------------------------------------X

No.: 08-CV-5310 (DAB)
ECF Case

## DECLARATION OF JAMES G. GAMBLE IN SUPPORT OF DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

I, JAMES G. GAMBLE hereby declare under penalty of perjury the following:

1.     I am a partner of the law firm Simpson Thacher & Bartlett LLP, counsel for Defendants The Royal Bank of Scotland Group, plc, Greenwich Capital Holdings, Inc., Greenwich Capital Markets, Inc. d/b/a RBS Greenwich Capital, Wachovia Capital Markets, LLC, sued herein as Wachovia Securities, LLC, and Deutsche Bank Securities, Inc., in the above-captioned action.  I submit this declaration in support of Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Remand.

2.      Attached hereto as Exhibit A is a true and correct copy of the Brief for the Securities Industry and Financial Markets Association as *Amicus Curiae* in Support of Defendants-Appellants, Supporting Reversal, in *Luther v. Countrywide Home Loans Servicing LP*, No. 08-55865 (9th Cir. June 13, 2008).

3.      Attached hereto as Exhibit B is a true and correct copy of the Brief of Defendants-Appellants, in *Luther v. Countrywide Home Loans Servicing, LP*, No. 08-55865 (9th Cir. June 9, 2008).

4.      Attached hereto as Exhibit C is a true and correct copy of the Brief of Plaintiff-Appellee, in *Luther v. Countrywide Home Loans Servicing, LP*, No. 08-55865 (9th Cir. June 9, 2008).

I hereby declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Date: July 24, 2008

James G. Gamble

# EXHIBIT A

No. 08-55865

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID H. LUTHER, Individually and On Behalf of All Others Similarly Situated,

*Plaintiff-Appellee,*

*v.*

COUNTRYWIDE HOME LOANS SERVICING, LP, *et al.,*

*Defendants-Appellants.*

On Appeal From The United States District Court
For The Central District of California, No. Civ. 07-8165
Honorable Mariana R. Pfaelzer

# BRIEF FOR THE SECURITIES INDUSTRY AND FINANCIAL MARKETS ASSOCIATION AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS-APPELLANTS, SUPPORTING REVERSAL

Ira D. Hammerman
Kevin M. Carroll
SECURITIES INDUSTRY AND
FINANCIAL MARKETS
ASSOCIATION
1101 New York Avenue, NW
Washington, DC 20005
(202) 962-7382

John R. Oller
David M. Stoltzfus
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019-6099
(212) 728-8000

Richard D. Bernstein
WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, DC 20006-1238
(202) 303-1000

Attorneys for Securities Industry and
Financial Markets Association

## CORPORATE DISCLOSURE STATEMENT

The Securities Industry and Financial Markets Association is not a publicly traded corporation. It has no parent corporations and no publicly traded corporation owns more than 10% of its stock.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................... ii

INTEREST OF THE *AMICUS CURIAE* ................................................ 1

PRELIMINARY STATEMENT .......................................................... 2

ARGUMENT ...................................................................................... 6

THE DISTRICT COURT ERRONEOUSLY HELD THAT SECTION 22(a) BARRED REMOVAL OF PLAINTIFF'S SECURITIES CLAIMS. ...................... 6

    A.    Plaintiff's Purported Application of Section 22(a) to Prevent Removal under CAFA is Contrary to Legislative Intent and the Policy Objectives of CAFA. ................................................. 6

    B.    The Plain Terms of CAFA Permit Removal. ...................................... 11

    C.    CAFA is the More Recent and Specific Statute. ................................ 16

    D.    Allowing Removal in these Circumstances Best Harmonizes the Statutes in Question. .................................................................... 20

CONCLUSION .................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Brody v. Homestore, Inc.*, 240 F. Supp. 2d 1122 (C.D. Cal. 2003) ........................ 10

*California Public Employees' Retirement System v. Worldcom, Inc.*, 368
   F.3d 86 (2d Cir. 2004) ................................................ 15, 16, 18, 19

*Carpenters Pension Trust for S. Cal. v. Ebbers*, 299 B.R. 610 (C.D. Cal.
   2003) ................................................................................. 16

*Colo. & Wyo. Ry. Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, Civ. A. C-
   5582, 1974 WL 964 (D. Colo. Oct. 2, 1974)...................................... 13

*Estate of Pew v. Cardarelli*, No. 06-5703-mv, 2008 WL 2042809 (2d Cir.
   May 13, 2008)....................................................................... 4, 8, 12

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) ...................... 17

*Glacier Bay Kee Leasing Co. v. McGahan*, 944 F.2d 577 (9th Cir. 1991)............. 17

*Hesselman v. Arthur Anderson LLP (In re Global Crossing Ltd. Sec. Litig.)*,
   No. 02 Civ. 910 GEL, 2003 WL 21659360 (S.D.N.Y. July 15, 2003)............ 16

*In re King Pharms., Inc.*, 230 F.R.D. 503 ................................................ 10

*Momeni v. Chertoff*, 521 F.3d 1094 (9th Cir. 2007) ................................. 20

*Pac. Life Ins. Co. v. J.P. Morgan Chase & Co.*, No. SA CV 03-813GLT
   (ANX), 2003 WL 22025158 (C.D. Cal. June 20, 2003) ................................. 16

*Rabkin v. Or. Health Sciences Univ.*, 350 F.3d 967 (9th Cir. 2003)...................... 20

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976) ....................................... 19

*Stoneridge Invest. Partners, LLC. v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761
   (2008)................................................................................. 6

**Cases**                                                                              **Page(s)**

*Transcon Lines v. Sterling Press (In re Transcon Lines)*, 58 F.3d 1432 (9th
       Cir. 1995).................................................................................................. 13, 20

*Tucker v. Alexandroff*, 183 U.S. 424 (1901) ............................................ 13

*United States v. Estate of Romani*, 523 U.S. 517 (1998) ........................ 17

*Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078 (9th Cir. 2007)............. 12

**Rules and Statutes**

15 U.S.C. § 77v(a) (2008) ..........................................................*passim*

28 U.S.C. § 1441 (2008)................................................................ 14

28 U.S.C. § 1452(a) (2008) .................................................. 15, 16, 18

28 U.S.C. § 1453 (2008)................................................................ 11

28 U.S.C. § 1711 (2008)................................................................. 7

The Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4
       (2008) (codified at 28 U.S.C. § 1332(d)) ................................*passim*

The Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109
       Stat. 737 (codified at 15 U.S.C. § 78u-4)............................... 10, 19

The Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-
       353, 112 Stat. 3227 (codified at 15 U.S.C. §§ 78p(c) & 78bb(f)(2)
       (2008)) .........................................................................*passim*

**Legislative History**

149 Cong. Rec. H5282 (daily ed. June, 2003) ........................................ 14

H.R. Rep. No. 104-50 (1995) ......................................................... 5

S. Rep. No. 109-14 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3 ...................*passim*

**Other Authorities**                                                                    **Page(s)**

Commission on the Regulation of U.S. Capital Markets in the 21st Century,
   Report and Recommendations (2007),
   http://www.capitalmarketscommission.com/portal/capmarkets/default.ht
   m) ...................................................................................................... 5

Cornerstone Research, Securities Class Action Case Filings (*2007: A Year
   in Review*) (2008),
   http://cornerstone.com/pdf/practice_securities/2007YIR.pdf. ............................ 2

Interim Report of the Committee on Capital Markets Regulation (Dec. 5, 2006),
http://www.capmktsreg.org/pdfs/11.30Committee_Interim_ReportREV2.pdf.... 2, 6

Sarah S. Vance, *A Primer on the Class Action Fairness Act of 2005*, 80 Tul.
   L. Rev. 1617 (2006)............................................................................. 6

The Securities Industry and Financial Markets Association ("SIFMA") respectfully submits this brief as *amicus curiae* in support of Defendants-Appellants, supporting reversal of the district court's order granting remand. This *amicus* brief is submitted pursuant to the motion of SIFMA filed contemporaneously with this brief pursuant to Fed. R. App. P. 29.

### INTEREST OF THE *AMICUS CURIAE*

SIFMA brings together the shared interests of more than 650 securities firms, banks and asset managers. SIFMA's mission is to promote policies and practices that work to expand and perfect markets, foster the development of new products and services and create efficiencies for member firms, while preserving and enhancing the public's trust and confidence in the markets and the industry. SIFMA works to represent its members' interests locally and globally. It has offices in New York, Washington D.C., and London and its associated organization, the Asia Securities Industry and Financial Markets Association, is based in Hong Kong.

Many of SIFMA's members serve as underwriters for, or otherwise participate in, securities offerings and, as such, they have a vital interest in the issues raised by this appeal. SIFMA regularly files *amicus* briefs in cases with broad implications for financial markets, and frequently has appeared as *amicus*

*curiae* in this Court. *See, e.g., Safron Capital Corp. v. Leadis Tech. Inc.,* No. 06-15623, 2008 WL 1776407 (9th Cir. Apr. 18, 2008); *Cent. Laborers Pension Fund v. Merix Corp. (In re Merix Corp. Sec. Litig.),* No. 06-35894, 2008 WL 1816423 (9th Cir. Apr. 22, 2008); *Simpson v. Homestore.com, Inc.,* 519 F.3d 1041 (9th Cir. 2008); *Hadachek v. UBS Fin. Serv., Inc.,* No. 06-35769.[1]

Given the ongoing volatility of the financial markets, the concomitant increase in securities class action filings that has already occurred over the past year[2] and the growing consensus that securities litigation risks are adversely affecting the competitiveness of the U.S. capital markets,[3] this is an issue of exceptional importance to the entire securities industry.

## PRELIMINARY STATEMENT

The pending appeal, concerning a $300 billion public offering of securities, presents an issue that is vitally important to *amicus curiae.* SIFMA's members are engaged in the capital raising and formation process. Central to that process is a

---

[1] Among SIFMA's 650 members are various Underwriter Appellants, for whom SIFMA's counsel for this brief, Willkie Farr & Gallagher LLP, has served as counsel from time to time on various matters. Willkie Farr represents only SIFMA in this action.

[2] *See* Cornerstone Research, Securities Class Action Case Filings (*2007: A Year in Review*), at 6 (2008), http://cornerstone.com/pdf/practice_securities/2007YIR.pdf.

[3] *See* Interim Report of the Committee on Capital Markets Regulation (Dec. 5, 2006), http://www.capmktsreg.org/pdfs/11.30Committee_Interim_ReportREV2.pdf.

statutory scheme under which plaintiffs bringing multi-billion dollar class action suits based on the federal securities laws are required to bring those suits in federal court. It is only in federal court where, as is the case here, numerous and overlapping securities actions can be consolidated before a single judge for coordinated handling, thereby preventing wasteful and duplicative discovery and inconsistent rulings by state courts.

Plaintiff's position in this action would wreak havoc with the policy objectives underlying the statutory schemes at issue in this case – securities law and nationwide class actions. As the district court observed, Plaintiff here "has stretched every pleading limit to remain in state court." But the district court erroneously rewarded Plaintiff's tactical maneuver to avoid bringing his lawsuit within the scope of the Class Action Fairness Act of 2005.[4] CAFA mandates that nationwide class actions, including securities actions, be removable to federal court, except in limited circumstances, not present here, involving truly local controversies or state corporate governance matters, or those already covered by SLUSA.[5] Together, CAFA and SLUSA evince congressional intent that securities claims are a matter of particular federal concern and seek to concentrate such

---

[4] Pub. L. No. 109-2, 119 Stat. 4 (codified at 28 U.S.C. § 1332(d) (2008) ("CAFA").

[5] The Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 (codified at 15 U.S.C. §§ 78p(c) & 78bb(f)(2) (2008)).

litigation in the federal courts where Congress "firmly believes that such cases properly belong."[6] As the Second Circuit held just last month, CAFA takes SLUSA's expansion of federal class action jurisdiction a step further, providing an alternative, diversity-based source of federal jurisdiction for "all securities cases that have national impact" but which, for one reason or another, do not fall within SLUSA's grant of expanded federal question jurisdiction. *See Estate of Pew v. Cardarelli*, No. 06-5703-mv, 2008 WL 2042809, at *6 (2d Cir. May 13, 2008).

Section 22(a), the provision of the Securities Act of 1933 ("'33 Act") on which Plaintiff relied to avoid removal,[7] was enacted long before the development of the modern class action device as well as the multiplicity of nationwide securities class action suits. The '33 Act's prohibition on the removal of "cases" arising under that Act must, under established principles of statutory construction, yield to the more recent and more specific admonition in CAFA that "*any . . . class action*" meeting CAFA's requirements, including, with certain exceptions, any securities class action, be brought in federal court.[8] Permitting Plaintiff, and other class action plaintiffs, to pursue their claims in various state courts would create

---

[6] *See* S. Rep. No. 109-14 (2005), at 5, *reprinted in* 2005 U.S.C.C.A.N. 3, 6 ("Senate CAFA Report"). Citations to the Senate CAFA Report in this brief are to the U.S.C.C.A.N. page(s), unless otherwise indicated.

[7] 15 U.S.C. § 77v(a) (2008) ("Section 22(a)").

[8] *See* 28 U.S.C. § 1332(d) (2008).

real potential for inconsistent rulings on law and fact, thereby undermining the

strong federal interest in maintaining uniformity and integrity in the interpretation

and application of the federal securities laws.

Affirmance of the district court's order would also increase the risks and

costs associated with underwriting a national securities offering, as securities

industry participants would be forced to defend sprawling litigation in multiple

state jurisdictions around the country.  It would thus contribute to making access to

U.S. capital markets more expensive as investors bear the higher transaction costs

to compensate financial institutions for soaring expenses.  Foreign markets – which

limit or prohibit private class actions – are becoming more attractive to both U.S.

and foreign companies, depriving American investors of *bona fide* investment

opportunities.[9]  The end result:  securities class-action litigation, which is already

---

[9] *See* H.R. Rep. No. 104-50, at 20 (1995) ("Fear of [securities] litigation keeps
companies out of the capital markets."); *see also* Commission on the Regulation of
U.S. Capital Markets in the 21st Century, Report and Recommendations, at 30
(2007), http://www.capitalmarketscommission.com/portal/capmarkets/default.htm)
(follow "Download Full Report" hyperlink) ("[I]nternational observers
increasingly cite the U.S. legal and regulatory environment as a critical factor
discouraging companies and other market participants from accessing the U.S.
markets.").

cited as a key deterrent to foreign issuers considering entry into U.S. markets,[10]

would continue to sabotage the competitive footing of U.S. capital markets.

## ARGUMENT

**THE DISTRICT COURT ERRONEOUSLY HELD THAT SECTION 22(a) BARRED REMOVAL OF PLAINTIFF'S SECURITIES CLAIMS.**

> **A.    Plaintiff's Purported Application of Section 22(a) to Prevent Removal under CAFA is Contrary to Legislative Intent and the Policy Objectives of CAFA.**

Allowing plaintiffs to defeat federal jurisdiction over securities class actions

through tactical pleading devices is directly contrary to the intent of Congress and

policy objectives of CAFA. There is no doubt that CAFA's general purpose was to

significantly expand federal court jurisdiction over multistate class action

litigation. As one federal judge has commented, "CAFA represents the largest

expansion of federal jurisdiction in recent memory." Sarah S. Vance, *A Primer on*

--------------------------------------------------

[10] Interim Report of the Committee on Capital Markets Regulation, at 11 (Dec. 5, 2006),
http://www.capmktsreg.org/pdfs/11.30Committee_Interim_ReportREV2.pdf
("Foreign companies commonly cite the U.S. class action enforcement system as the most important reason why they do not want to list in the U.S. market."); *see also Stoneridge Invest. Partners, LLC. v. Scientific-Atlanta, Inc.*, 128 S. Ct 761, 772 (2008) (citing "practical consequences" of increased risks from securities claims as "raising the costs of doing business," and noting that "[o]verseas firms with no other exposure to our securities laws could be deterred from doing business here . . . [t]his, in turn, may raise the cost of being a publicly traded company under our law and shift securities offerings away from domestic capital markets").

*the Class Action Fairness Act of 2005*, 80 Tul. L. Rev. 1617, 1643 (2006).[11] And as the Senate Judiciary Committee Report accompanying the bill that became CAFA emphasized, there are "numerous problems with our current class action system . . . . One key reason for these problems is that most class actions are currently adjudicated in state courts, where the governing rules are applied inconsistently (frequently in a manner that contravenes basic fairness and due process considerations) and where there is often inadequate supervision over litigation procedures and proposed settlements." Senate CAFA Report at 5; *see id.* at 6 ("Because interstate class actions typically involve more people, more money, and more interstate commerce ramifications than any other type of lawsuit, the Committee firmly believes that such cases properly belong in federal court.").

The drafters of CAFA intended that the statute "preserve primary state court jurisdiction over primarily local matters." *Id.* at 7. But this case is not one of those matters. It concerns a national offering of $300 billion in securities, thousands of investors from across the country, defendant underwriters that the complaint describes as "global" financial services, investment banking and securities firms, and damages claims running potentially into the billions. This is precisely the sort

---

[11] *See also* 28 U.S.C. § 1711 (2008) (Historical and Statutory Notes) (purposes of CAFA include to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction").

of case that Congress believes properly belongs in federal court. *See Estate of Pew*, 2008 WL 2042809, at *6 ("Review of SLUSA and CAFA confirms an overall design to assure that the federal courts are available for all securities cases that have national impact . . . .").

Contrary to what Plaintiff contends, Congress's objective in CAFA was more than just "salvaging diversity actions." (Plaintiff's Brief at 25.) To be sure, one aim of CAFA was to prevent the sort of artful pleading that Plaintiff has engaged in here. But the legislative history indicates a broader goal: CAFA "makes it harder for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction, *creates efficiencies in the judicial system by allowing overlapping and 'copycat' cases to be consolidated in a single federal court,* [and] *places the determination of more interstate class action lawsuits in the proper forum – the federal courts.*" Senate CAFA Report at 6 (emphasis added).

Indeed, a particular policy objective of CAFA, directly relevant to this case, was to facilitate coordination of multiple and overlapping class actions by providing a federal forum where they can be consolidated for discovery and other pre-trial proceedings, avoiding duplication and the potential for inconsistent rulings. As the Senate CAFA Report noted:

> [F]ederal courts can coordinate "copy cat" or overlapping class actions . . . . [I]t is not uncommon to see twenty, thirty, or even 100 class actions filed on the same subject matter . . . . When these similar, overlapping class actions

-8-

> are filed in state courts of different jurisdictions, there is
> no way to consolidate or coordinate the cases. The result
> is enormous waste, to say nothing of the unfairness.

Senate CAFA Report at 49.[12]

Numerous securities class action suits against Countrywide and its affiliates,

as well as a number of the underwriter defendants, alleging misrepresentations and

omissions in connection with loan origination practices and risks associated with

the mortgage securities publicly offered by Countrywide, are pending and have

been consolidated in the district court for the Central District of California. These

class actions (some of them brought by Plaintiff's counsel on this appeal) involve

various combinations of claims under the '33 Act as well as the Securities

Exchange Act of 1934 ("'34 Act") and state common law. The *Luther* case that is

subject to this appeal is an outlier in that it alleges only '33 Act claims, was

brought in state court and, because the mortgage pass-through certificates at issue

do not meet the statutory definition of "covered securities," could not be removed

under SLUSA.[13]  Yet because many of the practices and misrepresentations it

---

[12] "In contrast, if overlapping or similar class actions are filed against the same defendant in two or more different federal courts, the multidistrict litigation process (established by 28 U.S.C. § 1407) permits the transfer and consolidation of those cases to a single judge. The federal court multidistrict litigation system regularly consolidates multiple overlapping class actions in this manner, preventing the waste that occurs in state courts." Senate CAFA Report at 49.

[13] As the district court noted, a split of authority exists over whether SLUSA permits removal of securities claims brought exclusively under the '33 Act, even if

alleges are similar to those alleged in the consolidated federal actions, there

necessarily would be overlapping discovery between the *Luther* case and the other

securities class actions involving Countryside securities, and different judicial

decisions on common issues of law and fact, if *Luther* remains in state court.

Allowing cases such as *Luther* to escape CAFA removal would incentivize

securities class action plaintiffs to bring their cases in state court and limit their

claims to those arising under the '33 Act. As a result, plaintiffs would be able to

proceed in one state court with their '33 Act claims while other claims involving

largely the same factual and legal issues (including both '33 Act and '34 Act

claims, which are often brought together) proceed in different state and federal

courts on different discovery and pre-trial schedules and before different judges.

That is not what Congress had in mind when it passed CAFA. To the contrary,

CAFA, as well as SLUSA and the PSLRA, evince a preference for concentrating

securities litigation in federal courts. The waste, duplication and conflicting

outcomes that inevitably would result from litigating the same matters in multiple

---

a "covered" security is involved. (Op. at 3 n.4.) Those decisions allowing SLUSA
removal refute the notion that Section 22(a) provides an "absolute" choice of
forum for plaintiffs asserting solely '33 Act claims. *See, e.g., Brody v. Homestore,
Inc.*, 240 F. Supp. 2d 1122, 1123 (C.D. Cal. 2003) (permitting SLUSA removal of
class action asserting violations of '33 Act); *In re King Pharms., Inc.*, 230 F.R.D.
503, 505 (E.D. Ten. 2004) (same). In any event, where non-covered securities are
involved, CAFA provides federal jurisdiction over class actions alleging '33 Act
claims.

courts across the country would increase litigation costs, undermine the strong federal interest in maintaining uniformity and integrity in the interpretation and application of the federal securities laws, and leave unchecked the abuses in state court class action litigation that Congress sought to avoid.

### B.    The Plain Terms of CAFA Permit Removal.

CAFA provides that "the district courts shall have original jurisdiction of *any* civil action in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, *and is a class action*," so long as it otherwise meets the requirements of CAFA and does not fall within specific exceptions, including specific types of securities claims. *See* 28 U.S.C. § 1332(d)(2) (emphasis added); 28 U.S.C. § 1453 (providing that a "class action" may be removed to federal court). Under the plain meaning of CAFA, then, *all* class actions are removable with only six enumerated exceptions, only one of which has even been argued by Plaintiff to apply here.

Three of CAFA's exceptions turn on such factors as the citizenship of the defendants and the place of injury and are not relevant here.[14] The other three exceptions, contained in 28 U.S.C. § 1332(d)(9), are for class actions involving claims (A) solely concerning a "covered security" as defined in the '33 Act and '34 Act (which claims are already governed by SLUSA); (B) solely relating to the

---

[14] *See* 28 U.S.C. §§ 1332(d)(3); (d)(4)(A); (d)(4)(B).

internal affairs or corporate governance of a corporation arising under the law of its

state of incorporation; and (C) solely relating to "the rights, duties (including

fiduciary duties), and obligations relating to or created by or pursuant to *any*

security" (*i.e.*, including any non-covered security not governed by SLUSA)

(emphasis added).  It is only this latter exception, found in 28 U.S.C. §

1332(d)(9)(C), which Plaintiff claims to apply here.[15]

　　Plaintiff effectively seeks to engraft a seventh exception into CAFA for

securities class action claims brought in state court solely under the '33 Act.  The

problem with this assertion is CAFA contains no such exception and the court may

not create one.  *See Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1084

(9th Cir. 2007) ("The canon of statutory construction *expressio unius est exclusio*

*alterius* . . . 'creates a presumption that when a statute designates certain persons,

things, or manners of operation, all omissions should be understood as

exclusions.'") (quoting *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885

(9th Cir. 2005) (en banc)).

---

[15] SIFMA agrees with Defendants-Appellants and with the Second Circuit's recent decision in *Estate of Pew* that the 28 U.S.C. § 1332(d)(9)(C) exception is inapplicable because Plaintiff's claims in this case do not concern the terms of the mortgage securities themselves, but rather disclosure duties externally imposed by the federal securities laws.

Congress was presumed to know of the '33 Act non-removal provision (Section 22(a)) when it enacted CAFA. *See Transcon Lines v. Sterling Press (In re Transcon Lines)*, 58 F.3d 1432, 1440 (9th Cir. 1995) ("We have repeated time and time again that 'Congress must be presumed to have known of its former legislation . . . and to have passed . . . new laws in view of the provisions of the legislation already enacted.'") (omission in original) (quoting *Hellon & Assoc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992)). Had it wanted to, Congress could have simply provided in CAFA that securities actions brought solely under the '33 Act are not removable. It did not.

That omission is particularly telling, and the "*expressio unius*" canon has special force, given that CAFA's enumerated list of exceptions *do* include certain specified securities claims, and specifically refer to the '33 Act. *See* 28 U.S.C. §§ 1332(d)(9)(A), (C). Having specifically addressed the subject matter of the exceptions to removability of securities cases in CAFA, Congress cannot be presumed to have intended other exceptions involving the very same subject matter. *See Tucker v. Alexandroff*, 183 U.S. 424, 436 (1901) ("Upon general principles applicable to the construction of written instruments, the enumeration of certain powers with respect to a particular subject-matter is a negation of all other analogous powers with respect to the same subject-matter . . . . [t]he rule is curtly stated in the familiar legal maxim, *Expressio unius est exclusio alterius*."); *Colo. &*

-13-

*Wyo. Ry. Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, Civ. A. C-5582, 1974 WL 964, at *10 (D. Colo. Oct. 2, 1974) ("[W]hile there may be cases calling for an *implied* antitrust immunity arising from other sections of the [Interstate Commerce] Act, such an implication is inappropriate where, as here, express immunity is provided for agreements dealing with the same subject matter. *Expressio unius est exclusio alterius*.")[16]

Even without adding a seventh exception to CAFA for securities class actions brought in state court solely under the '33 Act, Congress might have accomplished the same thing by inserting a "savings clause" into CAFA's removal provision, 28 U.S.C. § 1453, for claims arising under other Acts of Congress that explicitly prohibit removal. Significantly, 28 U.S.C. § 1441(a), the general removal statute, provides that state court cases over which the district courts have original jurisdiction may be removed, "Except as otherwise expressly provided by Act of Congress." 28 U.S.C. § 1441(a) (2008). But no such savings clause was included in the CAFA removal statute.

_____

[16] Thus, contrary to Plaintiff's argument (Plaintiff's Br. at 22 n.15), the floor statement by a CAFA proponent that CAFA "*specifically* excludes *a number* of Federal securities and State-based corporate fraud lawsuits" (149 Cong. Rec. H5282 (daily ed. June, 2003) (statement of Rep. Sensenbrenner) (emphasis added), *supports* the conclusion that only certain enumerated exceptions were intended.

Thus, in *California Public Employees' Retirement System v. Worldcom, Inc.*, 368 F.3d 86 (2d Cir. 2004), the Second Circuit held that the anti-removal provision of the '33 Act did *not* trump the bankruptcy removal statute (28 U.S.C. § 1452(a)), which permits removal of any claim "related to a bankruptcy case." The Second Circuit reasoned that, unlike the general removal statute (28 U.S.C. § 1441(a)), the bankruptcy removal statute "contains no exception for claims arising under an Act of Congress that prohibits removal." *Id.* at 90. Similar to CAFA, the bankruptcy removal statute "contains just two enumerated exceptions" that were inapplicable in *Worldcom*. *Id.* at 98. The enumeration of specific exceptions, together with the absence a savings clause of the type contained in Section 1441(a) (which the court viewed as "crucial"), led the Second Circuit to conclude that the supposedly "absolute choice of forum" created by Section 22(a) did not preclude removal of securities claims related to a bankruptcy case. *Id.* at 92, 106-08.

As the *Worldcom* court held, "when an anti-removal provision such as Section 22(a) is invoked, the threshold question is whether removal is being effectuated by way of the general removal statute, 28 U.S.C. § 1441(a), or by way of a separate removal provision that 'grants *additional* removal jurisdiction in a class of cases which would not otherwise be removable under the prior grant.'" *Id.* at 107 (quoting *Gonsalves v. Amoco Shipping Co.*, 733 F.2d 1020, 1022 (2d Cir. 1984)). Thus, "[i]f removal is being effectuated through a provision that confers

*additional* removal jurisdiction, and that provision contains no exception for

nonremovable federal claims, the provision should be given full effect." *Id.* The

result was that, with the two enumerated exceptions, Section 1452(a) confers

removal jurisdiction over *all* claims related to a bankruptcy case, and is not

trumped by Section 22(a). *Id.* at 107-08; *see also Carpenters Pension Trust for S.*

*Cal. v. Ebbers*, 299 B.R. 610, 615 (C.D. Cal. 2003 (same); *Hesselman v. Arthur*

*Anderson LLP* (*In re Global Crossing Ltd. Sec. Litig.*), No. 02 Civ. 910 GEL, 2003

WL 21659360, at *3 (S.D.N.Y. July 15, 2003) (same); *Pac. Life Ins. Co. v. J.P.*

*Morgan Chase & Co.*, No. SA CV 03-813GLT (ANX), 2003 WL 22025158, at *2

(C.D. Cal. June 20, 2003) (same).

The same reasoning applies here. CAFA contains a removal provision,

separate from Section 1441(a), that grants *additional* removal jurisdiction in

securities class action cases that would not otherwise be removable. All such class

actions, with the enumerated exceptions, are removable notwithstanding Section

22(a). This Court should likewise hold that the so-called "absolute" forum

selection provision of Section 22(a) does not trump the additional removal

jurisdiction created by CAFA for securities class actions.

### C.    CAFA is the More Recent and Specific Statute.

Further supporting the conclusion that Section 22(a) does not trump CAFA

in these circumstances is the fact that CAFA is the more recent statute and the

more specific one on the point at issue.  As the Supreme Court has held, "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand."  *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000); *see also United States v. Estate of Romani*, 523 U.S. 517, 530-33 (1998) ("[T]here are sound reasons for treating the Tax Lien Act of 1966 as the governing statute . . . . [T]he Tax Lien Act is the later statute, the more specific statute, and its provisions are comprehensive, reflecting an obvious attempt to accommodate the strong policy objections to the enforcement of secret liens.").[17]

Here, CAFA is the more recent statute.  The '33 Act was passed more than 70 years before CAFA, and the 1998 SLUSA amendment to Section 22(a) also predated CAFA.  Insofar as is relevant here, CAFA is also more specific than the '33 Act because Section 22(a) addresses removal of "cases" arising under the '33 Act, while CAFA addresses the removability of *class actions* and only a subset of '33 Act cases – securities class actions.  CAFA further specifically delineates that only those '33 Act class actions that are not locally oriented within the meaning of CAFA, and are not "covered" class actions under SLUSA, and do not concern

---

[17] *See also Glacier Bay Kee Leasing Co. v. McGahan*, 944 F.2d 577, 581 (9th Cir. 1991) ("[W]here provisions in two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one").

corporate governance matters or the rights and terms of the securities themselves, are removable.

Because CAFA deals specifically with the removal of securities class actions, as opposed to securities "cases," the district court erred in concluding that Section 22(a) was the more specific of the two statutes. The Second Circuit in *Worldcom* similarly concluded that Section 22(a) was *not* more specific than the class of claims covered by the bankruptcy removal statute (28 U.S.C. § 1452(a)). Section 22(a) did not cover only a subset of the claims covered by Section 1452(a), but rather, applied to many claims that are not "related to" a bankruptcy. *Worldcom*, 368 F.3d at 102. The same is true here: Section 22(a) applies to all '33 Act claims, including many that fall outside CAFA – for example, individual as opposed to class actions, and class actions concerning "covered" securities. The '33 Act claims removable under CAFA, by contrast, are only a subset of all '33 Act claims. Insofar as the removability of '33 Act claims goes (the issue on this appeal), CAFA is the much more specific statute. Indeed, the greater specificity of CAFA is even more apparent here than in *Worldcom*, since CAFA, unlike the bankruptcy removal statute, specifically addresses the removability of securities class actions.

CAFA's focus on class actions also reflects legislative concerns more recent and specific than those Congress faced in 1933. Rule 23 of the Federal Rules of

Civil Procedure was not adopted until 1938, and class actions did not come into vogue until the 1966 amendments to Rule 23.  *See* Senate CAFA Report at 7. Even then, and for many years afterward, class actions were "primarily a tool for civil rights litigations seeking injunctions in discrimination cases." *Id.* at 8.  The drafters of Section 22(a) simply never envisioned the types of billion-dollar nationwide securities class actions, and corresponding abuses, that prompted the passage of CAFA following upon SLUSA and the PSLRA.[18]

Thus, for the additional reason that it is the more recent and specifically drawn statute in relation to securities class actions, CAFA should be held to control over Section 22(a) in this case.  But even if one were to conclude, wrongly, that Section 22(a) is the more specific statute, it would not control.  Where the application of a specific statute would "unduly interfere" with the operation of a general statute that was enacted subsequent to the specific statute, the more general statute controls.  *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 156 (1976); *Worldcom*, 368 F.3d at 103.  For the reasons discussed in Point A. above, the policy objectives of CAFA – centralizing national securities litigation in federal court – would be greatly undermined if '33 Act class actions could be kept in state court.  *Cf. Worldcom*, 368 F.3d at 103-04 (Section 22(a) could interfere with

---

[18] The Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737 (codified at 15 U.S.C. § 78u-4).

"Congress's purpose of centralizing bankruptcy litigation in a federal forum" if construed to trump the bankruptcy removal statute).

### D.    Allowing Removal in these Circumstances Best Harmonizes the Statutes in Question.

Finally, allowing removal in this case would harmonize both Section 22(a) and CAFA without nullifying either statute. As this Court has stated, "we must, whenever possible, attempt to reconcile potential conflicts in statutory provisions." *Transcon Lines*, 58 F.3d at 1440; *see also Momeni v. Chertoff*, 521 F.3d 1094, 1097 (9th Cir. 2007) ("Where an appellate court can construe two statutes so that they conflict, or so that they can be reconciled and both can be applied, it is obliged to reconcile them.").

Section 22(a) and CAFA can be reconciled by interpreting the former to preclude removal of individual "cases" arising under the '33 Act, while interpreting CAFA to permit removal of securities class actions asserting '33 Act claims, provided they otherwise satisfy CAFA. Such an interpretation would give effect to both statutes in conformity with established principles of construction.[19]

---

[19] *Cf. Rabkin v. Or. Health Sciences Univ.*, 350 F.3d 967, 974 (9th Cir. 2003) ("The harmony sought . . . is not necessarily a perfect symmetry of the statutes dealt with; it is sufficient if we arrive at a construction representing a reasonable consistency between the affected parts.") (applying Oregon law).

## CONCLUSION

The district court's remand order should be reversed.

Dated: New York, New York
June 13, 2008

WILLKIE FARR & GALLAGHER LLP

By: _____/S/_____

John R. Oller
(A Member of the Firm)

787 Seventh Avenue
New York, New York  10019-6099
(212) 728-8000
Attorneys for *Amicus Curiae* Securities
Industry and Financial Markets
Association

*Of Counsel:*

Richard D. Bernstein
WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, DC 20006-1238
(202) 303-1000

David M. Stoltzfus
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York  10019-6099
(212) 728-8000

Ira D. Hammerman
Kevin M. Carroll
SECURITIES INDUSTRY AND
FINANCIAL MARKETS ASSOCIATION
1101 New York Avenue, NW
Washington, DC 20005
(202) 962-7382

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed R. App. P. 29(d) and 9th Cir. R. 32-1, the

attached *amicus* brief is proportionally spaced, has a typeface of 14 points or more,

and contains 7,000 words or less.

Dated:  New York, New York
       June 13, 2008

                                       /s/
                              John R. Oller

                              Attorney for *Amicus Curiae*
                              Securities Industry and
                              Financial Markets Association

# EXHIBIT B

No. 08-55865
(To Be Argued July 14)

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

DAVID H. LUTHER, Individually and On Behalf of All Others Similarly Situated,

Plaintiff-Appellee,

v.

COUNTRYWIDE HOME LOANS SERVICING, LP, *et al.*,

Defendants-Appellants.

On Appeal From Judgment Of
The United States District Court For The
Central District of California
No. Civ. 07-8165
Honorable Mariana R. Pfaelzer

BRIEF OF APPELLANTS

LLOYD WINAWER
GOODWIN PROCTER LLP
10250 CONSTELLATION BLVD.
21ST FLOOR
LOS ANGELES, CA 90067
(310) 788-5157

BRIAN E. PASTUSZENSKI
INEZ H. FRIEDMAN-BOYCE
GOODWIN PROCTER LLP
EXCHANGE PLACE
BOSTON, MA 02109
(617) 570-1000

*Attorneys for the Countrywide Appellants*

DEAN J. KITCHENS
MICHAEL DORE
LINDSAY PENNINGTON
GIBSON DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071
(213) 229-7000

*Attorneys for the Underwriter Appellants*

June 9, 2008

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Appellant Countrywide Home Loans Servicing LP is a limited partnership with only two partners, Countrywide GP, Inc. and Countrywide LP, Inc., both of which are wholly owned subsidiaries of Countrywide Financial Corporation. No other publicly held company owns 10 percent or more of the stock of Countrywide Home Loans Servicing LP.

Appellant Countrywide Home Loans, Inc. is also a wholly owned subsidiary of Countrywide Financial Corporation. No other publicly held company owns 10 percent or more of the stock of Countrywide Home Loans, Inc.

Appellant CWALT, Inc. is also a wholly owned subsidiary of Countrywide Financial Corporation. No other publicly held company owns 10 percent or more of the stock of CWALT, Inc.

Appellant Countrywide Securities Corporation is a wholly owned subsidiary of Countrywide Capital Markets, Inc., which is a wholly owned subsidiary of Countrywide Financial Corporation. No other publicly held company owns 10 percent or more of the stock of Countrywide Securities Corporation.

Appellant Banc of America Securities LLC is wholly owned by Banc of America Securities Holdings Corporation, which in turn is wholly owned by NB Holdings Corporation, which in turn is wholly owned by Bank of America

Corporation. No other publicly held company owns 10 percent or more of the stock of Banc of America Securities LLC.

Appellant Barclays Capital Inc. is an indirect, wholly owned subsidiary of Barclays PLC. No other publicly held company owns 10 percent or more of the stock of Barclays Capital Inc.

Appellant Bear Stearns & Co. Inc. is a wholly owned subsidiary of The Bear Stearns Companies Inc. The Bear Stearns Companies Inc. is a wholly owned subsidiary of JPMorgan Chase & Co. No other publicly held company owns 10 percent or more of the stock of Bear Stearns & Co. Inc.

Appellant Citigroup Global Markets Inc. is a wholly owned subsidiary of Citigroup Financial Products Inc.; Citigroup Financial Products Inc. is a wholly owned subsidiary of Citigroup Global Markets Holdings Inc.; Citigroup Global Markets Holdings Inc. is a wholly owned subsidiary of Citigroup Inc., a publicly held corporation. No other publicly held company owns 10 percent or more of the stock of Citigroup Global Markets Inc.

Appellant Credit Suisse Securities (USA) LLC, formerly known as Credit Suisse First Boston LLC, is a wholly owned subsidiary of Credit Suisse (USA), Inc. Credit Suisse (USA), Inc. is a wholly owned subsidiary of Credit Suisse Holdings (USA), Inc., which is jointly owned by Credit Suisse and Credit Suisse Group. Credit Suisse is a wholly owned subsidiary of Credit Suisse Group. The

shares of Credit Suisse Group are publicly traded on the Swiss Stock Exchange and are also listed on the New York Stock Exchange in the form of American Depositary Shares. No other publicly held company owns 10 percent or more of the stock of Credit Suisse Securities (USA) LLC.

Appellant Deutsche Bank Securities Inc. is a wholly owned subsidiary of Deutsche Bank U.S. Financial Markets Holding Corporation, which in turn is a wholly owned subsidiary of Taunus Corporation, which in turn is a wholly owned subsidiary of Deutsche Bank A.G., a publicly held corporation. No publicly held corporation owns 10 percent or more of Deutsche Bank A.G.'s stock. No other publicly held company owns 10 percent or more of the stock of Deutsche Bank Securities Inc.

Appellant Edward D. Jones & Co., L.P. is a Missouri limited partnership, which is wholly owned by EDJ Holding Company, Inc. (General Partner) and the Jones Financial Companies, L.L.L.P. (Limited Partners). No publicly held company owns more than 10 percent of the stock of Edward D. Jones & Co., L.P.

Appellant Goldman, Sachs & Co. is an indirectly wholly owned subsidiary of The Goldman Sachs Group Inc. No other publicly held corporation owns 10 percent or more of Goldman, Sachs & Co.

Appellant Greenwich Capital Markets, Inc. is wholly owned by the Royal Bank of Scotland, plc, a publicly traded UK company. No other publicly held company owns 10 percent or more of the stock of Greenwich Capital Markets, Inc.

Appellant J.P. Morgan Securities Inc. is a wholly owned subsidiary of JPMorgan Chase & Co. No other publicly held company owns 10 percent or more of the stock of J.P. Morgan Securities Inc.

Appellant Lehman Brothers Inc. is wholly owned by Lehman Brothers Holdings Inc. and no publicly traded corporation owns more than 10 percent of Lehman Brothers Holdings Inc. No publicly held company owns 10 percent or more of the stock of Lehman Brothers Inc.

Appellant Morgan Stanley & Co. Incorporated is a subsidiary of Morgan Stanley. Based on Securities and Exchange Commission rules regarding beneficial ownership, State Street Bank & Trust Company, 225 Franklin Street, Boston, Massachusetts 02210, beneficially owned 12.97 percent of Morgan Stanley's stock based on a Schedule 13G filed on February 12, 2008 by State Street Bank & Trust Company, acting in various fiduciary capacities. No other publicly held company owns 10 percent or more of the stock of Morgan Stanley & Co. Incorporated.

Appellant UBS Securities LLC's parent corporations are UBS A.G., a public corporation, and UBS Americas, Inc., which is wholly owned by UBS A.G. No

other publicly held company owns 10 percent or more of the stock of UBS

Securities LLC.

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................ vi

TABLE OF AUTHORITIES ...................................................................... viii

JURISDICTIONAL STATEMENT ............................................................... 1

ISSUES PRESENTED .................................................................................. 1

STATEMENT OF THE CASE ...................................................................... 1

STATEMENT OF FACTS ............................................................................ 2

SUMMARY OF ARGUMENT ..................................................................... 5

ARGUMENT ............................................................................................... 7

I.    The District Court Erred In Holding That Removal
Is Barred By Section 22(a) Of The 1933 Act ........................................ 7

    A.    CAFA's List Of Exceptions Is Exclusive,
And Courts May Not Create New Ones ....................................... 8

        1.  The Enumerated Exceptions Preclude Others ....................... 8

        2.  CAFA's Exceptions Include Specified Securities Cases,
But They Do Not Bar Removal Of This Securities Case ............ 10

        3.  CAFA Contains No Savings Clause ..................................... 13

        4.  Courts In Analogous Situations Have Properly
Declined To Create New Statutory Exceptions ...................... 14

    B.    CAFA Was Meant To Apply To Large,
Interstate Class Actions Like This One ...................................... 16

C.    As The Later-Enacted Statute, CAFA Best
      Demonstrates Congressional Intent .......................................... 17

II.   The District Court Erred In Concluding That
      Doubts About Legal Issues Require Remand .............................. 19

III.  Section 1332(d)(9)(C)'s Narrow Exception Should Not
      Be Construed To Encompass All Securities Class Actions ............ 20

CONCLUSION ............................................................................ 26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrego Abrego v. The Dow Chem. Co.,*
  443 F.3d 676 (9th Cir. 2006)............................................................... 12

*Acosta v. Gonzales,*
  439 F.3d 550 (9th Cir. 2006)............................................................18-19

*Ali v. Federal Bureau of Prisons,*
  128 S. Ct. 831 (2008) ......................................................................24-25

*Argentine Republic v. Amerada Hess Shipping Corp.,*
  488 U.S. 428 (1989) ........................................................................14-15

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.,*
  515 U.S. 687 (1995) .............................................................................. 22

*Breuer v. Jim's Concrete of Brevard, Inc.,*
  538 U.S. 691 (2003) .............................................................................. 17

*California Pub. Emp. Ret. Sys. v. Worldcom, Inc.,*
  368 F.3d 86 (2d Cir. 2004)................................................................... 19

*Carmona v. Bryant,*
  No. CV-06-78-S-BLW, 2006 WL 1043987 (D. Idaho Apr. 19, 2006)................. 24

*Estate of Pew v. Cardarelli,*
  No. 06-5703, -- F.3d --, 2008 WL 2042809 (2d Cir. May 13, 2008).............*passim*

*U.S. v. Estate of Romani,*
  523 U.S. 517 (1998) .............................................................................. 18

*FDA v. Brown & Williamson Tobacco Corp.,*
  529 U.S. 120 (2000) .............................................................................. 17

*Gaus v. Miles, Inc.,*
  980 F.2d 564 (9th Cir. 1992) ........................................................................ 20

*Genton v. Vestin Realty Mortgage II, Inc.,*
  No. 06cv2517-BEN (WMC), 2007 WL 951838 (S.D. Cal. Mar. 9, 2007) ........... 24

*Gilliken v. LaPorte, Inc.,*
  No. HM82-2479, 1983 WL 703 (D. Md. Mar. 8, 1983) ..................................... 14

*Hulteen v. AT&T Corp.,*
  498 F.3d 1001 (9th Cir. 2007) ....................................................................... 18

*Indiana State Dist. Council of Laborers and Hod Carriers*
  *Pension Fund v. Renal Care Group, Inc.,*
  No. Civ. 3:05-0451, 2005 WL 2000658 (M.D. Tenn. Aug. 18, 2005) ................ 24

*Jama v. Immigration and Customs Enforcement,*
  543 U.S. 335 (2005) ....................................................................................... 9

*U.S. v. Johnson,*
  529 U.S. 53 (2000) ......................................................................................... 9

*Leatherman v. Tarrant County Narcotics*
  *Intelligence and Coordination Unit,*
  507 U.S. 163 (1993) ................................................................................... 9-10

*Market Co. v. Hoffman,*
  101 U.S. 112 (1879) ...................................................................................... 22

*U.S. v. Menasche,*
  348 U.S. 528 (1955) ...................................................................................... 22

*U.S. v. Novak,*
  476 F.3d 1041 (9th Cir. 2007) .................................................................... 15-16

*Pinto v. Vonage Holdings Corp.,*
  No. 07-062 (FLW), 2007 WL 1381746 (D.N.J. May 7, 2007) ............................ 11

*U.S. v. Providence Journal Co.,*
  485 U.S. 693 (1988) ...................................................................................... 14

*U.S. v. Rodgers*,
   461 U.S. 677 (1983) ............................................................................. 9

*Rovner v. Vonage Holdings Corp.*,
   No. 07-178 (FLW), 2007 WL 446658 (D.N.J. Feb. 7, 2007) .................... 11

*Rubin v. Pixelplus Co.*,
   No. 06-cv-2964 (ERK), 2007 WL 778485 (E.D.N.Y. Mar. 13, 2007) ............ 11

*Schaaf v. Residential Funding Corp.*,
   Civ. No. 05-1319 (JNE/SRN), slip op. (D. Minn. Jan. 4, 2006) .................. 23-25

*In re Textainer P'ship Sec. Litig.*,
   No. C. 05-0969 MMC, 2005 WL 1791559 (N.D. Cal. July 27, 2005) .................. 24

*Williams v. Texas Commerce Trust Co.*,
   No. 05-1070-CV-W-GAF, 2006 WL 1696681 (W.D. Mo. Jun. 15, 2006) .......... 24

## <u>Statutes</u>

Class Action Fairness Act of 2005, Pub. L. No. 109-2 ............................... *passim*

Securities Litigation Uniform Standards Act of 1998,
Pub. L. No. 105-353 ................................................................................. *passim*

15 U.S.C. § 77b(a)(1) ......................................................................................... 20

15 U.S.C. § 77k ...................................................................................................... 3

15 U.S.C. § 77l(a)(2) ............................................................................................. 3

15 U.S.C. § 77o ...................................................................................................... 3

15 U.S.C. § 77(p)(c) ......................................................................................... 4, 19

15 U.S.C. § 77p(f)(3) ............................................................................................ 11

15 U.S.C. § 77v(a) ........................................................................................ *passim*

x

15 U.S.C. § 78bb(f)(2) ................................................................... 19

18 U.S.C. § 1452(a) ...................................................................... 19

28 U.S.C. § 1332(d) ...................................................................... 10

28 U.S.C. § 1332(d)(2)(A) ........................................................... 1, 3

28 U.S.C. § 1332(d)(3) ................................................................. 8

28 U.S.C. § 1332(d)(4)(A) ........................................................... 8

28 U.S.C. § 1332(d)(4)(B) ........................................................... 8

28 U.S.C. § 1332(d)(9)(A) ........................................................... *passim*

28 U.S.C. § 1332(d)(9)(B) ........................................................... 8, 10

28 U.S.C. § 1332(d)(9)(C) ........................................................... *passim*

28 U.S.C. § 1441 .......................................................................... 5, 14

28 U.S.C. § 1453 .......................................................................... 1-3, 13

**Legislative History**

S. Rep. 109-14 (2005), as reprinted in 2005 U.S.C.C.A.N. 3 ........... 7, 16-17, 22-23

# JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. § 1332(d)(2)(A) upon removal of the class action complaint from the Los Angeles Superior Court. This Court has jurisdiction over this appeal under 28 U.S.C. § 1453(c), having by order dated May 28, 2008 granted the Appellants' timely filed petitions for permission to appeal from the District Court's remand order.

## ISSUES PRESENTED

1. Whether the District Court erred in holding that removal under the Class Action Fairness Act is barred by Section 22(a) of the Securities Act of 1933.

2. Whether the District Court erred in concluding that doubts about legal issues require remand.

3. Whether the narrow exception to federal jurisdiction set out in 28 U.S.C. § 1332(d)(9)(C), added by the Class Action Fairness Act of 2005, should be construed broadly to prohibit removal of all securities class actions.

## STATEMENT OF THE CASE

Plaintiff filed this putative nationwide class action in the Superior Court of California for Los Angeles County against the Countrywide Appellants[1] and the

---

[1]  The Countrywide Appellants include Defendants Countrywide Home Loans Servicing LP, CWALT, Inc., Alternative Loan Trusts (listed in the unabbreviated case caption), Countrywide Home Loans, Inc., Countrywide Securities Corporation, Stanford L. Kurland, Eric P. Sieracki, David A. Spector, N. Joshua Adler, Ranjit Kripalani, and Jennifer S. Sandefur.

Underwriter Appellants,[2] alleging that they violated the Securities Act of 1933 (the "1933 Act") in selling some $300 billion of securities between January 2005 and June 2007.  The Countrywide Appellants removed the case to the United States District Court for the Central District of California under the Class Action Fairness Act of 2005, Pub. L. No. 109-2 ("CAFA").  On February 29, 2008, the District Court entered an order ("Op.") remanding the case.  Op. at 6 (E.R. at 6).[3]  The Countrywide Appellants and the Underwriter Appellants timely petitioned this Court for permission to appeal from that order under Section 5(c) of CAFA (28 U.S.C. § 1453(c)), and Fed. R. App. P. 5.  This Court granted the petitions by order dated May 28, 2008.

## STATEMENT OF FACTS

Plaintiff filed his Complaint ("Compl.") on November 14, 2007 in Los Angeles Superior Court on behalf of all persons or entities across the country who had acquired mortgage pass-through certificates (the "Securities") issued by Appellant CWALT, Inc. in dozens of public offerings over a three-year period.

---

[2] The Underwriter Appellants in this matter are Morgan Stanley & Co. Incorporated, UBS Securities LLC, Deutsche Bank Securities Inc., Citigroup Global Markets Inc., Lehman Brothers Inc., Greenwich Capital Markets, Inc., Edward D. Jones & Co., L.P., J.P. Morgan Securities Inc., Credit Suisse First Boston (now known as Credit Suisse Securities (USA) LLC), Goldman, Sachs & Co., Banc of America Securities LLC, Barclays Capital Inc., and Bear Stearns & Co. Inc.

[3] All references to "E.R." refer to Appellants' Excerpts of Record filed herewith pursuant to Circuit Rule 30-1.4.

Those Securities were issued under prospectuses and registration statements filed with the U.S. Securities and Exchange Commission. Compl. ¶¶ 1, 12, 58, 69-81 (E.R. at 12, 15, 24, 38-40). The Complaint asserts claims exclusively under the federal securities laws, specifically Sections 11, 12(a)(2), and 15 of the 1933 Act. 15 U.S.C. § 77k, § 77l(a)(2) and § 77o. Plaintiff claims that the prospectuses and registration statements were false and misleading because they allegedly did not accurately describe the loan origination practices that had been followed in connection with the pools of mortgage loans on which the Securities are based. Compl. ¶¶ 4, 7 (E.R. at 12-13).

The Securities were purchased throughout the United States by investors said to number in the thousands. *Id.* at ¶ 39 (E.R. at 23). Plaintiff alleges that the value of the Securities has "declined substantially" – presumably in the billions of dollars – due to the Appellants' alleged misstatements and omissions regarding their risks. *Id.* at ¶¶ 39, 85, 91 (E.R. at 23, 40, 42).

On December 14, 2007, with the consent of the Underwriter Appellants, the Countrywide Appellants removed the case under 28 U.S.C. §§ 1453 and 1332(d)(2)(A). Under Section 1332(d)(2)(A), as amended by CAFA, a putative class action may be removed to the appropriate federal district court if (a) the amount in controversy exceeds $5,000,000, exclusive of interest and costs and (b) any member of the putative class is a citizen of a state different from any

3

defendant. Plaintiff conceded that this case meets CAFA's amount-in-controversy and minimal diversity jurisdiction requirements, but moved to remand on the theory that removal is barred by Section 22(a) of the 1933 Act[4] and by the CAFA exception to removal for certain types of securities claims set out in 28 U.S.C. § 1332(d)(9)(C).

Without reaching the latter argument, the District Court granted Plaintiff's motion. It concluded that the terms of CAFA and Section 22(a) "cannot mutually coexist" in this case. Op. at 5 (E.R. at 5). It noted – but did not expressly address – the Appellants' argument that, because CAFA carefully sets out the exceptions to its coverage and does not include an exception for cases arising under the 1933 Act, Section 22(a) must yield to CAFA. Instead, the Court stated that CAFA "appears directed" solely toward addressing "plaintiffs' artful circumvention of the diversity requirement" – a purpose that it found inapplicable to cases arising under the 1933 Act. *Id.* Then, ruling that jurisdiction "must be rejected if there is any doubt as to the right of removal," the Court held that remand was required because it "harbor[ed] significant doubt that CAFA provides removal jurisdiction in the face of the 1933 Act's absolute prohibition on removal." *Id.* at 5-6 (E.R. at 5-6).

---

[4] Section 22(a) provides that "[e]xcept as provided in Section 77p(c), no case arising under this Title and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v(a).

# SUMMARY OF ARGUMENT

The District Court correctly recognized that the terms of CAFA and Section 22(a) conflict, but it failed to undertake the correct analysis to resolve that conflict. As a result, it reached the wrong conclusion. The District Court should have recognized that Congress deliberately crafted an explicit, limited list of exceptions to the removal of nationwide class actions under CAFA – exceptions that do not include actions under the 1933 Act and to which the courts may not add. Congress likewise did not include in CAFA a savings clause preserving other statutory bars to removal, like the savings clause found in the most generally applicable removal statute (28 U.S.C. § 1441). Hence, contrary to the conclusion of the District Court, Congress has expressly directed that CAFA take precedence over Section 22(a).

The District Court also erred in its analysis of CAFA's purposes and reach. It opined that CAFA was enacted only to preclude gamesmanship in pleading. In fact, however, CAFA was enacted equally for the purpose of "providing for Federal court consideration of interstate cases of national importance" – precisely the kind of case at issue here.[5] Moreover, CAFA was enacted long after Section 22(a) of the 1933 Act, and it comprehensively addresses the removal of class actions on diversity grounds in the federal courts. Accordingly, the District Court erred in concluding that CAFA's broad grant of jurisdiction over nationwide class

---

[5] CAFA "Findings and Purposes" Pub. L. No. 109-2, § 2(b)(2), 119 Stat. 5 (Feb. 18, 2005).

actions involving significant damages claims – cases exactly like this one – is trumped by prior law.

The District Court further erred in remanding the case on the theory that remand is required if there are any doubts as to removal and because the Court "harbor[ed] significant doubt that CAFA provides removal jurisdiction in the face of" Section 22(a). Op. at 5-6 (E.R. at 5-6). Remand is appropriate only in the face of *factual* doubts about whether the specific requirements for removal (such as the amount in controversy) are met, not doubt about *legal* issues, which district courts are obliged to resolve.

Finally, Section 1332(d)(9)(C) of Title 28, which provides a narrow exception from CAFA for class actions that "solely" involve "a claim that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security," must be construed to apply only to cases implicating state law-based rights or obligations incident to the security holder's ownership of the security itself. The broad construction urged by Plaintiff – that Section 1332(d)(9)(C) bars removal of any class action claim "relating to" a security – would make other words in that section meaningless, would make the exception stated in Section 1332(d)(9)(A) superfluous, and would conflict with Congress' intent that cases like this one be heard in a federal forum. The Second Circuit recently rejected a claim very similar to Plaintiff's here and concluded that

6

Section 1332(d)(9)(C) applies only to "claims grounded in the terms of the security itself," not claims (like Plaintiff's) for misrepresentation in connection with the sale of a security. *Estate of Pew v. Cardarelli*, No. 06-5703, -- F.3d --, 2008 WL 2042809, at *6 (2d Cir. May 13, 2008). Thus, properly construed, Section 1332(d)(9)(C) is no bar to the removal of this case.

## ARGUMENT

### I. The District Court Erred In Holding That Removal Is Barred By Section 22(a) Of The 1933 Act.

Section 2 of CAFA states that a core purpose of that Act was to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." Pub. L. No. 109-2, § 2(b)(2) (codified as note to 28 U.S.C. § 1711). "Because interstate class actions typically involve more people, more money, and more interstate commerce ramifications than any other type of lawsuit," Congress "firmly believe[d] that such cases properly belong in federal court." S. Rep. 109-14, at 5 (2005) as reprinted in 2005 U.S.C.C.A.N. 3, 6 (Senate Judiciary Committee report accompanying the bill that became CAFA). This case, involving the public sale of federally-registered securities across the country and potentially billions of dollars in claimed damages, is exactly the sort of action for which Congress intended to confer federal court jurisdiction through CAFA.

7

Plaintiff has never disputed that this case satisfies the jurisdictional amount in controversy and minimal diversity requirements of CAFA. Rather, he contended, and the District Court agreed, that Section 22(a) of the 1933 Act bars removal. Although recognizing that the terms of CAFA and Section 22(a) conflict in this case, the District Court employed the wrong analysis in seeking to reconcile that conflict and reached the wrong decision.

### A.   CAFA's List Of Exceptions Is Exclusive, And Courts May Not Create New Ones.

#### 1. The Enumerated Exceptions Preclude Others.

CAFA is a highly detailed statute with six carefully drawn exceptions. Specifically, CAFA's removal provisions do not apply to cases:

- Where more than one-third but less than two-thirds of the class members and the primary defendants are citizens of the forum state and the court decides to decline jurisdiction depending on five enumerated factors (28 U.S.C. § 1332(d)(3));

- Where more than two-thirds of the class members are citizens of the forum state, certain defendants are named, and the principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the state in which the action was originally filed (28 U.S.C. § 1332(d)(4)(A));

- Where two-thirds of the class members and the primary defendants are citizens of the forum state (28 U.S.C. § 1332(d)(4)(B));

- Where the claim involves solely a covered security as defined in the 1933 Act or in the Securities Exchange Act of 1934 (28 U.S.C. § 1332(d)(9)(A));

- Where the claim relates solely to the internal affairs or governance of a corporation and arises under the law of its state of incorporation (28 U.S.C. § 1332(d)(9)(B)); or

• Where the claim "solely" "relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security" (28 U.S.C. § 1332(d)(9)(C)).

This detailed list of explicit exceptions to removal under CAFA compels the conclusion that no others exist. As the Supreme Court explained in *U.S. v. Johnson*, 529 U.S. 53, 58 (2000), "[w]hen Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *Accord U.S. v. Rodgers*, 461 U.S. 677, 701 (1983) ("No exception of the sort carved out by the Court of Appeals appears on the face of the statute, and we decline to frustrate the policy of the statute by reading such an exception into it."); *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply.").

These decisions reflect the bedrock canon of statutory construction "*expressio unius est exclusio alterius*." In declining to include an exception in CAFA for cases arising under the 1933 Act, Congress *affirmatively* expressed its intent to make those cases removable if they otherwise meet CAFA's jurisdictional prerequisites. In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993), the Supreme Court used precisely

9

this reasoning in concluding that Rule 9(b)'s explicit reference to claims related to fraud or mistake excludes application of the Rule to other claims.

2. **CAFA's Exceptions Include Specified Securities Cases, But They Do Not Bar Removal Of This Securities Case.**

That the District Court erred by reading Section 22(a) as *another* exception to CAFA is particularly clear because CAFA's list of exceptions already includes certain specified securities cases. *See* 28 U.S.C. § 1332(d)(9). It would be unreasonable to assume that Congress intended to carve out from federal jurisdiction still other kinds of securities cases, especially when that would make the exceptions that are set forth in Section 1332(d)(9) mere surplusage.

Specifically, rather than excepting from CAFA's coverage *all* federal securities claims, CAFA carefully excepts from removal only two classes of securities claims: (1) claims involving "covered securities," as that term is defined elsewhere in federal law, thereby leaving the removability of cases involving "covered securities" to be determined by the Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353 ("SLUSA") (28 U.S.C. § 1332(d)(9)(A)); and (2) state common law claims incident to ownership of the security instrument itself, including claims regarding the internal affairs of a corporation, claims alleging breaches of fiduciary duty, and disputes over the terms of the securities (28 U.S.C. § 1332(d)(9)(B)&(C)).

10

CAFA complements SLUSA, which was itself designed to expand federal jurisdiction over class action claims, by providing a continuum of federal removal jurisdiction for *both* "covered" and non-covered securities. SLUSA expanded federal question jurisdiction over class actions involving the purchase or sale of "covered securities" brought in state court under state law. 15 U.S.C. § 77p(f)(3).[6] "Covered securities," among other things, are securities that are traded on national exchanges. The Securities at issue here, which are not exchange-traded, are not "covered securities" and thus are not removable under SLUSA.[7] At the same time, however, because they are not "covered securities," they do not trigger the CAFA removal exception in Section 1332(d)(9)(A), and they are necessarily *included* within CAFA's deliberate expansion of removal jurisdiction.

CAFA's exception for "covered securities," which is the threshold requirement for removal under SLUSA, is not the result of happenstance. Rather, it confirms that Congress knew precisely what it was doing in drafting the specific exceptions to CAFA's expanded federal diversity jurisdiction, which are consistent

---

[6] *See Rovner v. Vonage Holdings Corp.*, No. 07-178 (FLW), 2007 WL 446658, at *5 (D.N.J. Feb. 7, 2007) ("[U]nder the plain language of [SLUSA] there exists exclusive federal jurisdiction over claims which (i) are brought to enforce the rights and liabilities created by the Securities Act; and (ii) are covered class actions.") *Accord, Pinto v. Vonage Holdings Corp.*, No. 07-062 (FLW), 2007 WL 1381746, at *1-2 (D.N.J. May 7, 2007); *Rubin v. Pixelplus Co.*, No. 06-cv-2964 (ERK), 2007 WL 778485, at *5 (E.D.N.Y. Mar. 13, 2007)

[7] Plaintiff has never contended otherwise.

with its stated goal of comprehensive federal regulation.[8]  Thus, where – as here – a plaintiff's claims do not involve a "covered security" (and therefore are not removable under SLUSA), they nonetheless remain subject to removal under CAFA provided they otherwise meet CAFA's requirements.  Where a "covered security" is involved, Congress determined that its removability would be governed by SLUSA.

The Second Circuit recently confirmed this view in *Estate of Pew*.  2008 WL 2042809.  In the trial court, Plaintiff here relied heavily on the district court decision in *Estate of Pew*, describing it as "[t]he case factually closest to this case."  Reply In Support Of Plaintiff's Motion for Remand And An Award Of Attorneys' Fees And Expenses ("Reply Mem."), filed Feb. 15, 2008, at 17.  On appeal, however, the Second Circuit reversed the district court's decision, holding that CAFA permitted removal of state law securities fraud claims alleging that the officers of a company had issued debt securities without disclosing that the issuer was insolvent.  2008 WL 2042809, at *8.  The Court explained:

> Review of SLUSA and CAFA confirms an overall design to assure that the federal courts are available for *all securities cases that*

---

[8] *See, e.g., Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683-84 (9th Cir. 2006) ("we presume that Congress is aware of the legal context in which it is legislating").  In that case this Court recognized that CAFA "evidences [the drafters'] detailed appreciation of the background legal context.  Given the care taken in CAFA to reverse *certain* established principles but not others, the usual presumption that Congress legislates against an understanding of pertinent legal principles has particular force." *Id.* at 684 (emphasis in original).

*have national impact* (including those that involve securities traded on national exchanges), without impairing the ability of state courts to decide cases of chiefly local import or that concern traditional state regulation of the state's corporate creatures . . . .

CAFA's amendments to the diversity statute—including its exceptions—proceed along similar lines [to SLUSA's provisions], granting federal courts jurisdiction over all class actions (with regard to securities and otherwise) over $5 million in the aggregate if the class members are largely out of state . . . . *Reading the provisions in context, we infer that diversity jurisdiction is created under CAFA for all large, non-local securities class actions, subject to the three exceptions [in Section 1332(d)].*

*Id.* at *19-20 (emphasis added). In other words, the Second Circuit held in *Estate of Pew* that CAFA provides an alternative, diversity-based source of federal jurisdiction for securities class actions that involve significant amounts-in-controversy and are national in scope, but which do not fall within SLUSA's grant of expanded federal question jurisdiction. This reasoning applies with full force here as well.

In short, Congress carefully coordinated the removal provisions of SLUSA and CAFA to deal comprehensively with the removal of securities cases, leaving no room for the courts to read Section 22(a) of the 1933 Act as yet *another* exception to CAFA.

### 3. CAFA Contains No Savings Clause.

The conclusion that the District Court erred in remanding this action draws further support from Congress' omission from CAFA's removal provision, 28 U.S.C. § 1453, of the savings clause found in the regular diversity removal statute,

13

28 U.S.C. § 1441 ("Except as otherwise expressly provided by Act of Congress . . . ."). This deliberate omission further demonstrates that Congress intended CAFA to be the final word on removal jurisdiction, unfettered by previous statutes like Section 22(a), which was enacted over 70 years ago. In a similar case, where two statutory provisions contained the phrase "except as otherwise provided by law," but a third provision, "by way of vivid contrast, contain[ed] no such proviso," the Supreme Court held that the third provision "admit[ted] of no exception." *U.S. v. Providence Journal Co.*, 485 U.S. 693, 705 (1988). *Accord Gilliken v. LaPorte, Inc.*, No. HM82-2479, 1983 WL 703, at *2 (D. Md. Mar. 8, 1983) (Jones Act claim removable because 28 U.S.C. § 1441(c) did not, like § 1441(a), contain "except as otherwise provided by law" restriction, and thus by its plain language allowed for removal despite non-removal provisions in the Jones Act).

### 4. Courts In Analogous Situations Have Properly Declined To Create New Statutory Exceptions.

Faced with similar issues involving other statutes, courts have consistently applied the principles of statutory construction that Congress is presumed to be aware of the legal context in which it is legislating, and that where Congress has provided exceptions in a statute, the courts have no authority to create others. For example, in *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989), the Court considered the interplay between the Foreign Sovereign

14

Immunities Act of 1976 ("FSIA"), which generally makes foreign states immune from suits in federal courts, and the pre-existing Alien Tort Statute ("ATS"), which granted district courts original jurisdiction over actions brought by aliens alleging certain torts. The Court ruled that the text and structure of FSIA reflected Congress' intent that it be the sole basis for obtaining jurisdiction over a foreign state in federal courts notwithstanding the language of the earlier ATS. *Id.* at 434. The Court ruled that Congress had expressed this intention by carving out from the FSIA itself a certain class of cases for which immunity would not be available. *Id.* at 435-36. From Congress' decision to *deny* immunity in those cases, the Court drew "the plain implication" that FSIA created immunity for all other cases that *did not fall* within one of FSIA's exceptions. *Id.* Consequently, the Court held that, in light of FSIA, the ATS could not be read to provide jurisdiction. *Id.* at 438.

Similarly, in *U.S. v. Novak*, 476 F.3d 1041 (9th Cir. 2007), this Court considered whether the anti-alienation provisions in the Employee Retirement Income Security Act ("ERISA") protected ERISA-covered benefits from garnishment under the subsequently enacted Mandatory Victims Restitution Act ("MVRA"). In holding that MVRA authorized garnishment notwithstanding the contrary provisions of ERISA, the Court noted that Congress had excepted from MVRA four narrow types of federally-authorized pensions. Hence, the Court held,

Congress had indicated its intent that other federally regulated plans *would* be "covered by the statutory trump" worked by MVRA. *Id.* at 1048.

Accordingly, because Congress carefully enumerated the exceptions to removal under CAFA without mentioning cases brought under the 1933 Act, the District Court erred in ruling that Section 22(a) is a further exception precluding the removal of this case.

### B.    CAFA Was Meant To Apply To Large, Interstate Class Actions Like This One.

The District Court's mistaken premise for concluding that Section 22(a) should be given effect over CAFA was that CAFA's *sole* purpose is to deter gamesmanship by plaintiffs seeking to defeat diversity jurisdiction. Op. at 4-5 (E.R. at 4-5). To the contrary, and as discussed above (*see supra* at 7), Section 2 of CAFA expressly states that a core purpose of the Act is to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." Pub. L. No. 109-2, § 2(b)(2) (codified as note to 28 U.S.C. § 1711). The legislative history likewise states that, "[b]ecause interstate class actions typically involve more people, more money, and more interstate commerce ramifications than any other type of lawsuit," Congress "firmly believe[d] that such cases properly belong in federal court." S. Rep. 109-14 at 5, 2005 U.S.C.C.A.N. 3, 6.

In short, Congress' goal was to ensure that major nationwide class actions could be brought to federal court (unless a particular exception applies). The current case, involving the nationwide sale of federally-registered securities and potentially hundreds of billions of dollars in claimed damages, is exactly the kind of case that Congress had in mind.[9]

## C.    As The Later-Enacted Statute, CAFA Best Demonstrates Congressional Intent.

The District Court's analysis also failed to appreciate that CAFA is the more recent statute and thus should be presumed to express Congress' current intent. As the Supreme Court has ruled, "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). Here, CAFA is the *much* later statute, and it speaks with careful precision to the removal of class actions on diversity jurisdiction grounds. This is yet another reason to reverse the District Court's decision.[10]

---

[9] Moreover, the concern over manipulative pleading designed to avoid federal jurisdiction that led Congress to enact CAFA *is* implicated by Plaintiff's complaint here. *See* S. Rep. 109-14, at 26 ("Under current law, however, plaintiffs' lawyers can easily manipulate their pleadings to ensure that their cases remain at the state level."). Indeed, the District Court itself noted critically that "[t]he Plaintiff here has stretched every pleading limit to remain in state court." Op. at 3 (E.R. at 3).

[10] Plaintiff relied below on *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 696-97 (2003), for the proposition that Section 22(a) of the 1933 Act "give[s] plaintiff an absolute choice of forum." Reply Mem. at 1. *Breuer*, however, predates the enactment of CAFA and therefore has no application here.

This conclusion is strongly supported by *U.S. v. Estate of Romani*, 523 U.S. 517, 530-32 (1998), holding that a later statute governed despite the presence of an earlier and otherwise inconsistent statute:

> On several prior occasions, the Court had . . . concluded that a specific policy embodied in a later federal statute should control our construction of the priority statute, even though it had not been expressly amended. Thus, in *Cook County Nat. Bank v. United States,* 107 U.S. 445, 448-451 (1883), the Court concluded that the priority statute did not apply to federal claims against national banks because the National Bank Act comprehensively regulated banks' obligations and the distribution of insolvent banks' assets. And in *United States v. Guaranty Trust Co. of N.Y.*, 280 U.S. 478 (1930), we determined that the Transportation Act of 1920 had effectively superseded the priority statute with respect to federal claims against the railroads arising under that Act. . . . There are sound reasons for treating the Tax Lien Act of 1966 as the governing statute . . . . As was the case with the National Bank Act, the Transportation Act of 1920, and the Bankruptcy Act of 1898, the Tax Lien Act is the later statute, the more specific statute, and its provisions are comprehensive, reflecting an obvious attempt to accommodate the strong policy objections to the enforcement of secret liens.

*Accord Hulteen v. AT&T Corp.*, 498 F.3d 1001 (9th Cir. 2007) (Pregnancy Discrimination Act of 1978 precludes application of earlier Title VII exemption for unintended effects of a bona fide seniority system in pregnancy discrimination suits); *Acosta v. Gonzales*, 439 F.3d 550 (9th Cir. 2006) (conflicting statutes

should be interpreted so as to give effect to each but to allow a later enacted, more specific statute to amend an earlier, more general statute).[11]

In sum, the District Court erred in disregarding CAFA's plain text (which demonstrates that Congress did not intend to except cases arising under the 1933 Act from removal), in failing to appreciate that this is exactly the kind of case that Congress meant to be removable under CAFA, and in overlooking the importance of the recency of CAFA's enactment.[12]

## II.    The District Court Erred In Concluding That Doubts About Legal Issues Require Remand.

Rather than unambiguously and conclusively deciding the legal issue before it, the District Court instead ruled that:

---

[11] The District Court's suggestion that Section 22(a) is the more specific statute was also mistaken. Although Section 22(a) does address removal of cases brought under the 1933 Act, CAFA specifically addresses the removability of federal securities cases, making removability turn on whether the case involves a "covered security." See supra at 10-11. Where, as here, a class action does not involve "covered securities," CAFA does not except it from removal; conversely, where "covered securities" are involved, removal is not governed by CAFA but, rather, is governed exclusively by SLUSA. See 15 U.S.C. §§ 77p(c) & 78bb(f)(2).

[12] The District Court also incorrectly concluded that the supposedly "absolute prohibition" of Section 22(a) cannot be overcome. Op. at 6. Here, it is overcome because that is precisely what Congress explicitly provided. Other courts have held that Section 22(a) is trumped by the provisions authorizing the removal of bankruptcy-related cases. E.g., California Pub. Emp. Ret. Sys. v. Worldcom, Inc., 368 F.3d 86, 108 (2d Cir. 2004) ("generally nonremovable claims brought under the Securities Act of 1933 may be removed to federal court if they come within the purview of 18 U.S.C. § 1452(a)"). The policy concerns that drove Congress to enact CAFA are at least as compelling as those in the bankruptcy context.

[F]ederal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). At the very least, the Court continues to harbor significant doubt that CAFA provides removal jurisdiction in the face of the 1933 Act's absolute prohibition on removal. Accordingly, the Court must remand this case to state court.

Op. at 5-6 (E.R. at 5-6). This was further error. *Gaus* holds only that when there is *factual* doubt that the specific requirements for removal are met (*e.g.*, as to the amount in controversy), then removal must be rejected. 980 F.2d at 566. It does not say that doubts as to issues of *law* require remand, or permit district courts to make tentative rather than dispositive rulings on *legal* issues. Indeed, if district courts should remand removed cases whenever they harbor a doubt about a legal issue, the law of removal would remain forever unsettled, and Congress' intent to broaden federal jurisdiction through SLUSA and CAFA would be stymied.

**III.    Section 1332(d)(9)(C)'s Narrow Exception Should Not Be Construed To Encompass All Securities Class Actions.**

Section 1332(d)(9)(C) of Title 28 is one of three narrow exceptions to the broad grant of federal court jurisdiction for interstate class actions conferred by CAFA. It exempts from removal any class action that "solely" involves a claim:

> that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under Section 2(a)(l) of the Securities Act of 1933 (15 U.S.C. § 77b(a)(1)) and the regulations issued thereunder.

Plaintiff argued in the District Court that Section 1332(d)(9)(C) precludes the removal of this case because his claim "relates to the rights, duties . . . and

obligations relating to" a security.[13]  The District Court "decline[d] to address the applicability of CAFA's exception to the complaint" yet devoted two footnotes to its thoughts on the subject and suggested that the Complaint "may very well fall within the" exception. Op. at 6 n.6 (E.R. at 6).  *See also id,* at 2 n.2 (E.R. at 2). That suggestion was incorrect.  If this Court reaches the issue, it should hold that the narrow Section 1332(d)(9)(C) exception must be construed to apply only to cases implicating state law-based rights and obligations incident to the security holder's ownership of the security instrument itself.

The Second Circuit recently addressed a claim very similar to Plaintiff's here.  In *Estate of Pew*, the plaintiffs alleged that officers of an issuer marketed debt certificates while failing to disclose that the issuer was insolvent, in violation of state fraud law.  2008 WL 2042809, at *1.  They argued that their claims fell within the Section 1332(d)(9)(C) exception because they "related" to a security.  In reversing the district court's remand order, the Second Circuit held that the exception "cannot be read to cover any and all claims that relate to any security, because that would afford no meaning to [the words 'rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to'], which are evidently terms of limitation." *Id. at* *5.  The Second Circuit also held that that

---

[13] Plaintiff's Memorandum of Points and Authorities In Support of Plaintiff's Motion For Remand To State Court And An Award Of Attorneys' Fees And Expenses, filed Jan. 10, 2008, at 1.

a broad interpretation of the phrase "relates to" would render superfluous Section

1332(d)(9)(A), which excepts from CAFA class actions "concerning a covered

security," because "all 'covered securities' are (of course) 'securities.'" *Id.* at \*6.[14]

The Second Circuit explained that the Section 1332(d)(9)(C) exception is

limited to "claims grounded in the terms of the security itself, the kind of claims

that might arise where the interest rate was pegged to a rate set by a bank that later

merges into another bank, or where a bond series is discontinued, or where a

failure to negotiate replacement credit results in a default on principal." *Id.* It

found support for that conclusion in Congress' use of the word "obligations,"

which it construed to mean obligations "created in instruments, such as a certificate

of incorporation, an indenture, a note, or some other corporate document." *Id.*

at \*5. The Second Circuit also relied for its conclusion on the Senate Judiciary

Committee Report's description of the exception. *Id.* at \*7. That report states:

> The Committee intends that this exemption be ***narrowly construed***.
> The . . . exemption . . . is . . . intended to cover disputes over the
> meaning of the terms of a security, which is generally spelled out in

---

[14] Statutory language should not be interpreted to make other statutory terms surplusage. The U.S. Supreme Court long ago held that "'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *Market Co. v. Hoffman*, 101 U.S. 112, 115 (1879) (citation omitted). *Accord Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 698 (1995) ("A reluctance to treat statutory terms as surplusage supports the reasonableness of the Secretary's interpretation."); *U.S. v. Menasche*, 348 U.S. 528, 538-39 (1955) ("'It is our duty 'to give effect, if possible, to every clause and word of a statute.'").

some formative document of the business enterprise, such as a
certificate of incorporation or a certificate of designations.

S. Rep. 109-14 at 45, 2005 U.S.C.C.A.N. 3, 42-43 (emphasis added).

Plaintiff here does not argue (nor could he) that this case involves "rights,"
"duties," or "obligations" "created by or pursuant to" the mortgage pass-through
certificates at issue in this case. This is not a case about the terms of default of
these Securities, or the circumstances under which the security holders may receive
payments from the underlying pools of mortgages, or other terms, conditions, or
rights created by or conferred pursuant to the instruments themselves. Instead,
Plaintiff's claim involves *disclosure* duties *imposed by the federal securities laws*.
That claim, like the one in *Estate of Pew*, "does not enforce the rights of the
certificate holders as holders, and therefore it does not fall within
§ 1332(d)(9)(C)." *Estate of Pew*, 2008 WL 2042809, at *6.

In addition to *Estate of Pew, Schaaf v. Residential Funding Corp.*, Civ. No.
05-1319 (JNE/SRN), slip op. (D. Minn. Jan. 4, 2006) (report and recommendation
of magistrate judge adopted on Jan. 25, 2006)[15], also supports Appellants'
construction of Section 1332(d)(9)(C). There the plaintiffs argued that Section
1332(d)(9)(C) applied to their claims of fraud in connection with an offering of
debentures because the Appellants had a duty and obligation to "tell the truth"
about the debentures. *Id.* at 3. The court rejected that argument:

---

[15] A copy of the slip opinion is attached hereto as Attachment A.

23

> Plaintiffs' interpretation fails based upon the express text of the statute. The exception only applies where the class action "solely involves . . . a claim that relates to the . . . obligations relating to . . . any security." § 1453(d)(3). The "solely involves" language narrows the broader "relating to" language. *The Court finds this language limits the reach of the exception to those traditional state law claims between a corporation and its shareholders for, as example, breach of the terms of the security at issue or of the underlying corporate charter. Plaintiffs' claims also stretch too far the plain meaning of "relating to" as set forth in the statute.*

*Schaaf*, slip op. at 10-11 (emphasis added).[16]

Plaintiff relied heavily below on the district court decision in *Estate of Pew*, now overturned, and on *Genton v. Vestin Realty Mortgage II, Inc.*, No. 06cv2517-BEN (WMC), 2007 WL 951838 (S.D. Cal. Mar. 9, 2007). *Genton*, however, cited only the district court opinion in *Estate of Pew*, which is no longer good law. *Id.* at *3. Further, Plaintiff's reliance below on *Ali v. Federal Bureau of Prisons*, 128 S. Ct. 831 (2008), is misplaced. *Ali* held that the phrase "any other law

---

[16] Although only a few cases have applied Section 1332(d)(9)(C), virtually all of them concern claims that a defendant violated a term of a security or breached a fiduciary duty derived from state corporate law. *See, e.g., Williams v. Texas Commerce Trust Co.*, No. 05-1070-CV-W-GAF, 2006 WL 1696681 (W.D. Mo. Jun. 15, 2006) (plaintiffs' claims all related to the rights, duties, and obligations owed them as holders of securities); *Carmona v. Bryant*, No. CV-06-78-S-BLW, 2006 WL 1043987 (D. Idaho Apr. 19, 2006) (claim that the issuer's board of directors breached their fiduciary duties in approving sale of the company); *Indiana State Dist. Council of Laborers and Hod Carriers Pension Fund v. Renal Care Group, Inc.*, No. Civ. 3:05-0451, 2005 WL 2000658 (M.D. Tenn. Aug. 18, 2005) (claim for breach of state law fiduciary duties and self-dealing); *In re Textainer P'ship Sec. Litig.*, No. C. 05-0969 MMC, 2005 WL 1791559 (N.D. Cal. July 27, 2005) (holder of limited partnership units alleged breach of state law fiduciary duties).

24

enforcement officer," as part of the larger phrase "any officer of customs or excise or any other law enforcement officer," should be read broadly to include officers of the Federal Bureau of Prisons. *Id.* at 833. The Court noted that the disputed phrase included the word "any," which, "read naturally . . . has an expansive meaning" (*id.* at 835-36 (citations omitted)), and that "Congress could not have chosen a more all-encompassing phrase than 'any other law enforcement officer.'" *Id.* at 837. No all-encompassing term such as "any" is at issue here; rather, the statutory phrase is composed of "terms of limitation." *Estate of Pew*, 2008 WL 2042809, at *5. Accordingly, *Ali* is inapposite.

In sum, Plaintiff's interpretation of Section 1332(d)(9)(C) would mean that a nationwide class action involving $300 billion of dollars of federally-registered and publicly-sold securities could not proceed in federal court. That result would make many words in Section 1332(d)(9)(C) meaningless, render Section 1332(d)(9)(A) superfluous, and be contrary to the stated intent of CAFA. Accordingly, if the Court reaches Section 1332(d)(9)(C), it should reject Plaintiff's interpretation, follow *Estate of Pew* and *Schaaf*, and hold that Section 1332(d)(9)(C) covers only traditional state law claims concerning rights and duties conferred by ownership of the instruments themselves and, therefore, presents no bar to the removal of this case.

## CONCLUSION

The District Court's order remand this action should be reversed.

June 9, 2008

Respectfully submitted,

_____

Dean J. Kitchens
DKitchens@gibsondunn.com
Michael Dore
MDore@gibsondunn.com
Lindsay Pennington
LPennington@gibsondunn.com
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

*Attorneys for the Underwriter Appellants*

Brian E. Pastuszenski
bpastuszenski@goodwinprocter.com
Inez H. Friedman-Boyce
ifriedmanboyce@goodwinprocter.com
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Lloyd Winawer
lwinawer@goodwinprocter.com
Goodwin Procter LLP
10250 Constellation Blvd.
21st Floor
Los Angeles, CA 90067
(310) 788-5157

*Attorneys for the Countrywide Appellants*

# CONCLUSION

The District Court's order remand this action should be reversed.

June 9, 2008                          Respectfully submitted,

Dean J. Kitchens
DKitchens@gibsondunn.com
Michael Dore
MDore@gibsondunn.com
Lindsay Pennington
LPennington@gibsondunn.com
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

*Attorneys for the Underwriter
Appellants*

Brian E. Pastuszenski
bpastuszenski@goodwinprocter.com
Inez H. Friedman-Boyce
ifriedmanboyce@goodwinprocter.com
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Lloyd Winawer
lwinawer@goodwinprocter.com
Goodwin Procter LLP
10250 Constellation Blvd.
21st Floor
Los Angeles, CA 90067
(310) 788-5157

*Attorneys for the Countrywide Appellants*

## PROOF OF SERVICE

The undersigned hereby certifies that he caused two true and accurate copies of Brief of Appellants, as well as one true and correct copy of the accompanying two-volume Appellants' Excerpts of Record, to be served by first class mail and e-mail on the below-listed counsel at their respective addresses this 9th day of June 2008.

*Attorneys for Plaintiff-Appellee:*

Paul J. Geller
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432

Spencer A. Burkholz
Thomas E. Egler
Darren J. Robbins
David C. Walton
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301

Samuel H. Rudman
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY 11747

Seth Lipner
DEUTSCH & LIPNER
1325 Franklin Avenue Suite 225
Garden City, NY 11530

*Attorneys for Defendants/Appellants Banc of America Securities LLC, Barclays Capital Inc., Bears Stearns & Co. Inc., Citigroup Global Markets Inc., Credit Suisse First Boston, Deutsche Bank Securities, Inc., Edward D. Jones & Co., L.P., Goldman Sachs & Co., Greenwich Capital Markets, Inc., J.P. Morgan Securities Inc., Lehman Brothers Inc., Morgan Stanley & Co. Incorporated, UBS Securities LLC:*

Dean J. Kitchens
Michael H. Dore
Lindsay R. Pennington
GIBSON DUNN & CRUTCHER LLP
333 S. Grand Avenue
Los Angeles, CA 90071

Blake E. Williams

EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

VERNON SCHAAF, JULIAN BOIK,
and ALFRED STREUFERT, on behalf
of themselves and others similarly situated,

     Plaintiffs,

  v.

RESIDENTIAL FUNDING CORPORATION,
HELLER FINANCIAL, INC.,

     Defendants, and

MARSHALL & ISLEY BANK,

     Nominal Defendant.

Civil No. 05-1319 (JNE/SRN)

**REPORT AND
RECOMMENDATION**

---

Vernon J. Vander Weide, Esq., on behalf of Plaintiffs

Andrew J. Holly, Esq. and James K. Langdon, Esq. on behalf of Defendant Residential
Funding Corporation

Larry D. Espel, Esq. and Monte A. Mills, Esq., on behalf of Defendant Heller Financial
Inc.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

  The above entitled matter came before the undersigned United States Magistrate

Judge on Plaintiffs' Motion to Remand (Doc. No. 10). This matter has been referred to

the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local

Rule 72.1. For the reasons set forth below, this Court recommends denying Plaintiffs'

Motion to Remand and retaining jurisdiction over all of Plaintiffs' claims.

1

I.    **BACKGROUND**

Plaintiffs commenced this putative class action (pursuant to Minn. R. Civ. P. 23.02) in Minnesota state court on June 10, 2005. (Doc. No. 1). In their Complaint, Plaintiffs allege that they "and members of the class they seek to represent were solicited and induced by Miller & Schroeder Financial, Inc. (MSF) to purchase debentures issued by United Homes, Inc. (UHI)." (Compl. ¶ 1.) Plaintiffs allege that UHI and MSF represented to the Securities and Exchange Commission (SEC) that UHI was in full compliance with the loan covenants in its RFC and Heller loan agreements based upon false representations made by Defendants Residential Funding Corporation (RFC) and Heller Financial, Inc. (Heller) to MSF and UHI. (Id.) The RFC and Heller representations were repeated in the prospectus used to register UHI's debentures (hereinafter Debentures) with the SEC and various states and to sell UHI's debentures to public investors, including Plaintiffs. (Id.) Plaintiffs allege the Debentures are now worthless. (Id.)

Plaintiffs allege that RFC and Heller materially participated in, aided and abetted, and assisted, MSF's and UHI's fraudulent and deceptive conduct by representing to UHI, MSF, the SEC and, indirectly through MSF and UHI's prospectus, to prospective purchasers of the UHI debentures that UHI was in compliance with the applicable loan agreements. (Id. ¶¶ 2-3.) Plaintiffs' Complaint contains three counts: Count I alleges that RFC and Heller violated the Minnesota Consumer Fraud Act (Minn. Stat. §§ 8.31, 325F.69); Count II alleges that RFC and Heller committed common law fraud; and Count III alleges that Heller was unjustly enriched by its conduct. (Id. ¶¶ 519-49.) Within these counts, Plaintiffs also claim that RFC and Heller aided and abetted fraud

2

and statutory fraud allegedly committed by MSF.

Defendants removed the action to this Court on July 1, 2005 pursuant to the Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109-2, 119 Stat. 4 (2005) which grants original federal jurisdiction over and allows removal of certain state class action suits. (Doc. No. 1.) Plaintiffs now move to remand the action back to state court because they claim CAFA does not cover their claims. (Doc. Nos. 10, 16.)

## II.    PARTIES' POSITIONS

The parties agree that the Complaint sets forth only state law claims. (Doc. No. 1; Doc. No. 16 at 8.) While Plaintiffs do not dispute that Defendants' removal satisfies all of the elements of removal under CAFA, they argue that this Court lacks jurisdiction over this action because CAFA, the relevant provision of which is codified at 28 U.S.C. § 1453(d)(3), exempts from its removal provisions "any class action that solely involves . . . claim[s] that relate to the rights, duties . . . and obligations relating to or created by or pursuant to any securities" (Doc. No. 16 at 3). Plaintiffs assert: "The claims in this case relate to duties and obligations relating to a security. Debentures are 'securities' within the meaning of section 2(a)(1) of the Securities Act of 1933," codified at 15 U.S.C. § 77b(a)(1). (Id. at 4.) Plaintiffs claim:

> the "duties and obligations" at issue here were those imposed upon Defendants to tell the truth—and not lie—about UHI's compliance with their respective loan agreements in response to the underwriter's request for the lenders' certificates stating that UHI was in compliance with Defendants' loan agreements. The underwriter's request was prompted by the SEC's demand that the prospectus used to sell the debentures disclose the status of UHI's compliance with its senior lenders' loan agreements.

(Id. at 4.) Therefore, Plaintiffs argue that their claims are exempt from CAFA's removal provisions and that this case should be remanded to state court. (Id.)

3

Defendants do not dispute that the UHI debentures are securities as defined under CAFA. Heller, however, counters that Plaintiffs' claims do not fall within the CAFA exception Plaintiffs cite because their claims are "several steps removed from the Debentures" and thus, do not, "relate[] to the rights, duties . . . and obligations relating to . . . any security." (Doc. No. 24 at 3.) Heller argues that:

> The SEC required [MSF], the underwriter of the Debentures, to disclose the status of [UHI's] lending arrangements in the Prospectus. [MSF] asked [UHI] to obtain letters from its lenders concerning the status of its credit lines. At [UHI's] request, Heller provided such a letter. It is a long stretch to say that Plaintiffs' claims against Heller involve duties or obligations "relating to" the Debentures within the meaning of the § 1453(d)(3) exception.

(Id. at 4.) Heller also argues that the legislative history of the CAFA exemption shows that Congress intended the exception to be narrowly construed. (Doc. No. 24 at 8.) RFC adds that Plaintiffs' claims do not "solely" allege that RFC or Heller "breached any term of the Debentures, any fiduciary duty created by the Debentures, or the state or federal securities laws under which the [d]ebentures were issued." (Doc. No. 27 at 8.) RFC further argues that:

> This case is surely not a dispute between a corporation and its shareholders about the meaning of certain securities or corporate duties created thereunder. Rather, Plaintiffs have alleged garden-variety state law fraud and unjust enrichment claims that claim that RFC and Heller breached a common law duty to "tell the truth." The allegations in the Complaint are simply not "based upon" an allegation that RFC or Heller breached a duty created by the Debentures.

(Id.)

The parties also disagree as to which party has the burden of persuasion on Plaintiffs' motion to remand. RFC argues that "[b]ecause Plaintiffs seek to invoke an exception to CAFA's baseline diversity jurisdiction rule, [Plaintiffs] bear the burden of

4

demonstrating that exception's application." (Doc. No. 27 at 4.)  In support of this

position, Heller cites to a U.S. Senate Judiciary Committee report to CAFA which

provides: "If a purported class action is removed pursuant to these jurisdictional

provisions, the named plaintiff(s) should bear the burden of demonstrating that the

removal was improvident (i.e., that the applicable jurisdictional requirements are not

satisfied)." (Doc. No. 24 at 9 (citing S. Rep. 109–14, at 45.) But Plaintiffs argue that "[i]t

is well established that there exists a strong presumption against removal jurisdiction"

and that "[t]his policy is grounded on the power reserved to the states by the

Constitution." (Doc. No. 16 at 8.)  Plaintiffs "acknowledge that the Senate report reflects

a preference for federal jurisdiction over cases subject to CAFA," but argue that "the

[c]onstitutional antecedents of the strong presumption against removal jurisdiction . . .

must prevail over an expression of [c]ongressional intent to the contrary." (Id. at 9.)

III.    DISCUSSION

        A federal court must remand a removed case "[i]f at any time before final

judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. §

1447(c) (2000).  "Federal district courts have original jurisdiction over 'all civil actions

arising under the Constitution, laws, or treaties of the United States.'" Caterpillar Inc. v.

Williams, 482 U.S. 386, 392 n.6 (1987) (quoting 28 U.S.C. § 1331).  "Whenever a

separate and independent claim or cause of action within" federal question "jurisdiction .

. . is joined with one or more otherwise non-removable claims or causes of action, the

entire case may be removed and the district court may determine all issues therein, or,

in its discretion, may remand all matters in which State law predominates." 28 U.S.C. §

1441(c) (2000).

Courts apply the "well-pleaded complaint" rule to determine if federal question jurisdiction exists. Krispin v. May Dep't Stores Co., 218 F.3d 919, 922 (8th Cir. 2000). The "well-pleaded complaint" rule "provides that federal jurisdiction exists only where a federal question is presented on the face of the plaintiff's properly pleaded complaint." Id. All doubts concerning federal jurisdiction must be resolved in favor of remand. In re Bus. Men's Assurance Co., 992 F.2d 181, 183 (8th Cir. 1993) (per curiam). If one federal claim is present on the face of the complaint, the entire case is properly removed, and a federal court cannot remand. Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1037 (8th Cir. 1999); see also County of St. Charles v. Mo. Family Health Council, 107 F.3d 682, 684 (8th Cir. 1997) (finding that a district court has no discretion to remand a claim that states a federal question), cert. denied, 522 U.S. 859 (1997). "A complaint that pleads violations of both state and federal law is within the original jurisdiction of a federal district court." Country Club Estates, L.L.C. v. Town of Loma Linda, 213 F.3d 1001, 1003 (8th Cir. 2000). Pursuant to 28 U.S.C. § 1367(a), a court may retain supplemental jurisdiction over any state law claims that form part of the same case or controversy as a plaintiff's federal claims. Williams v. Ragnone, 147 F.3d 700, 703 (8th Cir. 1998).

### A.    Assignment of the Burden of Persuasion

As noted above, the parties disagree as to which party bears the burden of persuasion on Plaintiffs' motion to remand. Plaintiffs concede that the legislative history of CAFA suggests Plaintiffs should bear the burden of proving removal was improper. But, as the Supreme Court has stated:

the policy of the successive acts of Congress regulating the jurisdiction of

6

federal courts is one calling for the strict construction of such legislation. The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."

Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-109 (1941). In the Eighth

Circuit, in the absence of diversity jurisdiction, "[t]he party opposing remand has the

burden of establishing federal subject-matter jurisdiction." Green v. Ameritrade, Inc.,

279 F.3d 590, 596 (8th Cir. 2002). The question before this Court is whether CAFA

shifts the burden of persuasion. The Seventh Circuit recently answered the question

this way:

> [Defendant] maintains that the Class Action Fairness Act reassigns that burden to the proponent of remand. It does not rely on any of the Act's language, for none is even arguably relevant. Instead it points to this language in the report of the Senate Judiciary Committee: "If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional provisions are not satisfied)." S. Rep. 14, 109th Cong. 1st Sess. 42 (2005). This passage does not concern any text in the bill that eventually became law. When a law sensibly could be read in multiple ways, legislative history may help a court understand which of these received the political branches' imprimatur. But when the legislative history stands by itself, as a naked expression of "intent" unconnected to any enacted text, it has no more force than an opinion poll of legislators—less, really, as it speaks for fewer. Thirteen Senators signed this report and five voted not to send the proposal to the floor. Another 82 Senators did not express themselves on the question; likewise 435 Members of the House and one President kept their silence.
>     . . . . [N]aked legislative history has no legal effect, as the Supreme Court held in Pierce v. Underwood, 487 U.S. 552, 566-68 . . . (1988). A Committee of Congress attempted to alter an established legal rule by a forceful declaration in a report; the Justices concluded, however, that because the declaration did not correspond to any new statutory language that would change the rule, it was ineffectual. Just so here. The rule that the proponent of federal jurisdiction bears the risk of non-persuasion has been around for a long time. To change such a rule, Congress must enact a

7

statute with the President's signature (or by a two-thirds majority to override a veto).

Brili v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005) (Easterbrook, J.); see also Judy v. Pfizer, Inc., No. 4:05CV1208RWS, 2005 WL 2240088, at *2 (E.D. Mo. Sept. 14, 2005) (slip opinion) (finding in a CAFA removal case that the court was "compelled to follow the precedent of the Eighth Circuit Court of Appeals which places the burden on the party seeking removal"); see, e.g., Comes v. Microsoft Corp., No. 05-CV-562, 2005 WL 3454427, *4 (S.D. Iowa Nov. 22, 2005) (slip opinion) (finding in a CAFA removal case that "[a]s the party seeking to remove this case to federal court and opposing remand, the burden is on [defendant] to demonstrate that removal was proper").

In the absence of any corresponding statutory text addressing the burden of persuasion, the Court will not impute to Congress the views of thirteen Senators. Therefore, the Court applies the pre-CAFA law of this circuit that "[t]he party opposing remand has the burden of establishing federal subject-matter jurisdiction." Green, 279 F.3d at 596. Thus, to remain in this Court, Defendants must show that "a federal question is presented on the face of the plaintiff's properly pleaded complaint." Krispin, 218 F.3d at 922.

**B.     Applicability of the CAFA Removal Text**

The parties here agree that each of the claims asserted in this action are state law claims. The question before the Court is whether this Court has original jurisdiction over these claims pursuant to some federal statute. Defendants contend that CAFA gives this Court original jurisdiction over Plaintiffs' state law claims. (Doc. No. 1.) CAFA

8

allows a defendant to remove: (1) any civil action filed under Federal Rule of Civil

Procedure 23 or similar state statute (i.e., a "class action"); (2) involving more than 100

individuals; (3) where the amount in controversy is over $5 million; and (4) where any

member of the class of plaintiffs is a citizen of a state different from any defendant. 28

U.S.C. §§ 1332(d)(1)(B), (d)(2), (d)(11)(A)-(B).[1]  Plaintiffs do not dispute Defendants'

contention (Doc. No. 1 at 3-6; Doc. No. 24 at 3) that each of the above four elements is

present on the face of its pleadings.  In any case, Defendants have shown that at least

two of the elements are present on the face of the Complaint, because Plaintiffs: (1)

seek a "class action" as defined by CAFA (Compl. ¶ 14); and (2) allege they purchased

Debentures valued at approximately $7 million (Compl. ¶¶ 12, 21).  As to the minimal

diversity and numerosity requirements, Defendants contend that these elements are not

plead in the Complaint but rely on facts generated in what Defendants characterize as

Plaintiffs' attorneys earlier "essentially identical class action," titled First National Bank of

the North v. Miller & Schroeder Financial, File No. DC-MC 00-15958 (Minn. Dist. Ct. no

settlement date provided) (Doc. No. 1 ¶ 3.)  Plaintiffs incorporate information gathered

and documents generated in this prior action in their present complaint. (Compl. at 16

n.1.)  According to Defendants, that class action alleged the same claims against RFC

and Heller as in the present action but put forward different putative class

representatives. (Doc. No. 1 ¶ 3.)  That action was also brought in state court, the

motion for class certification was denied, and Heller and RFC settled with the putative

---

[1] The action must also have been commenced on or after February 18, 2005, the effective date of CAFA.  See Pub. L. 109-2, 119 Stat. 4 (2005).  The present action was commenced in state court on June 10, 2005.  (Doc. No. 1.)

class representatives. (Id.) According to Defendants, the plaintiffs in the prior action alleged that approximately 400 individuals (Id.) purchased the same Debentures at issue here and that the plaintiffs resided in multiple states across the United States (Id. ¶ 12.) Given these specific unrebutted assertions by Defendants coupled with Plaintiffs' incorporation of at least portions of the earlier class action in their Complaint, the Court finds Defendants have shown that the elements of a CAFA removal exist in Plaintiffs' current action.

Therefore, unless Plaintiffs' action is excepted from the removal statute, jurisdiction in this Court is proper and Plaintiffs' remand motion should be denied. The application of the exception claimed by Plaintiffs, 28 U.S.C. § 1453(d)(3), turns on how closely "the rights, duties . . . and obligations" provided in the exception must be tethered to "any security." Id. Congress set forth, in part, that such obligations must "relat[e] to . . . any security." Id. Plaintiffs contend that the Defendants had a "duty" or "obligation" to "tell the truth about UHI's compliance with their respective loan agreements in response to the underwriter's request" (prompted by the SEC) "for the lenders' certificates stating that UHI was in compliance with Defendants' loan agreements." (Doc. No. 16 at 4.) The Court finds that Plaintiffs' interpretation fails based upon the express text of the statute. The exception only applies where the class action "solely involves . . . a claim that relates to the . . . obligations relating to . . . any security." § 1453(d)(3). The "solely involves" language narrows the broader "relating to" language. The Court finds this language limits the reach of the exception to those traditional state law claims between a corporation and its shareholders for, as example, breach of the terms of the security at issue or of the underlying corporate charter.

10

Plaintiffs' claims also stretch too far the plain meaning of "relating to" as set forth in the statute.

Moreover, to the extent the statute leaves room for Plaintiffs' interpretation, that interpretation is belied by the purpose of the statute as set forth in the contemporaneous legislative history of CAFA. Where the face of the statute does not resolve the question before the Court, the Court looks to the legislative history of the statute in an attempt to bring further clarity to the phrase. See Breedlove v. Earthgrains Baking Cos., 140 F.3d 797, 800-01 (8th Cir. 1998) ("Having determined that there is ambiguity in the statute because it is subject to more than one reasonable interpretation, we next turn to the legislative history."), cert. denied, 525 U.S. 921 (1998). To the extent the exception is ambiguous, the Court finds that the legislative history of the exception supports Defendants' position that Plaintiffs' claims are not covered by the exception. In particular, the Court reviewed the U.S. Senate Judiciary Committee's Report prepared in connection with the passage of CAFA, S. Rep. 109-14, reprinted in 2005 U.S.C.C.A.N. 3, and cited by the parties as an authoritative source of the legislative history of CAFA. (Doc. No. 16 at 6; Doc. No. 24 at 6; Doc. No. 7 n.2). The verbatim CAFA exception text Plaintiffs cite in support of their motion to remand is codified in two places in the United States Code, in a removal statute, codified at 28 U.S.C. § 1453(d)(3), and in the diversity jurisdiction statute, codified at 28 U.S.C. § 1332(d)(9). Plaintiffs concede that the Senate Report's discussion of the diversity jurisdiction exception also applies to the removal statute exception. (Doc. No. 16 at 6 & n.4.) In discussing the diversity jurisdiction statute, the Senate Report describes the intent of the exceptions set forth there as follows:

11

> [CAFA] excepts . . . those class actions that solely involve claims that relate to matters of corporate governance arising out of state law. The purpose of this provision is to avoid disturbing in any way the federal vs. state court jurisdictional lines already drawn in the securities litigation class action context by the enactment of the Securities Litigation Uniform Standards Act of 1998 (P.L. 105-353).
>
> The Committee intends that this exemption be narrowly construed. By corporate governance litigation, the Committee means only litigation based solely on (a) enterprises such as corporations, partnerships, limited partnerships, limited liability companies, limited liability partnerships, and business trusts; (b) state common law regarding the duties owned between and among owners and managers of business enterprises; and (c) the rights arising out of the terms of the securities issued by business enterprises.
>
> This exemption would apply to a class action relating to a corporate governance claim filed in the court of any state. Consequently, it would apply to a corporate governance class action regardless of the forum in which it may be filed, and regardless of whether the law to be applied is that of the State in which the claim is filed.
>
> . . . .
>
> The . . . exemption . . . is also intended to cover disputes over the meaning of the terms of a security, which is generally spelled out in some formative document of the business enterprise . . . .

S. Rep. 109-14, 45, reprinted in 2005 U.S.C.C.A.N. 3, 42-43. Unlike the legislative history Defendants cite in support of their position that Plaintiffs bear the burden of persuasion showing remand is proper, the above legislative history is directly tied to and elucidates existing statutory text. The Senate's report reflects a contemporaneous understanding that the changes enacted by the CAFA (1) expand the scope of federal jurisdiction over certain class actions; (2) set forth narrow exceptions to the Court's original jurisdiction of those actions; and (3) set forth narrow exceptions to the corresponding removal statute. The Court finds that this legislative intent dictates retaining jurisdiction over the claims presented in this lawsuit. Plaintiffs' claims are not of the type intended to be excepted by Congress—for example, those related to corporate governance or the terms of securities spelled out in formative documents of

12

the corporation. Indeed, Plaintiffs' claims are not even leveled against the corporation

that registered the securities at issue. The connection to the securities Plaintiffs allege

is too tenuous to fit within the narrow confines of the exception envisioned by Congress.

Based upon the above express statutory language and its underlying legislative

history, the Court finds that Defendants have met their burden of showing that this Court

possesses jurisdiction over this action pursuant to 28 U.S.C. § 1453. Therefore, the

Court recommends denying Plaintiffs' Motion to Remand (Doc. No. 10).

Based upon the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1.    Plaintiffs' Motion to Remand (Doc. No. 10) be DENIED and

jurisdiction retained over all of the claims or causes of action

presented in Plaintiffs' Complaint.

Dated: January 4, 2006

s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. L.R. 72.1(c)(2) any party may object to this Report and Recommendation
by filing with the Clerk of Court, and serving all parties by January 19, 2005 a writing which
specifically identifies those portions of this Report to which objections are made and the
basis of those objections. Failure to comply with this procedure may operate as a forfeiture
of the objecting party's right to seek review in the Court of Appeals.

13

# EXHIBIT C



No. 08-55865

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DAVID H. LUTHER, Individually and On Behalf of All Others Similarly Situated,

Plaintiff-Appellee,

vs.

COUNTRYWIDE HOME LOANS SERVICING, LP, et al.,

Defendants-Appellants.

RECEIVED
CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

JUN 09 2008

DOCKETED  6-9

DATE

Appeal From the United States District Court
for the Central District of California
No. 2:07-cv-08165-MRP(MANx)
The Honorable Mariana R. Pfaelzer

## PLAINTIFF-APPELLEE'S [SIMULTANEOUS] ANSWERING BRIEF

*Panel*

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
SPENCER A. BURKHOLZ (147029)
JOSEPH D. DALEY (185743)
THOMAS E. EGLER (189871)
LAUREN G. KERKHOFF (236902)
CHRISTINA A. ROYCE (254551)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff-Appellee

No. 08-55865

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DAVID H. LUTHER, Individually and On Behalf of All Others Similarly Situated,

Plaintiff-Appellee,

vs.

COUNTRYWIDE HOME LOANS SERVICING, LP, et al.,

Defendants-Appellants.

Appeal From the United States District Court
for the Central District of California
No. 2:07-cv-08165-MRP(MANx)
The Honorable Mariana R. Pfaelzer

## PLAINTIFF-APPELLEE'S [SIMULTANEOUS] ANSWERING BRIEF

*COUGHLIN STOIA GELLER*
RUDMAN & ROBBINS LLP
SPENCER A. BURKHOLZ (147029)
JOSEPH D. DALEY (185743)
THOMAS E. EGLER (189871)
LAUREN G. KERKHOFF (236902)
CHRISTINA A. ROYCE (254551)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff-Appellee

*David H. Luther v. Countrywide Home Loans Servicing, LP, et al.*
Ninth Circuit No. 08-55865

## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellee David H. Luther is not a corporation.

C1 of 1

# TABLE OF CONTENTS

Page

I.   STATEMENT OF JURISDICTION ................................................1

II.  ISSUE PRESENTED ...........................................................2

III. STANDARD OF REVIEW .......................................................2

IV.  STATEMENT OF THE CASE ...................................................2

     A.   Nature of the Case...................................................2

     B.   Course of Proceedings.............................................4

     C.   The Disposition Below..............................................5

V.   STATEMENT OF FACTS .......................................................6

VI.  SUMMARY OF ARGUMENT ..................................................10

VII. ARGUMENT.....................................................................11

     A.   CAFA's General Removal Provision Cannot Trump the 1933
          Act's Specific Anti-Removal Mandate ...........................11

          1.   The Earlier, Specific 1933 Act's Anti-Removal Features
               Cannot Yield to the Later, More-General Removal
               Features of CAFA .............................................11

          2.   The Policy Concerns Underlying CAFA's Removal
               Provision Have Nothing to Do with the Dual Federal-
               State Jurisdiction the 1933 Act Has Expressly Provided
               for 75 Years................................................20

     B.   The Second Circuit's Pew Case Does Not Change the Outcome
          in This Case Involving 1933 Act Claims ..........................25

     C.   Defendants' Unfounded Fears Do Not Justify Obliterating the
          1933 Act's Express Anti-Removal Mandate ......................26

Page

VIII.  CONCLUSION ...............................................................28

# TABLE OF AUTHORITIES

Page

## CASES

*Abrego v. Dow Chem. Co.*,
   443 F.3d 676 (9th Cir. 2006).............................................16, 19

*Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs.*,
   435 F.3d 1140 (9th Cir. 2006).............................................18

*Breuer v. Jim's Concrete of Brevard, Inc.*,
   538 U.S. 691 (2003) ......................................................10, 12

*Bulova Watch Co. v. United States*,
   365 U.S. 753 (1961) ......................................................13

*Cosme Nieves v. Deshler*,
   786 F.2d 445 (1st Cir. 1986) .............................................12

*Duncan v. Stuetzle*,
   76 F.3d 1480 (9th Cir. 1996).............................................15

*Emrich v. Touche Ross & Co.*,
   846 F.2d 1190 (9th Cir. 1988).............................................12

*Estate of Pew v. Cardarelli*,
   No. 06-5703-mv, 2008 U.S. App. LEXIS 10269
   (2d Cir. May 13, 2008) .............................................18, 25, 26

*Garcia v. United States*,
   469 U.S. 70 (1984) ......................................................21

*Gaus v. Miles*,
   980 F.2d 564 (9th Cir. 1992)..........................................6, 26

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983) ......................................................27

**Page**

*In re Chimenti,*
   79 F.3d 534 (6th Cir. 1996) .................................................................25

*Libhart v. Santa Monica Dairy Co.,*
   592 F.2d 1062 (9th Cir. 1979) .......................................................10, 15

*Lowery v. Ala. Power Co.,*
   483 F.3d 1184 (11th Cir. 2007),
   *cert. denied,* No. 07-1246, 2008 U.S. LEXIS 4659
   (U.S. June 2, 2008) ...............................................................................18

*McAtee v. Capital One, F.S.B.,*
   479 F.3d 1143 (9th Cir. 2007) ..............................................................2

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,*
   456 U.S. 353 (1982) ............................................................................15

*Posadas v. Nat'l City Bank,*
   296 U.S. 497 (1936) ............................................................................19

*Pritchett v. Office Depot, Inc.,*
   420 F.3d 1090 (10th Cir. 2005) ...........................................................18

*Radzanower v. Touche Ross & Co.,*
   426 U.S. 148 (1976) .....................................................................*passim*

*Resolution Trust Corp. v. Gallagher,*
   10 F.3d 416 (7th Cir. 1993) ................................................................21

*Romine v. Compuserve Corp.,*
   160 F.3d 337 (6th Cir. 1998) ..............................................................24

*Rowan v. United States Post Office Dep't,*
   397 U.S. 728 (1970) ............................................................................22

*Schwegmann Bros. v. Calvert Distillers Corp.,*
   341 U.S. 384 (1951) ............................................................................22

Page

*Testa v. Katt,*
    330 U.S. 386 (1947) ........................................................................23

*United States v. United Cont'l Tuna Corp.,*
    425 U.S. 164 (1976) ........................................................................19

*Zuber v. Allen,*
    396 U.S. 168 (1969) ........................................................................21

## STATUTES, RULES AND REGULATIONS

U.S. Const. art. VI, cl. 2 ......................................................................23

15 U.S.C. .......................................................................................*passim*
    §77 .........................................................................................*passim*
    §77k ........................................................................................*passim*
    §77l .........................................................................................12, 14
    §77l(a)(2) ..................................................................................1, 3, 4,
    §77o ........................................................................................1, 3, 4
    §77p(b) ..............................................................................1, 4, 12, 15
    §77p(c) ..............................................................................1, 5, 14, 15
    §77p(d)(2)(A) ...............................................................................15
    §77p(f)(2) ......................................................................................1
    §77v(a) ...................................................................................*passim*

28 U.S.C. .......................................................................................*passim*
    §1332 ......................................................................................*passim*
    §1332(d)(9)(A) .........................................................................15, 27
    §1332(d)(9)(B) .............................................................................15
    §1332(d)(9)(C) ......................................................................6, 15, 27
    §1453(c) ...............................................................................2, 5, 10

Pub. L. No. 104-67, 109 Stat. 737 (1995)................................................14

Pub. L. No. 105-353, 112 Stat. 3227 (1998)............................................14

Page

## LEGISLATIVE HISTORY

S. Rep. No. 109-14 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3 ........16, 20, 21, 23

148 Cong. Rec. H840 (daily ed. Mar. 13, 2002) (statement of Rep. Pryce) ...........22

149 Cong. Rec. H5282 (daily ed. June 12, 2003) (statement of Rep. Sensenbrenner) ...................................................................................22

151 Cong. Rec. H729 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner) ...................................................................................16

## SECONDARY AUTHORITIES

Aristotle, *Prior Analytics* (Book II) (350 B.C.) (translation by A. J. Jenkinson) ...................................................................................17

## I.    STATEMENT OF JURISDICTION

The California state court in which the action was originally brought had jurisdiction under §22 of the 1933 Securities Act ("1933 Act"), 15 U.S.C. §77v, because the claims alleged arise under §§11, 12(a)(2), and 15 of the 1933 Act, 15 U.S.C. §§77k, 77l(a)(2), and 77o. Section 22(a) expressly states that "[e]xcept as provided in section 16(c), no case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court in the United States."[1] *See* Addendum Ex. A (reproducing §22(a)'s codified version). Section 16(c) of the 1933 Act, 15 U.S.C. §77p(c), in turn, refers to the removal of "covered class actions," which are defined in §§16(f)(2) and 16(b) as class-action lawsuits brought on behalf of more than 50 persons asserting claims *under the "statutory or common law of any State." See* Addendum Ex. B (reproducing §16's codified version).

This action asserts no state statutory or common law claims.

Despite that fact, the defendants removed the action from state court to federal court, claiming jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"),

---

[1]    Throughout this Brief, *emphasis* is added and citations are omitted unless otherwise noted.

- 1 -

28 U.S.C. §1332.[2] The district court found to the contrary, granting plaintiff's motion for remand to state court.

When defendants successfully petitioned this Court for permission to appeal the district court's remand order, this Court assumed jurisdiction under 28 U.S.C. §1453(c).

## II.    ISSUE PRESENTED

Whether plaintiff's action alleging solely 1933 Act claims was properly remanded to state court, when: (a) the 1933 Act expressly provides that those claims may be brought in state court; and (b) in contrast to the more-general removal provision in CAFA, the 1933 Act expressly and narrowly forbids removal of those claims properly brought in state court.

## III.    STANDARD OF REVIEW

This Court reviews the district court's interpretation of CAFA *de novo. McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1145 (9th Cir. 2007).

## IV.    STATEMENT OF THE CASE

### A.    Nature of the Case

The underlying class action concerns the unprecedented devaluation of certain mortgage-backed securities (the "Certificates") in 2007, as the market began to

---

[2]    The relevant text of CAFA is reproduced at Addendum Ex. C.

- 2 -

understand that the mortgage loans backing the Certificates were far more risky and prone to default than had been disclosed to investors. As defendants disclosed the massive failures and additional risks involved in the mortgages, the investors' Certificates declined in value by billions of dollars.

The class action was brought by plaintiff David H. Luther on behalf of all persons or entities who had acquired the Certificates pursuant and/or traceable to false and misleading registration statements issued between January 2005 and June 2007, and Prospectus Supplements issued in connection therewith.

The defendants-appellants are Countrywide Alternative Loan Trust ("CWALT"), Countrywide Home Loans Servicing LP, assorted Countrywide subsidiaries, over 280 trusts that issued the Certificates, and various underwriters.[3] The action involves strict liability and negligence claims brought solely under the 1933 Act.

---

[3]    The over-280 issuers are listed at ¶14 of plaintiff's "Complaint for Violation of §§11, 12(a)(2) and 15 of the Securities Act of 1933" ("Complaint" or "Cplt"). In addition to CWALT and Countrywide Home Loans Servicing LP, the "Countrywide Defendants" include Countrywide Home Loans, Inc., Countrywide Securities Corporation, and various CWALT directors and officers. Cplt:¶¶16-17, 31-36. The "Underwriter Defendants" include Morgan Stanley & Co. Incorporated, UBS Securities LLC, Deutsche Bank Securities Inc., Citigroup Global Markets Inc., Lehman Brothers Inc., Greenwich Capital Markets, Inc., Edward D. Jones & Co., L.P., J.P. Morgan Securities Inc., Credit Suisse First Boston, Goldman, Sachs & Co., Banc of America Securities LLC, Barclays Capital Inc., and Bear Stearns & Co. Inc. Cplt:¶¶18-30.

**B.    Course of Proceedings**

On November 14, 2007, plaintiff filed this action in the Superior Court of California, County of Los Angeles, seeking relief against defendants and only alleging claims brought pursuant to the 1933 Act for violations of §§11, 12(a)(2), and 15 on behalf of himself and similarly situated investors.  The 1933 Act provides for concurrent jurisdiction in state and federal court, but forbids (with limited exceptions) removal of cases arising under its subchapters where plaintiff initially files suit in state court. *See* 15 U.S.C. §77v(a).[4]

On December 14, 2007, defendants removed this action to the district court in the Central District of California based solely upon CAFA.  CD1.[5]  Plaintiff moved shortly thereafter for the matter to be remanded back to Los Angeles Superior Court. CD14.

Following briefing by the parties on the removal/remand issue, the district court on February 28, 2008, granted plaintiff's remand motion.  CD26.

---

[4]    In 1998, Congress passed the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), which allowed for the removal of certain *state-law* securities class actions, but not 1933 Act claims. *See* 15 U.S.C. §77p(b) ("based upon the statutory or common law *of any State*").

[5]    In this Brief, references to numbered entries on the district court's civil docket will be styled "CD[Docket #]:[Page #]."

- 4 -

The Countrywide and Underwriter Defendants then petitioned this Court, under 28 U.S.C. §1453(c), for permission to appeal from the remand order. The Court *sua sponte* consolidated their two petitions and granted them, ordering the present briefing.

### C.    The Disposition Below

The district court began the "Analysis" portion of its remand order by noting that the "1933 Act flatly prohibits removal of cases arising under its provisions that were initially brought in state court." CD26:3. The "only exception" to that provision – allowing removal of a so-called "'covered security'" – was added to the securities laws with SLUSA, codified at 15 U.S.C. §77p(c). *Id*. That exception did not apply here, however, where plaintiff's claims did not involve a "'covered security.'" *Id*.

The court then noted that with "no basis for removal arising from the securities laws," defendants "rely solely upon CAFA." CD26:4. That reliance was misplaced, however, for CAFA was created to thwart plaintiffs' counsel from trying to defeat the various elements of *diversity* jurisdiction – and "[n]one of these concerns resonate in 1933 Act cases." *Id*.; *see also* CD26:5 (CAFA appears directed towards litigants' "artful circumvention" of diversity requirements).

Moreover, the 1993 Act's specific anti-removal prohibition "'trumps'" the more-general removal provision in CAFA. CD26:5. The court's conclusion was supported by the basic principle of statutory construction that "'a narrow, precise, and

- 5 -

specific subject is not submerged by a later enacted statute covering a more generalized spectrum.'" *Id.* (citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976)). Absent a clear intention otherwise, the rule must hold – and defendants had not shown any such clear intention. *Id.*

At bottom, federal courts are courts of limited jurisdiction, and federal jurisdiction must be rejected when there are any doubts as to the right of removal in the first instance. *Id.* (citing this Court's decision in *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992)). Given the 1933 Act's "absolute prohibition on removal," those doubts warranted a remand to state court. CD26:6.[6]

## V.   STATEMENT OF FACTS

CWALT is a limited-purpose finance subsidiary of Countrywide Financial that was set up to acquire mortgage pools; these mortgage pools, in turn, were sold by numerous trusts to investors in various classes of Certificates pursuant to Registration

---

[6]   The district court declined to consider a *further* justification for remand, namely, whether the Complaint fell within CAFA's express exceptions to removal. CD26:6. That said, however, the court acknowledged that the Complaint "may indeed fall within the CAFA exception" for causes of action that relate to the rights, duties, and obligations "'relating to or created by or pursuant to any security.'" *Id.* n.6 (quoting CAFA, 28 U.S.C. §1332(d)(9)(C)).

Statements and Prospectus Supplements. *See* Cplt:¶44.[7] These billions of dollars of Certificates were supported by large pools of mortgage loans. Cplt:¶5.

Plaintiff alleges that the Registration Statements omitted and/or misrepresented information about the underlying mortgages and their borrowers, with the result that the Certificates sold to plaintiff and the class were much riskier than represented. Cplt:¶¶7-8. Although too numerous to recount here – and likely unneeded, as this appeal turns on an issue of statutory interpretation – the facts describing the omitted and/or misleading information can be summarized as follows:

Sellers of the underlying mortgages to CWALT were issuing many of the mortgages to borrowers who: (i) did not meet the debt-to-income ratio purportedly required by the lender; (ii) did not provide adequate documentation to support the income required to issue the loans pursuant to the lenders' own guidelines; and (iii) did not have the income required by the lenders' own guidelines to afford the required mortgage payments. Cplt:¶7. This occurred through so-called "Alt-A" loans, which purportedly were for borrowers with good credit histories but whose documentation of income, assets, and other personal financial information to support the loan was problematic – either because they were self-employed or for other reasons. *Id.* The

---

[7]    The Complaint is attached, along with a Summons, to defendants' Notice of Removal in the first entry on the district court docket at CD1.

Registration Statements allegedly concealed that the "other" reasons sometimes included not only borrowers who could not provide the required documentation, but those who refused to provide it as well. *Id.*

In addition, the Registration Statements did not disclose that the quality controls for loan issuance were so weak that some Alt-A borrowers received loans despite claiming income levels that could not possibly be reconciled with their stated jobs. Cplt:¶7. Also, many of the subject properties' appraisals were inflated, as appraisers caved in to pressure to provide a desired appraisal value regardless of the actual value of the underlying property – just so that the loan could close. *Id.*

As a result of the foregoing, the Certificates sold to plaintiff and the class were much riskier than represented in the Registration Statements. Cplt:¶8. Despite that undisclosed risk, defendants were able to get top-notch "AAA" ratings on many of the tranches of Certificates. *Id.* In truth, these tranches were not equivalent to AAA-rated corporate bonds.[8] *Id.*

By the summer of 2007, the amount of uncollectible mortgage loans underlying the Certificates began to be publicly revealed. Cplt:¶9. To avoid scrutiny for their

---

[8]    The rating agencies are Moody's Investors Service, Fitch Investor Service and Standard & Poor's Corporation (the "Rating Agencies"). Rating Agencies are approved as "Nationally Recognized Statistical Rating Organizations" by the Securities and Exchange Commission, and are supposed to provide independent, easy-to-use measurements of relative credit risk. Cplt:¶8 n.2.

own involvement in the sale of the Certificates, the Rating Agencies began to put negative watch labels on many Certificate classes, ultimately downgrading many. *Id.*; *see also* Cplt:¶¶59-60.

The underlying mortgages suffered from increased delinquency rates, and Countrywide financial has taken huge write-downs of its own residual interest in many of the Alt-A trusts. Cplt:¶9, ¶61. As a result, the Certificates *are no longer marketable at prices anywhere near the original prices* paid by plaintiff and the class. Cplt:¶9. Certificate holders were exposed to much more risk than the Registration Statements/Prospectus Supplements represented. *Id.*

The Complaint alleges that defendants owed plaintiff and the other class members who purchased the Certificates pursuant to the Registration Statements/Prospectus Supplements

> the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statements/Prospectus Supplements to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.

Cplt:¶89. Therefore, plaintiff and the other class members who hold the Certificates issued pursuant to the Registration Statements "have the right to rescind and recover the consideration paid" for their Certificates. Cplt:¶91.

-9-

## VI.   SUMMARY OF ARGUMENT

Defendants' attempt to have the district court's remand order under 28 U.S.C. §1453(c) overturned should be denied.

For the past 75 years, aggrieved investors have been able to bring 1933 Act lawsuits in *either* federal *or* state court. 15 U.S.C. §77v(a). At the same time, the 1933 Act's §22(a) contains an express prohibition against removal from those state courts:

> Except as provided [in circumstances not found here], *no case arising under this title and brought in any State court* of competent jurisdiction *shall be removed to any court of the United States.*

15 U.S.C. §77v(a).

The prohibition against removal could not be clearer. Indeed, citing §22(a) and other non-removability provisions, the Supreme Court reaffirmed that "[w]hen Congress has 'wished to give plaintiffs *an absolute choice of forum*, it has shown itself capable of doing so *in unmistakable terms.'*" *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 697 (2003). Moreover, it has long been settled that "removal statutes are strictly construed *against* removal." *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).

It is against this clear backdrop that defendants seek to muddy the federal securities laws' jurisdictional reach.

- 10 -

They insist that the general removal provision in CAFA, which was undeniably spurred by Congress's concerns with *diversity-defeating* allegations in state-court class actions, somehow trumps the specific non-removal strictures of §22(a) that have thrived for the past 75 years.

As explained *infra*, defendants reach too far.  They cannot overcome an amalgam of clear statutory text, Supreme Court precedent, and unmistakable signals from Congress, that together confirm that the absolute choice of forum guaranteed plaintiffs by §22(a) has not been repealed by CAFA's diversity-centric aims.

## VII.  ARGUMENT

### A.    CAFA's General Removal Provision Cannot Trump the 1933 Act's Specific Anti-Removal Mandate

#### 1.    The Earlier, Specific 1933 Act's Anti-Removal Features Cannot Yield to the Later, More-General Removal Features of CAFA

The underlying case brings claims solely pursuant to the 1933 Act, which provides (with the exception of situations not relevant here) that a plaintiff may file a 1933 Act claim in either state or federal court.  The statute directs that

> [t]he district courts of the United States and [the] United States courts of any Territory shall have jurisdiction of offenses and violations under this title . . . *concurrent with State and Territorial courts* . . . of all suits in equity and actions at law brought to enforce any liability or duty created by this title.

15 U.S.C. §77v(a).  Notably, §22(a) of the 1933 Act affirmatively forbids defendants from removing cases (like this one) that are filed in state court.  *Id.* ("*no case* arising

- 11 -

under this title and *brought in any State court* of competent jurisdiction *shall be removed* to any court of the United States").[9]  In other words, while "Congress has provided for concurrent jurisdiction in cases arising under the 1933 Act, it has also expressly provided that *a case once filed in state court may not be removed*." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1197 (9th Cir. 1988) (directing remand of 1933 Act claims).

Thus, injured investors alleging 1933 Act §§11 and 12 claims – like plaintiff here – have always been entitled to file their lawsuits in state court and to have that choice of forum honored.  As a unanimous Supreme Court stated in *Breuer*, 538 U.S. 691, among the "examples of *indisputable prohibitions of removal*" in federal statutes is §22(a) of the 1933 Act: "When Congress has 'wished to give plaintiffs an absolute choice of forum, it has shown itself capable of doing so in unmistakable terms.'" *Id.* at 696-97; *see also Cosme Nieves v. Deshler*, 786 F.2d 445, 451 (1st Cir. 1986) (contrasting the "ambiguous" concurrent-jurisdiction language in the Fair Labor Standards Act with the "unmistakable terms" and "absolute choice of forum" in 1933 Act's §22(a) that forbids removal from state court).

---

[9]    In 1998, Congress amended securities legislation with SLUSA, which allowed for the removal of certain *state-law-based* securities class actions – but not 1933 Act claims.  *See* 15 U.S.C. §77p(b) ("based upon the statutory or common law *of any State*").  This is not a state-law class action, and defendants did not seek to remove it on SLUSA grounds.

It is against this backdrop that defendants urge the Court to apply the broad, *diversity-centric* removal provision of CAFA over the 1933 Act's specific and express prohibition against removal. Plainly, on this issue the two statutes cannot "mutually coexist," *Radzanower*, 426 U.S. at 155, for to permit removal based on CAFA would violate the 1933 Act's prohibition on removal of *any* case "arising under" the 1933 Act. *See* 15 U.S.C. §77v(a).

The two statutes' failure to "mutually coexist" is easily solved, however, given the "basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum." *Radzanower*, 426 U.S. at 153. In their simultaneous briefing before this Court, defendants will undoubtedly emphasize that CAFA is the more recently enacted statute, but that temporal-dependent argument should falter. The Supreme Court has repeatedly explained that "'[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, *regardless of the priority of enactment*.'" *Id.*; *accord Bulova Watch Co. v. United States*, 365 U.S. 753, 758 (1961).

In any event, whatever small significance defendants might glean from CAFA's date of enactment pales beside Congress's repeated failures to reverse its decision allowing plaintiffs to bring 1933 Act actions in *either* federal or state court. Congress revisited and comprehensively amended both the 1933 Act and the Securities

- 13 -

Exchange Act of 1934 in 1995 with the passage of the Private Securities Litigation Reform Act ("PSLRA"),[10] and again in 1998 with SLUSA.[11]  In both instances, Congress made extensive changes to the securities laws – but kept intact the non-removal provision applicable here.

The 1995 PSLRA did not modify the federal securities laws' jurisdictional provisions, including the 1933 Act's non-removal provisions.  Three years later in SLUSA, however, Congress *did* address the jurisdictional provisions as part of a sweeping revision of the federal securities laws, but left intact investors' right to bring 1933 Act class-action claims in state court.  In SLUSA, Congress specifically revisited the removability of 1933 Act claims and reaffirmed that §§11 and 12 claims generally are not removable – crafting a single exception, under §16(c), for certain *state-law-based* class-action suits (which exception does not apply to plaintiff's federal claims here):

> *Except as provided in section 16(c)*, no case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court of the United States.

---

[10]    Pub. L. No. 104-67, 109 Stat. 737 (1995).

[11]    Pub. L. No. 105-353, 112 Stat. 3227 (1998).

- 14 -

15 U.S.C. §77v(a).[12]

With this unambiguous text creating a lone exception to non-removal, Congress reiterated and preserved its intent that aggrieved investors may bring suits in state court under the 1933 Act without facing removal. *See* 15 U.S.C. §§77p(d)(2)(A), 77v(a). SLUSA's "comprehensive reexamination and significant amendment" to an existing law is evidence that Congress affirmatively intended to preserve the non-removability feature of 1933 Act claims. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 381-82 (1982).

Even CAFA itself provides further evidence that Congress intended that the 1933 Act's non-removability features remain intact. Certain securities class actions are expressly exempted from its reach, and the statute does not address §22(a) of the 1993 Act. *See* 28 U.S.C. §1332(d)(9)(A)–(C). Given those gaps in CAFA's textual makeup, removal under the circumstances here is unwarranted. *Cf. Libhart*, 592 F.2d at 1064 ("removal statutes are *strictly construed against* removal"); *accord Duncan v.*

---

[12]    The exception in §16(c) concerns the removal of "covered" class actions and "covered securit[ies]" as set forth in §16(b) – and that section specifies that "*[n]o covered class action based upon the statutory or common law of any State* or subdivision thereof *may be maintained in any State or Federal court* by any private party alleging [various claims]." 15 U.S.C. §77p(b). In other words, SLUSA authorizes the removal and preemption of state-law-based securities claims, while leaving intact investors' ability to bring federal 1933 Act claims in state courts. Tellingly, defendants did not try to remove this action under SLUSA.

- 15 -

*Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction").

CAFA's legislative history also confirms that Congress was aware of jurisdictional lines already drawn regarding the removability of 1933 Act claims, and that Congress intended to *leave them undisturbed*. *See, e.g.*, S. Rep. No. 109-14, at 29 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 28 (noting that CAFA "excludes from its federal jurisdiction grant . . . any securities class actions covered by [SLUSA]"); S. Rep. No. 109-14, at 50 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 46-47 (CAFA intended "not to disturb the carefully crafted" jurisdictional framework established in SLUSA); *see also* 151 Cong. Rec. H729 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner) (noting that "[t]he purpose of this provision is to avoid disturbing in any way the Federal vs. State court jurisdictional lines already drawn in the securities litigation class action context by the enactment of [SLUSA]").

Because SLUSA's "jurisdictional" framework plainly preserved the 1933 Act's non-removability features – removing and pre-empting *only state-law class-action claims* – CAFA does not disturb that preservation. Indeed, defendants' assertion in their Petition that "CAFA complements SLUSA" (Petition at 10), was an inadvertent concession that SLUSA's preservation of §22(a)'s overall non-removability regime – albeit with one, irrelevant exception – controls here.

- 16 -

Defendants will likely repeat their Petition's argument concerning CAFA's enumerated exceptions, asserting that because one of them excludes "'covered securities,'" "cases not involving 'covered securities' (like the one at bar) were necessarily *included* within CAFA's deliberate expansion of removal jurisdiction," and that "Congress knew precisely what it was doing in drafting the specific exceptions." Petition at 10 (emphasis in original).

Defendants' assertions are wrong on at least three levels.

First, defendants engage in classic question-begging by assuming, as the premise to their argument, that the overall prohibition against removal contained in 1933 Act §22(a) is subsumed by CAFA generally and thus required an enumerated "exception" to preserve it.[13] But Congress would have had to have been much more specific in overriding §22(a), had it intended to do away with 75 years of non-removal of federal-question claims via a general, diversity-centric removal vehicle. *Radzanower*, 426 U.S. at 153. (And, as explained more fully *infra* in §VII.A.2., it is CAFA's concern with *diversity*-defeating tactics by state-court litigants that was a main driving force behind the statute's removal provision.)

---

[13]     Begging the question is the fallacy of assuming the truth of the very thing being questioned. *See, e.g.*, Aristotle, *Prior Analytics* (Book II) 16 (350 B.C.) (translation by A. J. Jenkinson) ("whenever a man tries to prove what is not self-evident by means of itself, then he begs the original question").

Second, defendants' focus on "covered" versus "non-covered" securities – *i.e.*, those traded on a national exchange versus those that are not – is nonsensical, given their insistence elsewhere that this Court should heed CAFA's stated purpose to address interstate cases of "'national importance.'" Petition at 2. Accepting that purpose at face value, why would CAFA nonetheless exclude from its reach securities traded widely on a national exchange?

That oddity figures into the third problem with defendants' "exceptions" argument – namely, that (in their view, at least) CAFA is a model of clarity. It most certainly is not clear; witness, for example, the *"entirely illogical"* time limit for petitioning to appeal that its plain text nonetheless requires. *Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs.*, 435 F.3d 1140, 1146 (9th Cir. 2006); accord *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1093 (10th Cir. 2005). Despite having been "passed on by both Houses of Congress and approved by the President," CAFA's all-important time-limit text was so illogical that this Court felt constrained to "replac[e] it with a word of the exact opposite meaning." *Amalgamated Transit*, 435 F.3d at 1146. And CAFA's textual ambiguity is not limited to its stated time limits. *See, e.g., Estate of Pew v. Cardarelli*, No. 06-5703-mv, 2008 U.S. App. LEXIS 10269, at *3, *12 (2d Cir. May 13, 2008) (acknowledging CAFA's overall "imperfect wording" and "imperfect drafting"); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1187 (11th Cir. 2007) (to decide appeal "we must unravel some of the mysteries

- 18 -

of CAFA's cryptic text"), *cert. denied*, No. 07-1246, 2008 U.S. LEXIS 4659 (U.S. June 2, 2008); *Abrego*, 443 F.3d at 678, 686 (noting CAFA's "muddled" and "bewildering language").

That same absence of clarity extends to CAFA's effect upon 1933 Act §22(a)'s plain non-removability mandate: Congress simply did not address it.

Given all of the foregoing, defendants seem to be left with the argument that Congress decided to repeal §22(a)'s express non-removal feature by *implication*. That cannot be, however, given the "cardinal principle of statutory construction that repeals by implication are not favored." *United States v. United Cont'l Tuna Corp.*, 425 U.S. 164, 168-69 (1976). A repeal of §22(a) is not "'absolutely necessary . . . in order that [the] words [of CAFA] shall have any meaning at all.'" *Radzanower*, 426 U.S. at 153. Had Congress intended to change §22(a)'s plain text, it easily could have done so via a companion amendment at the same time it enacted CAFA. But it did not.

At bottom, Congress's "intention . . . to repeal must be clear and manifest." *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936). Such manifest clarity is missing here.

- 19 -

2.     **The Policy Concerns Underlying CAFA's Removal Provision Have Nothing to Do with the Dual Federal-State Jurisdiction the 1933 Act Has Expressly Provided for 75 Years**

The stated policies that drove CAFA's passage further show that Congress could not have intended its removal provisions to trump the 1933 Act's specific anti-removal features that have existed for the past 75 years.

While the Senate Report accompanying CAFA stated that the Act had three "key components," second among those three – and the one relevant to defendants' arguments here – was Congress's aim to "correct[] *a flaw in the current diversity jurisdiction statute* (28 U.S.C. § 1332) *that prevents* most interstate class actions *from being adjudicated in federal courts.*" S. Rep. No. 109-14, at 5 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 6; *see also id.* (CAFA was intended to "make[] it harder for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction.").[14]

_____

[14]     The remaining two "key components" of CAFA were (1) a *consumer* class action "bill of rights" designed to protect class members in the context of settlements, and (2) a direction to the Judicial Conference of the United States to make recommendations concerning fair and reasonable attorney fees. S. Rep. No. 109-14, at 5 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 6. These two aims are irrelevant to resolving any conflict between the 1933 Act's non-removal mandate and CAFA's removal function.

- 20 -

These are no isolated statements, as the district court pointed out: CAFA's background "is replete with references to this problem." CD26:4. And those references emphasize Congress's displeasure with state-court class-action plaintiffs' ability, through artful pleading, to keep out of federal court actions that would be better brought there. *See* S. Rep. No. 109-14, at 6 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 7 ("because of a technical glitch in the diversity jurisdiction statute (28 U.S.C. § 1332), such cases are usually excluded from federal court"); S. Rep. No. 109-14, at 10 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 11 ("The current rules governing federal jurisdiction have the unintended consequence of keeping most class actions out of federal court, even though most class actions are precisely the type of case for which diversity jurisdiction was created.").

These statements by the Committee on the Judiciary, contained in the Senate report accompanying CAFA's passage, are strong evidence of Congress's intent. *See, e.g., Garcia v. United States*, 469 U.S. 70, 76 (1984) ("we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which '[represent] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation'") (quoting *Zuber v. Allen*, 396 U.S. 168, 186 (1969)); *Resolution Trust Corp. v. Gallagher*, 10

- 21 -

F.3d 416, 421 (7th Cir. 1993) (a conference report is "the most persuasive evidence of congressional intent besides the statute itself").[15]

Importantly, those stated concerns about diversity-defeating actions being kept out of federal court have absolutely no relevance to 1933 Act federal-question cases. Well before CAFA's debate and passage, under the 1933 Act concurrent jurisdiction in *either federal* or state court *was always present* – regardless of the parties' "diversity" or amount in controversy. Thus, there was no need for Congress to create yet another vehicle – *i.e.*, CAFA – as a means to shuttle those particular cases back into federal court.

In addition, Congress emphasized that CAFA was needed to halt state courts from imposing their individual substantive laws on national market conduct: "The effect of class action abuses in state courts is being exacerbated by the trend toward

---

[15]    Additional statements by CAFA's proponents provide further evidence that Congress intended to leave 1933 Act anti-removal provisions intact. *See, e.g.*, 149 Cong. Rec. H5282 (daily ed. June 12, 2003) (statement of Rep. Sensenbrenner) (noting that the draft legislation that eventually became CAFA "specifically excludes a number of Federal securities and State-based corporate fraud lawsuits"); 148 Cong. Rec. H840 (daily ed. Mar. 13, 2002) (statement of Rep. Pryce) (stating that "[t]his has nothing to do with Enron . . . *securities litigation is carved out entirely by this legislation*"). These statements are additional indicators of Congress's intent. *See Rowan v. United States Post Office Dep't*, 397 U.S. 728, 733 (1970) (citing approvingly "[s]tatements by the proponents of the legislation in both the House and Senate" while interpreting statute); *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 394-95 (1951) (sponsor's statement of purpose is persuasive indication of congressional intent).

- 22 -

'nationwide' class actions, *which invite one state court to dictate to 49 others what their laws should be* on a particular issue, thereby undermining basic federalism principles."[16] Lest there be any doubt regarding Congress's concerns, the Senate Report clarified that "[t]he most egregious of such cases are those in which one state court issues nationwide rulings that actually contradict the laws of other states."[17]

Those animating concerns are utterly inapposite to federal claims (like the ones here) brought in state courts – for those courts, under concurrent-jurisdiction principles, *must apply the substantive federal law* attendant to any alleged federal securities violations. *See, e.g., Testa v. Katt*, 330 U.S. 386, 392-94 (1947) (states courts faced with federal statutes must apply and enforce federal law); *see also* U.S. Const. art. VI, cl. 2 (*i.e.,* the "Supremacy Clause").[18] Defendants have carped about the potential of having to negotiate differing state-court discovery and pre-trial schedules (Petition at 3), but conspicuously omitted that even in state court, they (and

---

[16]    S. Rep. No. 109-14, at 24 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 24.

[17]    S. Rep. No. 109-14, at 24 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 24.

[18]    "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

- 23 -

plaintiffs) must litigate these suits under the *same substantive federal precedents* that would apply in federal court.

Defendants' overarching argument that CAFA was intended for cases of "national importance"[19] – ostensibly for cases like this one – sweeps too broadly, while ignoring the federal securities laws' history. Surely securities actions under the 1933 Act were regarded as of equal "national importance" back in the Great Depression – and yet Congress deliberately chose to allow 1933 Act claims to be brought in state courts. Indeed, Congress has always considered state courts capable of overseeing 1933 Act litigation. *Romine v. Compuserve Corp.*, 160 F.3d 337, 342 (6th Cir. 1998) (1933 Act's "consent to jurisdiction . . . bespeaks a policy that recognizes the availability of comprehensive state systems for adjudication of federal securities actions").

At bottom, what defendants casually derided as plaintiff's "pleading tactics" by filing in state court (Petition at 14) is actually the right of aggrieved investors to utilize the forum of their choice for 1933 Act claims. Congress bestowed that absolute right of forum choice in 1933, and for over seven decades (and several amendments) Congress has never taken it away. *Romine*, 160 F.3d at 342 (under 1933 Act, "defendants cannot defeat a plaintiff's choice of a state forum by removing the action

---

[19]   Petition at 13.

to federal court"); *In re Chimenti*, 79 F.3d 534, 540 (6th Cir. 1996) (forcing "petitioners to litigate a case in a forum they did not choose, even though the applicable law was designed to *preserve* their choice of forum, constitutes significant damage") (emphasis in original).

Given the foregoing, it is apparent that the 1933 Act's specific non-removal provision has not been abrogated by CAFA's general removal availability aimed at salvaging diversity actions.

### B.    The Second Circuit's *Pew* Case Does Not Change the Outcome in This Case Involving 1933 Act Claims

Defendants will undoubtedly spill much ink urging the Court to follow a Second Circuit decision that they submitted in support of their petition: *Pew*, 2008 U.S. App. LEXIS 10269 (2-1 decision under CAFA reversing remand order).  As explained below, however, *Pew* offers them little solace – and offers this Court little guidance.

First, and perhaps most strikingly, *Pew* did not involve federal 1993 Act claims like those here. Rather, the case concerned a *state-law-based* class-action claim. *See id.* at *2 (noting the suit was brought under "New York's consumer fraud statute"). Thus, the purely *state-law* nature of the claim in *Pew* meant that that court never grappled with the overriding issue presented here: Whether the specific anti-removal provision of the 1933 Act – preserved for 75 years – is somehow abolished by the general, diversity-based removal function of CAFA.  Had the *Pew* court been

- 25 -

presented with *that* issue, the answer would have been clear. *See, e.g., Radzanower*, 426 U.S. at 153 (axiomatic that "a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum").

Moreover, *Pew* never addresses a central tenet underlying any analysis of removal versus remand; namely, that removal is strictly construed, and any doubt as to the right of removal requires that federal jurisdiction be rejected. *Gaus*, 980 F.2d at 566. *Pew*'s failure to acknowledge this axiom is puzzling, given its repeated concessions that CAFA is hardly a model of clarity. *See* 2008 U.S. App. LEXIS 10269, at *3 ("the matter is not entirely clear given the imperfect wording of the statute"); *id.* at *12 ("the imperfect drafting of the statute makes it ambiguous"); *id.* at *18-*19 (majority concedes that its interpretation "arguably" renders some of the text "superfluous," given CAFA's "'cryptic text'").

That ambiguity, in combination with the 1933 Act's express anti-removal feature, controls here and renders *Pew* inapposite.

C.   **Defendants' Unfounded Fears Do Not Justify Obliterating the 1933 Act's Express Anti-Removal Mandate**

Defendants' "the-sky-is-falling" tone that colored their Petition is insufficient to ignore precedent and statutory-construction principles. They insisted that this case "likely will affect all future 1933 Act cases brought in state courts both in this Circuit and throughout the country" (Petition at 6), but that broad conclusion is unfounded.

- 26 -

First, as defendants conceded, CAFA *already* contains an express exception for "covered securit[ies]" – which includes, likely, the bulk of 1933 Act claims.[20] It also contains a *separate* exception for "*any*" security" under the 1933 Act, provided certain criteria are met.[21] Thus, even if these exceptions were deemed necessary to preserve the 1933 Act's anti-removal mandate – which plaintiff does not concede, *see supra* – the exceptions' existence, as well as their sweeping scope, show that there will actually be very little litigation on the issue. Either plaintiff is correct and 1933 Act §22(a) has not been abrogated by CAFA, or CAFA's broad exceptions for "covered" and "any" securities removes virtually all uncertainty from future cases.

Defendants have appealed to notions of "[j]udicial economy" (Petition at 7), but that tired bromide cannot override investors' statutory right to choose the forum of their choice. That choice was expressly provided for under the federal securities laws' original structure, put in place 75 years ago and still thriving despite Congressional amendments. It is defendants, not plaintiff, who made the deliberate decision to issue securities covered by the 1933 Act, and it is defendants who must deal with that decision's consequences. *Cf. Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983) (Section 11 of the 1933 Act "was designed to assure compliance with the

---

[20]    28 U.S.C. §1332(d)(9)(A).

[21]    28 U.S.C. §1332(d)(9)(C).

disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering.").

## VIII. CONCLUSION

Plaintiff's absolute choice of forum should not be disturbed by a general statute whose animating policies, aimed squarely at *diversity-based removal*, have nothing to do with 1933 Act claims properly brought in state courts that will apply federal law to them.

DATED: June 6, 2008

Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SPENCER A. BURKHOLZ
JOSEPH D. DALEY
THOMAS E. EGLER
LAUREN G. KERKHOFF
CHRISTINA A. ROYCE

JOSEPH D. DALEY

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff-Appellee

S:\CasesSD\CWALT\BRF00051816_Ans Simultaneous.doc

## RULE 28-2.6 STATEMENT OF RELATED CASE

Plaintiff-Appellee is unaware of any related cases.

## RULE 32(a)(7)(C) CERTIFICATE

The undersigned counsel certified that Plaintiff-Appellee's [Simultaneous]

Answering Brief uses a proportionally spaced Times New Roman typeface, 14-point,

and that the text of the brief comprises 6,162 words according to the word count

provided by Microsoft Word 2002 word processing software.

JOSEPH D. DALEY
Attorney for Plaintiff-Appellee

- 1 -



# ADDENDUM EX. A

# 1933 Securities Act §22(a)
# (codified at 15 U.S.C. §77v)

**§77v   Jurisdiction of offenses and suits**

**(a) Federal and State courts; venue; service of process; review; removal; costs**

The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, except as provided in section 77p of this title with respect to covered class actions, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter.  Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.  Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, 1292, and 1294 of title 28.  Except as provided in section 77p (c) of this title, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States. No costs shall be assessed for or against the Commission in any proceeding under this subchapter brought by or against it in the Supreme Court or such other courts.

I:\JoeD\CWALT\77v.doc

# ADDENDUM EX. B

# 1933 Securities Act §16
# (codified at 15 U.S.C. §77p)

**§77p    Additional remedies; limitations on remedies**

**(a) Remedies additional**

Except as provided in subsection (b) of this section, the rights and remedies provided by this subchapter shall be in addition to any and all other rights and remedies that may exist at law or in equity.

**(b) Class action limitations**

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—

(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or

(2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

**(c) Removal of covered class actions**

Any covered class action brought in any State court involving a covered security, as set forth in subsection (b) of this section, shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b) of this section.

**(d) Preservation of certain actions**

**(1) Actions under State law of State of incorporation**

**(A) Actions preserved**

Notwithstanding subsection (b) or (c) of this section, a covered class action described in subparagraph (B) of this paragraph that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity) may be maintained in a State or Federal court by a private party.

**(B) Permissible actions**

A covered class action is described in this subparagraph if it involves—

(I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or

(II) any recommendation, position, or other communication with respect to the sale of securities of the issuer that—

(I) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

(II) concerns decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

**(2) State actions**

**(A) In general**

Notwithstanding any other provision of this section, nothing in this section may be construed to preclude a State or political subdivision thereof or a State pension plan from bringing an action involving a covered security on its own behalf, or as a member of a class comprised solely of other States, political subdivisions, or State pension plans that are named plaintiffs, and that have authorized participation, in such action.

**(B) "State pension plan" defined**

For purposes of this paragraph, the term "State pension plan" means a pension plan established and maintained for its employees by the government of the State or political subdivision thereof, or by any agency or instrumentality thereof.

**(3) Actions under contractual agreements between issuers and indenture trustees**

Notwithstanding subsection (b) or (c) of this section, a covered class action that seeks to enforce a contractual agreement between an issuer and an indenture trustee may be maintained in a State or Federal court by a party to the agreement or a successor to such party.

**(4) Remand of removed actions**

In an action that has been removed from a State court pursuant to subsection (c) of this section, if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court.

**(e) Preservation of State jurisdiction**

The securities commission (or any agency or office performing like functions) of any State shall retain jurisdiction under the laws of such State to investigate and bring enforcement actions.

**(f) Definitions**

For purposes of this section, the following definitions shall apply:

**(1) Affiliate of the issuer**

The term "affiliate of the issuer" means a person that directly or indirectly, through one or more intermediaries, controls or is controlled by or is under common control with, the issuer.

**(2) Covered class action**

**(A) In general**

The term "covered class action" means—

**(i) any single lawsuit in which—**

**(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or**

omission, predominate over any questions affecting only individual persons or members; or

(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or

(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which—

(I) damages are sought on behalf of more than 50 persons; and

(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

### (B) Exception for derivative actions

Notwithstanding subparagraph (A), the term "covered class action" does not include an exclusively derivative action brought by one or more shareholders on behalf of a corporation.

### (C) Counting of certain class members

For purposes of this paragraph, a corporation, investment company, pension plan, partnership, or other entity, shall be treated as one person or prospective class member, but only if the entity is not established for the purpose of participating in the action.

### (D) Rule of construction

Nothing in this paragraph shall be construed to affect the discretion of a State court in determining whether actions filed in such court should be joined, consolidated, or otherwise allowed to proceed as a single action.

## (3) Covered security

The term "covered security" means a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 77r (b) of this title at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred, except that such term shall not include any debt security that is exempt from registration under this subchapter pursuant to rules issued by the Commission under section 77d (2) of this title.

# ADDENDUM EX. C

# 28 U.S.C. §1332

§1332.   **Diversity of citizenship; amount in controversy; costs**

**(a)**    The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

    **(1)** citizens of different States;

    **(2)** citizens of a State and citizens or subjects of a foreign state;

    **(3)** citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

    **(4)** a foreign state, defined in section 1603 (a) of this title, as plaintiff and citizens of a State or of different States.

For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

**(b)**    Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $75,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

**(c)**    For the purposes of this section and section 1441 of this title—

    **(1)** a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business; and

    **(2)** the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

**(d)**    **(1)** In this subsection—

    **(A)** the term "class" means all of the class members in a class action;

    **(B)** the term "class action" means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action;

    **(C)** the term "class certification order" means an order issued by a court approving the treatment of some or all aspects of a civil action as a class action; and

(D) the term "class members" means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.

(2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—

(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;

(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

(C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

(3) A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of—

(A) whether the claims asserted involve matters of national or interstate interest;

(B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

(C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

(D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

(F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

(4) A district court shall decline to exercise jurisdiction under paragraph (2)—

(A) (i) over a class action in which—

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant—

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

(5) Paragraphs (2) through (4) shall not apply to any class action in which—

(A) the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or

(B) the number of members of all proposed plaintiff classes in the aggregate is less than 100.

(6) In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

(7) Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction.

(8) This subsection shall apply to any class action before or after the entry of a class certification order by the court with respect to that action.

(9) Paragraph (2) shall not apply to any class action that solely involves a claim—

(A) concerning a covered security as defined under 16(f)(3) [1] of the Securities Act of 1933 (15 U.S.C. 78p (f)(3) [2]) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb (f)(5)(E));

(B) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or

(C) that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b (a)(1)) and the regulations issued thereunder).

(10) For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.

(11) (A) For purposes of this subsection and section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.

**(B) (i)** As used in subparagraph (A), the term "mass action" means any civil action (except a civil action within the scope of section 1711 (2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

**(ii)** As used in subparagraph (A), the term "mass action" shall not include any civil action in which—

　　**(I)** all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State;

　　**(II)** the claims are joined upon motion of a defendant;

　　**(III)** all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action; or

　　**(IV)** the claims have been consolidated or coordinated solely for pretrial proceedings.

**(C) (i)** Any action(s) removed to Federal court pursuant to this subsection shall not thereafter be transferred to any other court pursuant to section 1407, or the rules promulgated thereunder, unless a majority of the plaintiffs in the action request transfer pursuant to section 1407.

**(ii)** This subparagraph will not apply—

　　**(I)** to cases certified pursuant to rule 23 of the Federal Rules of Civil Procedure; or

　　**(II)** if plaintiffs propose that the action proceed as a class action pursuant to rule 23 of the Federal Rules of Civil Procedure.

**(D)** The limitations periods on any claims asserted in a mass action that is removed to Federal court pursuant to this subsection shall be deemed tolled during the period that the action is pending in Federal court.

**(e)**　　The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.

---

[1] So in original. Probably should be preceded by "section".

[2] So in original. Probably should be "77p(f)(3)".

I:\Joe D\CWALT\1332.doc

# DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

1.    That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.    That on June 6, 2008, declarant served PLAINTIFF-APPELLEE'S [SIMULTANEOUS] ANSWERING BRIEF by depositing two true copies thereof with Federal Express at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.    On the same date, declarant filed one original and 15 copies of PLAINTIFF-APPELLEE'S [SIMULTANEOUS] ANSWERING BRIEF with the Clerk of the Court by depositing with Federal Express at San Diego, California in a sealed package with postage thereon fully prepaid.

4.    That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of June, 2008, at San Diego, California.

JANA F. KUSY

CWALT

Service List - 6/6/2008    (07-0243)

Page 1 of 1

**Counsel For Defendant(s)**

Dean J. Kitchens
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
213/229-7000
213/229-7520(Fax)

Lloyd Winawer
Goodwin Procter LLP
10250 Constellation Blvd., 21st Floor
Los Angeles, CA 90067
310/788-5177
310/286-0992(Fax)

Brian E. Pastuszenski
Inez H. Friedman-Boyce
Goodwin Procter LLP
Exchange Place, 53 State Street
Boston, MA 02109-2881
617/570-1000
617/523-1231(Fax)

**Counsel For Plaintiff(s)**

Spencer A. Burkholz
Thomas E. Egler
Lauren G. Kerkhoff
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
619/231-1058
619/231-7423(Fax)

Seth E. Lipner
Deutsch & Lipner
1325 Franklin Avenue, Suite 225
Garden City, NY 11530
516/294-8899
516/742-9416(Fax)



**COUGHLIN STOIA GELLER RUDMAN & ROBBINS** LLP

SAN DIEGO · SAN FRANCISCO
NEW YORK · BOCA RATON
WASHINGTON, DC · HOUSTON
LOS ANGELES · PHILADELPHIA

RECEIVED
CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

JUN 09 2008

FILED _____
DOCKETED _____
DATE      INITIAL

June 6, 2008

VIA FEDERAL EXPRESS

Clerk of the Court
United States Court of Appeals
For The Ninth Circuit
95 Seventh Street
San Francisco, CA 94103-1526

> Re:    *Luther v. Countrywide Home Loans Servicing, LP, et al.*
>        9th Cir. No. 08-55865

Dear Clerk:

Enclosed please find for filing the original and sixteen copies of the following document:

**PLAINTIFF-APPELLEE'S [SIMULTANEOUS] ANSWERING BRIEF**

Please return a conformed copy of the above brief to me in the enclosed stamped, self-addressed envelope provided for your convenience. If you have any questions regarding this filing, please contact our office immediately. Thank you for your assistance.

Sincerely,

JANA P. KUSY
Legal Secretary to Joseph D. Daley

:jpk
Enclosures

S:\CasesSD\CWALT\Corres\9th Cir Clerk ltr 01.doc