**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW JERSEY CARPENTERS HEALTH FUND, *on Behalf of Itself and All Others Similarly Situated,* | **Case No.: 08-CV-5310 (DAB)** |
| Plaintiff, | **FILED UNDER SEAL** |
| *v.* | **ECF CASE** |
| NOVASTAR MORTGAGE, INC., NOVASTAR MORTGAGE FUNDING CORPORATION, SCOTT F. HARTMAN, GREGORY S. METZ, W. LANCE ANDERSON, MARK HERPICH, RBS SECURITIES, INC. f/k/a GREENWICH CAPITAL MARKETS, INC., d/b/a RBS GREENWICH CAPITAL, DEUTSCHE BANK SECURITIES, INC. and WELLS FARGO ADVISORS, LLC f/k/a WACHOVIA SECURITIES LLC, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF NEW JERSEY**
**CARPENTERS HEALTH FUND'S MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   STATEMENT OF FACTS ..................................................................... 4

III.  ARGUMENT ................................................................................... 9

      A.    The Proposed Class Meets All Requirements for Certifying A Class Under
            Rule 23(b)(3) ......................................................................... 9

      B.    The Rule 23(a) Requirements Are Satisfied ..................................... 10

            1.    The Class Contains at Least █ Members, Satisfying Numerosity ......... 10

            2.    The Class Satisfies Commonality ......................................... 11

            3.    The Class Satisfies Typicality ............................................ 13

            4.    The Class Representatives and Lead Counsel Will Fairly and
                  Adequately Protect the Interests of the Class ........................... 14

      C.    The Rule 23(b)(3) Requirements Are Satisfied .................................. 18

            1.    Common Questions of Law and Fact Predominate Over Any
                  Questions Affecting Only Individual Members ........................... 18

            2.    A Class Acton is Superior to Hundreds of Individual Actions
                  Based on the Same Facts With the Same Witnesses ...................... 22

IV.   CONCLUSION ............................................................................... 24

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)...................................................................................18

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013)..............................................................................18

*In re Bear Stearns Mortgage Pass-Through Certificates Litigation*,
  No. 08-cv-08093-LTS................................................................................16

*Comcast v. Behrend*,
  — U.S. —, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013).......................................20

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995).........................................................................10

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
  No. 98 Civ. 4318 (HB), 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sep. 20,
  2000) ..................................................................................................16

*In re Dynex Capital, Inc. Sec. Litig.*,
  No. 05 Civ. 1897 (HB), 2011 U.S. Dist. LEXIS 22484 (S.D.N.Y. Mar. 7,
  2011) ..............................................................................................16, 17

*Federal Finance Housing Agency v. Nomura Holding America, Inc.*,
  No. 11-cv-6201 (DLC).............................................................................22

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009).....................................................................13, 14

*Gary Plastic Packaging Corp. v. Merrill*,
  903 F.2d 176 (2d Cir. 1990).......................................................................10

*In re IndyMac Mortgage-Backed Sec. Litig.*,
  286 F.R.D. 226 (S.D.N.Y. 2012) .......................................................... *passim*

*In re IndyMac Mortgage-Backed Sec. Litig.*,
  No. 09-cv-4583 (LAK) .............................................................................16

*Ira Holtzman, C.P.A., & Assocs. Ltd. v. Turza*,
  728 F.3d 682 (7th Cir. 2013) .....................................................................20

2010410.1

*Kelleher v. ADVO, Inc.*,
  Civil No. 3:06CV01422(AVC), 2009 U.S. Dist. LEXIS 68914 (D. Conn. Mar.
  27, 2009) .................................................................................................................10

*Kottler v. Deutsche Bank AG*,
  No. 05 Civ. 7773 (PAC), 2010 U.S. Dist. LEXIS 30590 (S.D.N.Y. Mar. 29,
  2010) ......................................................................................................................13

*Laumann v. NHL*,
  No. 12-cv-1817 (SAS), 2015 U.S. Dist. LEXIS 63745 (S.D.N.Y. May 14,
  2015) ..............................................................................................................9, 10, 14

*In re Lehman Bros. Sec. & ERISA Litig.*,
  No. 09 MD 2017 (LAK), 2013 U.S. Dist. LEXIS 13999 (S.D.N.Y. Jan. 23,
  2013) ......................................................................................................................16

*In re Livent, Inc. Noteholders Sec. Litig.*,
  210 F.R.D. 512 (S.D.N.Y. 2002) ...........................................................................11

*McMahan & Co. v. Wherehouse Entm't*,
  65 F.3d 1044 (2d Cir. 1995).................................................................................20

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
  No. 08 Civ 5653 (PAC), 2011 U.S. Dist. LEXIS 92597 (S.D.N.Y. Aug. 16,
  2011) ("*HEMT I*")...................................................................................10, 11, 17

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
  No. 08 Civ 5653 (PAC), 2014 U.S. Dist. LEXIS 35326 (S.D.N.Y. Mar. 17,
  2014) ("*HEMT II*") ...................................................................................... *passim*

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  No. 08-cv-8781 (HB), 2012 U.S. Dist. LEXIS 148865 (S.D.N.Y. Oct. 15,
  2012) ("*RALI I*") ....................................................................................................17

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  288 F.R.D. 290 (S.D.N.Y. 2013) ("*RALI II*").................................................11, 16

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  No. 08-cv-8781, 2013 U.S. Dist. LEXIS 180913 (S.D.N.Y. Dec. 27, 2013)
  ("*RALI III*")................................................................................................ *passim*

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
  709 F.3d 109 (2d Cir. 2013) ("*NovaStar*") ............................................................1

*N.J. Carpenters Vacation Fund v. Royal Bank of Scot. Grp., PLC*,
  No. 08-cv-5093 (HB), 2012 U.S. Dist. LEXIS 148865 (S.D.N.Y. Oct. 15,
  2012) ("*Harborview I*") ........................................................................................17

iii

*N.J. Carpenters Vacation Fund v. Royal Bank of Scot. Grp.*, *PLC*,
   No. 08-cv-5093, 2013 U.S. Dist. LEXIS 180913 (S.D.N.Y. Dec. 27, 2013)
   ("*Harborview II*") ............................................................................... *passim*

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) ..........................................................21, 23

*Pub. Emps. Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*,
   280 F.R.D. 130 (S.D.N.Y. 2012) ......................................................2, 12, 19, 20

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) ........................................................... *passim*

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)..............................................................18, 21

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir.1993).................................................................10, 13

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015)................................................................. *passim*

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
   546 F.3d 196 (2d Cir. 2008)....................................................................10

*Toney-Dick v. Doar*,
   No, 12 Civ. 9162 (KBF), 2013 U.S. Dist. LEXIS 134315 (S.D.N.Y. Sep. 13,
   2013) ...............................................................................................10

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
   283 F.R.D. 199 (S.D.N.Y. 2012) ........................................................ *passim*

*In re US FoodService Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013)....................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)....................................................................11, 13, 20

*In re Winstar Commc'ns. Sec. Litig.*,
   290 F.R.D. 437 (S.D.N.Y. 2013) .........................................................10, 16

iv

## I.      PRELIMINARY STATEMENT

Lead Plaintiff New Jersey Carpenters Health Fund ("Carpenters Health Fund" or "Lead Plaintiff") respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 23, to certify a class (the "Class") defined as:

> All those who purchased or otherwise acquired publicly offered certificates ("Certificates") representing interests in six NovaStar Mortgage Funding Trusts, NovaStar Home Equity Loan ("NHEL") Series 2006-3, Series 2006-4, Series 2006-5, Series 2006-6, Series 2007-1 and Series 2007-2 (the "NovaStar Trusts" or "Issuing Trusts") prior to May 21, 2008, pursuant or traceable to a single Shelf Registration Statement, dated June 16, 2006, accompanying Prospectus, and Prospectus Supplement filed with the Securities and Exchange Commission (the "SEC") by NovaStar Mortgage Funding Corporation a/k/a NovaStar Certificates Financing Corporation ("NMFC") (collectively, the "Offering Documents"), and were damaged thereby.[1]

This action arises out of the public offering of purportedly investment grade mortgage backed securities ("MBS") which collapsed in value to "junk bonds" soon after issuance when it became apparent that the underlying residential mortgage loans were impaired.  The Complaint alleges that the Offering Documents contained material misstatements and omissions in violation of Sections 11, 12 and 15 of the Securities Act of 1933 (the "Securities Act").  Specifically, the Complaint alleged that the Offering Documents contained material misstatements and omissions "because those documents reported standards for underwriting mortgages that the relevant underwriter had supposedly abandoned" or systematically disregarded.  *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 113 (2d Cir. 2013) ("*NovaStar*").

Courts have well recognized that class actions asserting claims under the Securities Act of 1933 are particularly well suited for class certification pursuant to Fed. R. Civ. P. 23 – not only because there is no need to prove individual issues such as reliance, but also because the only elements that must be proved are material misstatements and omissions in the Offering

---

[1] Defendants are excluded from the Class.

documents – elements which are necessarily the same for all putative class members.   In addition, over the last several years a substantial body of case law in this District has developed addressing class certification of Securities Act claims brought by purchasers of MBS. Indeed, class certification has been granted by every single court within the Second Circuit faced with the issue of whether to certify a class of MBS purchasers asserting Securities Act claims based on similar allegations that the Offering documents failed to disclose a systematic disregard of underwriting guidelines. *See, e.g., N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc*., No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326 (S.D.N.Y. Mar. 17, 2014) (Crotty, J.) ("*HEMT II*") (expanding previously certified class of mortgage-backed securities purchasers from one to two offerings in case with similar allegations); *In re IndyMac Mortgage-Backed Sec. Litig*., 286 F.R.D. 226 (S.D.N.Y. 2012) (Kaplan, J.) (certifying class made of mortgage-backed securities purchasers made up of ten offerings from two registration statements in case with similar allegations); *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 207 (S.D.N.Y. 2012) (Kaplan, J.) (certifying class of mortgage-backed securities purchasers from one offering in case with similar allegations*); Pub. Emps. Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc*., 280 F.R.D. 130, 132 (S.D.N.Y. 2012) (Baer J.) (certifying class of mortgage-backed securities purchasers from one offering in case with similar allegations); *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97 (S.D.N.Y. 2011) (Rakoff, J.) (certifying class of mortgage-backed securities purchasers made up of eighteen offerings from three registration statements in case with similar allegations); *N.J. Carpenters Vacation Fund v. Royal Bank of Scot. Grp.*, PLC, No. 08-cv-5093, 2013 U.S. Dist. LEXIS 180913 (S.D.N.Y. Dec. 27, 2013) (Baer, J.) ("*Harborview II*"); *N.J. Carpenters Health Fund v. Residential Capital, LLC*,

2

No. 08-cv-8781, 2013 U.S. Dist. LEXIS 180913 (S.D.N.Y. Dec. 27, 2013) (Baer, J.) ("*RALI III*").

Moreover, the claims here even more clearly warrant class certification because – unlike many of the above cases where the class included loans from a number of different originators (*e.g.*, New Century, Countrywide, etc.) – each implicating different underwriting guidelines, here **all** six NovaStar Offerings involved **only** NovaStar loans and NovaStar underwriting guidelines. Even more to the point and again, while not necessary for class certification, the Offerings at issue here were also all composed of the *very same kind of NovaStar loans*[2] with identical descriptions of Offering structures (credit enhancements, overcollateralization) and risk factors – a commonality not found in many of other certified mortgage-backed securities cases cited above. ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████

As a result, the claims here easily satisfy Fed. R. Civ. P. 23's requirements.  Rule 23(a)'s requirement of numerosity is met since there are at least 450 unique class members who purchased the Certificates at issue – well more than the required 40 potential class members; Rule 23(a)'s commonality requirement – which necessitates only a single common issue of law or fact – is satisfied since, among other reasons, the claims assert the falsity of identical Prospectus statements describing NovaStar underwriting guidelines; Rule 23(a)'s typicality

---

[2] "Certificates will represent ownership interests in . . . a pool of subprime mortgage loans consisting of two groups – a group of residential first-lien and second-lien, fixed and adjustable rate mortgage loans designated as Group I . . . and a group of residential first-lien and second-lien, fixed and adjustable rate mortgage loans designated as Group II . . . ."  Series 2006-3 Pro. Supp. at S-2; Series 2006-4 Pro. Supp. at S-2; Series 2006-5 Pro. Supp. at S-2; Series 2006-6 Pro. Supp. at S-2; Series 2007-1 Pro. Supp. at S-2; Series 2007-2 Pro. Supp. at S-2.

requirement of a common course of conduct is also satisfied since Defendants engaged in the same process of securitizing NovaStar loans originated under NovaStar guidelines in public Offerings using Offering Documents containing identical alleged misstatements and omissions; Rule 23(a)'s adequacy requirement is satisfied since there are no conflicts between the proposed Class Representatives and other members of the putative Class and the proposed Class Representatives are institutional investors with extensive experience successfully leading mortgage-backed securities class actions. Further, Cohen Milstein has served as Lead Counsel or Co-Lead Counsel in 8 mortgage-backed securities class actions – recovering over $1.5 billion for investors thus far – amply demonstrating their adequacy to represent the class.

The predominance of common issues of law and fact under Rule 23(b) are satisfied for the same reasons: the case will require shared proof of a systematic disregard of the same NovaStar underwriting guidelines in originating the same type of NovaStar loan which resulted in identical material misstatements and omissions in the Offering Documents and that the purported due diligence of the Defendant investment banks which relied on the same due diligence processes conducted by many of the same witnesses was inadequate. Finally, the prosecution of a class action in the Southern District of New York is the superior method for resolving this complex litigation involving the essentially identical Securities Act claims of █████████████████████████████████████████

For all these reasons and those below, the proposed Class should be certified.

## II.   STATEMENT OF FACTS

This proposed class action, alleging violations of Sections 11, 12(a), and 15 of the Securities Act, arises from the role of NovaStar and the Underwriter Defendants in collectively acquiring and then converting approximately 36,987 non-conforming first- and second-lien

4

adjustable and fixed-rate mortgage loans (the "Mortgages") into over $7.7 billion of Certificates – purportedly investment grade 30 year structured bonds sold to Plaintiff and at least ███ members of the Class via a series of six public Offerings pursuant to false and misleading Offering Documents containing *identical misstatements and omissions*.  ¶¶ 5, 34, 120-125[3]. Cash flow from the Mortgages, which was distributed to investors via a structure described in the Offering Documents, provided the only source of funds available for the thirty years of principal and interest payments owed to the purchasers of the Certificates.   ¶¶ 5, 58, 61-63.  All of the Certificates were sold pursuant to the *same Registration Statement* and subsequently filed Prospectus Supplements and were subject to the *same underwriting guidelines* as stated in the Offering Documents.  ¶ 5.

These underwriting guidelines represented the standards and systems purportedly utilized by NovaStar and, according to *all* the Offering Documents, they were "*intended to evaluate the credit history of the potential borrower, the capacity and willingness of the borrower to repay the loan and the adequacy of the collateral securing the loan.*"  *See* Series 2007-2 Pro. Supp. at S-86.[4]  ¶ 6.  The Offering Documents all explain, in an *identical manner*, that:  (1) all loans collateralizing the Certificates were subject to minimum underwriting standards and provided a description of those minimum standards; (2) that all loans were originated pursuant to six specific loan documents programs in the NovaStar underwriting guidelines and specified the percentage of loans in each program, with the largest portion (approximately 48% across all Offerings), coming from the most rigorous "Full Documentation" program; and (3) that senior NMI representatives reviewed any deviations or exceptions to the underwriting guidelines to

---

[3] Citations in the form of "¶ __" are to paragraphs in the Third Amended Complaint ("TAC"), Dkt. 156.

[4] *See also,* Series 2006-3 Pro. Supp. at S-78; Series 2006-4 Pro. Supp. at S-73; Series 2006-5 Pro. Supp. at S-77; Series 2006-6 Pro. Supp. at S-71; Series 2007-1 Pro. Supp. at S-79.

ensure that they were reasonably related to the underlying goals of including creditworthy borrowers ready and able to repay the mortgage obligations; and that quality control reviewers ensured that the mortgage loan collateral complied with the underwriting guidelines. ¶¶ 46 -51.

All Six Offerings securitized the ***same type of mortgages*** with each Prospectus Supplement ***identically*** stating the "Certificates will represent ownership interests in . . . a pool of subprime mortgage loans consisting of two groups – a group of residential first-lien and second-lien, fixed and adjustable rate mortgage loans designated as Group I . . . and a group of residential first-lien and second-lien, fixed and adjustable rate mortgage loans designated as Group II . . . ." ¶ 52.  The Offering Documents also contained nearly ***identical*** passages concerning elements of the structural elements of the Certificates, including those describing credit enhancement, overcollateralization, subordination, cross-collateralization, the use of mortgage insurance, and allocation of losses. ¶¶ 58, 60-63.  Even the passages in the Offering Documents purportedly describing the "risk factors" were essentially identical, with all of the Offering Documents disclosing the ***same 17 risk factors*** in a substantially similar manner. ¶ 57. The method of distribution was also identical for all Offerings. ¶ 64.

Based on, *inter alia*, the above representations concerning the quality of the underlying Mortgages and the structure of the Certificates, both Moody's Investors Services, Inc. ("Moody's") and McGraw-Hill Companies, Inc. through its division, Standard & Poor's ("S&P") (collectively, the "Rating Agencies")  assigned predominately the highest investment grade ratings to the Certificates, indicating maximum safety and minimal risk with 83%, or $6.41 billion, of the Certificates receiving the highest "AAA" or "Aaa" rating representing maximum safety and minimal risk and 96.6% of the $7.5 billion of Certificates receiving at least a high investment grade rating of "A" or higher. ¶ 7.

Armed with these high credit ratings and the description of the underwriting guidelines purportedly utilized to originate the Mortgages collateralizing the Offerings, Defendants sold these Certificates to at least ▮ members of the Class via six public Offerings in a period of less than one year for over $7.7 billion.  ¶ 2; Ex. 1, Expert Report of Michael L. Hartzmark, Ph.D., dated June 13, 2015 ("Hartzmark Rep.") at ¶¶ 16, 22.  The role of the Defendants in every single Offering was **_identical._**  *See, e.g.*, ¶ 53 (identical language used to described Defendant NMI, the originator of the collateral, in Offering Documents); ¶ 54 (identical language used to describe role of all three Underwriter Defendants – Deutsche Bank Securities Inc., Greenwich Capital Markets, Inc. and Wachovia Capital Markets, LLC – in Offering Documents); ¶¶ 29-31 (Underwriter Defendants identical for all Offerings), ¶ 21 (Defendant NMI acted as the Sponsor/Seller for all Offerings and originated or purchased all of the Mortgages), ¶ 22 (Defendant NMFC, a subsidiary of FMI, served as the Depositor for all Offerings , filed the Offering Documents for all Offerings, and purchased all the Mortgages and assigned their interests to the Certificate-holders); ¶ 24 (Defendant Hartman was, *inter alia*, President of NMFC, President of NCFC, CEO of NFI, and an Executive Vice President of NMI during the time all Mortgages were originated and all Offerings consummated); ¶ 25 (Defendant Metz was, *inter alia*, NMFC and NCFC's Principal Financial Officer and Chief Financial Officer of NMI and NFI during the time all Mortgages were originated and all Offerings consummated); ¶ 26 (Defendant Anderson was a Director of NMFC and NCFC during the time all Mortgages were originated and all Offerings consummated); and ¶ 27 (Defendant Herpich was a Director of NMFC and NCFC during the time all Mortgages were originated and all Offerings consummated).

7

Defendants' course of conduct in originating the loans was also ***identical***.  As described in detail in the TAC, NovaStar systematically disregarded the underwriting standards that, according to the Offering Documents, were supposed to govern the origination of the Mortgages. *See* ¶¶ 71-96.  Specifically, NovaStar routinely abandoned adherence to its underwriting guidelines to achieve volume loan targets, that the Full Documentation loan program, which was supposed to govern the bulk of the loans in all Offerings, were being systematically disregarded; and Stated Income loans were routinely being made to borrowers despite the fact that the stated income was not reasonably related to stated employment.  *Id*.  None of this conduct was, of course, disclosed to the Class in the Offering Documents or otherwise.

As the relevant statements in the Offering Documents are identical, Defendants and their roles in all the Offerings are identical, and the undisclosed course of conduct which creates the misstatements and omissions is identical, ***all issues of liability under the Securities Act are identical for all of the Offerings***.  Moreover, as alleged in the TAC and ███████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████ This means that ***the primary affirmative defense available to Securities Act defendants is also common to all Offerings***.

████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████



## III.    ARGUMENT

### A.    The Proposed Class Meets All Requirements for Certifying A Class Under Rule 23(b)(3)

The proposed Class meets all of the procedural requirements for class certification. "Rule 23(a) of the Federal Rules of Civil Procedure provides that a class may be certified only if four prerequisites have been met: numerosity, commonality, typicality, and adequacy of representation." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015). "Rule 23(b)(3) imposes two additional burdens on plaintiffs attempting to proceed by class action, namely, predominance and superiority." *Id.* at 81.[5] "'In light of the importance of the class

---

[5] "In addition to these requirements — which are explicitly codified in Rule 23 — some courts have also added an 'implied requirement of ascertainability' to the express requirements of Rule 23(a)." *Laumann v. NHL*, No. 12-cv-1817 (SAS), 2015 U.S. Dist. LEXIS 63745, at *22 n.21 (S.D.N.Y. May 14, 2015). "A class is sufficiently

action device in securities fraud suits, these factors are to be construed liberally.'" *Kelleher v. ADVO, Inc.*, Civil No. 3:06CV01422(AVC), 2009 U.S. Dist. LEXIS 68914, at *11 (D. Conn. Mar. 27, 2009) (quoting *Gary Plastic Packaging Corp. v. Merrill*, 903 F.2d 176, 179 (2d Cir. 1990)). "[T]he preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). The proposed Class easily fulfills these requirements.

      B.    <u>The Rule 23(a) Requirements Are Satisfied</u>

          1.    <u>The Class Contains at Least ██ Members, Satisfying Numerosity</u>

Numerosity requires that the proposed class be so large that joinder of individual members would "suggest[] inconvenience or difficulty." *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597, at *5 (S.D.N.Y. Aug. 16, 2011) ("*HEMT I*"), (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993)). "The Second Circuit has held that a proposed class of more than forty members presumptively satisfies the numerosity requirement." *Id.* (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

The proposed Class satisfies these requirements. Trading information about the purchasers of mortgage-backed securities in general and the Certificates specifically, is not publicly available. *See* Ex. 1, Hartzmark Rep. at ¶¶ 18-19. This is usual for many securities and courts routinely certify securities class actions where Lead Plaintiff does "not precisely quantify

---

ascertainable if objective criteria can be used to identify its members." *Toney-Dick v. Doar*, No, 12 Civ. 9162 (KBF), 2013 U.S. Dist. LEXIS 134315, at *28 (S.D.N.Y. Sep. 13, 2013). There can be no question that ascertainability is satisfied here as the class is defined by their acquisition of the securities at issue during the class period. *See, e.g., Laumann*, 2015 U.S. Dist. LEXIS 63745, at *23 (ascertainability "readily and precisely ascertained" when "tethered directly to a specific, easily-traceable economic decision . . . to purchase")'; *In re Winstar Commc'ns. Sec. Litig.*, 290 F.R.D. 437, 443 n.6 (S.D.N.Y. 2013) (ascertainability requirement "easily met in the context of securities litigation").

the putative class so long as they reasonably estimate its number." *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 515 (S.D.N.Y. 2002) (certifying class of bondholders making Section 11 claims) (citations omitted).  Lead Plaintiff goes beyond a reasonable estimate here and provides conclusive evidence of numerosity.

Lead Plaintiff subpoenaed a number of financial institutions for their trading records of the Certificates. ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████; *see also, e.g., HEMT I*, 2011 U.S. Dist. LEXIS 92597  (finding class met numerosity requirement when presented with the same type of evidence for at least 103 class members); *IndyMac*, 286 F.R.D. at 232  (numerosity met when evidence offered that "at least 714 unique investors who purchased or otherwise acquired Certificates in the 10 Offerings" and "there were at least 40 investors in all but two of the offerings, 39 potential members in another, and 22 in the final." (footnotes omitted)); *Merrill Lynch*, 277 F.R.D. at 104-105 (numerosity satisfied); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 288 F.R.D. 290, 296 (S.D.N.Y. 2013) ("*RALI II*") (numerosity satisfied in multi-offering case because "class as whole has more than 100 member[s] and therefore easily satisfies the 40-member presumption.").

> 2.  The Class Satisfies Commonality

Rule 23(a)'s commonality prerequisite is satisfied if there is a common issue that "drive[s] the resolution of the litigation." *Sykes*, 780 F.3d at 84 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). "[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." *Dukes*, 131 S. Ct. at 2556 (citation and internal quotation marks omitted).  Here, as described above, since the misstatements and omissions at issue – as well Defendants' course of conduct – are identical for the entire class there are multiple common

11

issues here that will "drive the resolution of the litigation" – each one of which is sufficient to fulfill Rule 23(a)'s commonality requirement.  For instance, whether each one of the misstatements and omissions are false is a common issue driving the resolution of the litigation for the entire class, whether each one of the misstatements and omissions is material is a common issue driving the resolution of the litigation for the entire class, and whether Defendants meet the statutory requirements for liability under the Securities Act is a common issue. Therefore, this putative class satisfies Rule 23(a)'s commonality prerequisite – a conclusion reached by every single other District Court ruling on a class certification motion like this one for a mortgage-backed securities class asserting Securities Act claims.  *See, e.g., HEMT II*, 2014 U.S. Dist. LEXIS 35326, at *13  (in a mortgage-backed securities class action claiming violations of the Securities Act for, *inter alia*, a systematic failure to comply with guidelines, commonality is satisfied since the complaint "raises at least one core question that is susceptible to a common answer for the entire putative class: whether the Offering Documents' statement [in both prospectus supplements] that all mortgage originators adhered to their underwriting guidelines was a material misrepresentation"); *Merrill Lynch*, 277 F.R.D. at 106 ("The common questions presented by this case—essentially, whether the Offering Documents were false or misleading in one or more respects—are clearly susceptible to common answers."); *Tsereteli*, 283 F.R.D. at 207 ("the central issues in this case are common to the claims of all.  The commonality requirement has been satisfied."); *IndyMac*, 286 F.R.D. at 235 ("'[A] common course of conduct and a unitary legal theory for the entire class period' is alleged, namely that the Offering Documents contain materially misleading statements or omissions, and commonality . . . [is] satisfied"); *Goldman Sachs*, 280 F.R.D. at 135 (S.D.N.Y. 2012) ("Given that questions regarding the alleged misstatements in the Offering Documents and other issues

12

articulated by Plaintiff are susceptible to common answers, Plaintiff has shown that commonality is satisfied."); *Merrill Lynch*, 277 F.R.D. at 106 ("common questions presented by this case— essentially, whether the Offering Documents were false or misleading in one or more respects— are clearly susceptible to common answers"); *RALI III*, 2013 U.S. Dist. LEXIS 180913, at *19 ("Defendants' compliance with underwriting guidelines and due diligence requirements and nondisclosure of adverse information, will 'generate common answers apt to drive the resolution of the litigation.'" (quoting *Dukes*, 131 S. Ct. at 2551)); *Harborview II*, 2013 U.S. Dist. LEXIS 180913 (same).

### 3.   The Class Satisfies Typicality

Typicality, which is not a demanding requirement,[6] is satisfied where "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"  *IndyMac*, 286 F.R.D. at 233 (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  "The focus of the typicality inquiry is not on the plaintiffs' behavior, but rather on the defendant's actions." *Kottler v. Deutsche Bank AG*, No. 05 Civ. 7773 (PAC), 2010 U.S. Dist. LEXIS 30590, at *6 (S.D.N.Y. Mar. 29, 2010).  "'[W]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.'"  *HEMT II*, 2014 U.S. Dist. LEXIS 35326, at *15 (quoting *Celani*, 987 F.2d at 936-37).

As described above, Plaintiffs alleged that the same defendants and witnesses engaged in the same course of conduct by falsely representing to all class members that the loans complied

---

[6] *See Tsereteli*, 283 F.R.D. at 208 ("The requirement of typicality is 'not demanding.'") (citation omitted).

with underwriting guidelines and then concealing material adverse facts regarding common originators that would have revealed the falsity of those misstatements.  In these circumstances, Courts in this circuit have unanimously found typicality to be satisfied.  *See, e.g., IndyMac,* 286 F.R.D. at 235 ("'[A] common course of conduct and a unitary legal theory for the entire class period' is alleged, namely that the Offering Documents contain materially misleading statements or omissions, and . . . typicality [is] satisfied") (citation omitted); *N.J. Carpenters HEMT II*, 2014 U.S. Dist. LEXIS 35326, at *14-18 (typicality satisfied in multiple offering MBS case alleging Securities Act violations relating to systematic disregard of guidelines); *Merrill Lynch*, 277 F.R.D. at 109 (same); *RALI III*, 2013 U.S. Dist. LEXIS 180913 (same); *Harborview II*, 2013 U.S. Dist. LEXIS 180913 (same).

>4.     <u>The Class Representatives and Lead Counsel Will Fairly and Adequately Protect the Interests of the Class</u>

"Adequacy entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Flag Telecom Holdings*, 574 F.3d at 35(citation and internal quotation marks omitted).  "Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, adequacy is satisfied unless plaintiff's interests are antagonistic to the interest of other members of the class."  *Sykes*, 780 F.3d at 90 (citation internal quotation marks omitted).  "In order to defeat a motion for certification, any conflicts between the class representative and members of the putative class must be 'fundamental.'"  *Laumann*, 2015 U.S. Dist. LEXIS 63745, at *24 (quoting *Flag Telecom Holdings*, 574 F.3d at 35).

Adequacy is satisfied here.  The proposed Class Representatives – Lead Plaintiff New Jersey Carpenters Health Fund and the Iowa Public Employees' Retirement System ("IPERS") – are both institutional investors who purchased some of the securities at issue and were damaged

thereby just like the other members of the putative class.  Specifically, New Jersey Carpenters

Health Fund, who this Court previously appointed as Lead Plaintiff, purchased $100,000 of the

NovaStar Home-Equity Loan Trust, Series 2007-2, Class M1 Certificates, directly from

Defendant RBS, in the Offering at par value of $1.0000 per unit on May 25, 2007 and sold them

on March 26, 2010 at a price of $0.0035 per unit, resulting in an almost complete loss of its

investment.  ¶ 20.  Iowa Public Employees Retirement Fund, a public pension fund which

manages over $28 billion in assets, purchased Series 2007-2, Class A2A Certificates and Series

2007-1, Class A2A1 Certificates on May 25, 2007 and June 8, 2007, respectively, as detailed in

its certification, filed along with this motion and suffered over $1.3 million in losses.  *See* Ex. 9,

Certification of Iowa Public Employees' Retirement System, June 12, 2015.  There are no

conflicts between proposed Class Representatives and the other members of the proposed Class.

On the contrary, their interests are co-extensive with the other members of the Class as both the

proposed Class Representatives and the members of the putative Class purchased some of the

securities at issue and, like all of the other class members, Class Representatives suffered from

the identical misstatements and omissions in the Offering Documents and were damaged as a

result of these same misstatements and omissions regarding the underwriting guidelines.  This

makes the proposed Class Representatives adequate.  *See, e.g., HEMT II*, 2014 U.S. Dist. LEXIS

35326, at *19 (holding New Jersey Carpenters adequate class representative for two MBS

offerings when it purchased in one of the two offerings because there is no conflict and "the core

alleged misrepresentations in both offerings relate to whether the mortgage originators adhered

to their own underwriting guidelines, and thus Lead Plaintiff appears to have every incentive to

prove that those statements were material and misleading."); *RALI III*, 2013 U.S. Dist. LEXIS

180913, at *23 (New Jersey Carpenters adequate representative for numerous MBS offerings,

including those it did not purchase on, as "the fact that the New Jersey Carpenters Funds did not purchase certificates in all of the offerings at issue does not destroy adequacy because no conflict or antagonism between class members and representatives has been shown"); *Harborview II*, 2013 U.S. Dist. LEXIS 180913, at *20 (holding that class representatives – including N.J. Carpenters and IPERS, will "adequately represent class members who purchased certificates in other offerings" they did not purchase); *RALI II*, 288 F.R.D. at 296 (holding plaintiff New Jersey Carpenters could represent purchasers of Harborview 2007-7 mortgage backed securities Offering even though it only purchased Harborview 2006-4 Certificates); *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017 (LAK), 2013 U.S. Dist. LEXIS 13999, at *19-20 (S.D.N.Y. Jan. 23, 2013) (Certifying class and holding that, given similarity in misrepresentations, class representative could represent purchasers of MBS he did not purchase).[7]

Moreover, New Jersey Carpenters and IPERS both have extensive and successful experience representing classes of mortgage backed securities purchasers in similar cases. For instance, New Jersey Carpenters has been appointed Class Representative (and found to be adequate) by Judge Crotty in *HEMT II*, 2014 U.S. Dist. LEXIS 35326 where summary judgment is currently being briefed and by Judge Baer in *RALI III*, 2013 U.S. Dist. LEXIS 180913 and *Harborview II*, 2013 U.S. Dist. LEXIS 180913 – which have settled for $335 million and $275 million respectively. IPERS has been appointed as a Class Representative and found adequate to represent a class of MBS purchasers in *Indymac*, No. 09-cv-4583 (LAK), which settled for $340

---

[7] *See also Winstar*, 290 F.R.D. at 451-452 (granting class certification where class encompassed common stock and certain bonds where no Lead Plaintiffs purchased the bonds as this is appropriate under *NECA*); *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897 (HB), 2011 U.S. Dist. LEXIS 22484, at *9-10 (S.D.N.Y. Mar. 7, 2011) (certifying class where Lead Plaintiff bought only one of two separate asset backed securities in the class) (internal citations omitted); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318 (HB), 2000 U.S. Dist. LEXIS 13469, at *9 (S.D.N.Y. Sep. 20, 2000) ("Courts have repeatedly certified classes where the class representatives had not invested in all of the subject securities.").

million, for a settlement class in *In re Bear Stearns Mortgage Pass-Through Certificates Litigation*, No. 08-cv-08093-LTS, by Judge Swain (settlement of $505 million), and, along with New Jersey Carpenters, in *Harborview II*, 2013 U.S. Dist. LEXIS 180913, which, as previously mentioned, settled for $275 million.  Both Proposed Class Representatives are committed to working cooperatively together – as they have in the past – and conducting the vigorous prosecution required to remedy the damages thus suffered by the Class.  The interests of the other members of the Class, therefore, will be fairly and adequately protected by the proposed Class Representatives.

Court-appointed Lead Counsel Cohen Milstein is amply qualified, experienced and able to conduct this litigation vigorously and effectively and has ably represented Lead Plaintiff on behalf of the proposed Class for the past seven years.  In addition, the firm has over forty years of experience in prosecuting complex securities and other class actions, they have represented New Jersey Carpenters and IPERS in all of the cases discussed above and been recently appointed Class Counsel for four certified mortgage or asset backed classes in this District alone. *See HEMT I*, 2011 U.S. Dist. LEXIS 92597, at *15 (Crotty, J.) ("Cohen Milstein has prior experience with complex securities class actions and is qualified to represent the proposed class."); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08-cv-8781 (HB), 2012 U.S. Dist. LEXIS 148865 (S.D.N.Y. Oct. 15, 2012) (Baer, J.) ("*RALI I*") (appointing Cohen Milstein as Class Counsel); *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, No. 08-cv-5093 (HB), 2012 U.S. Dist. LEXIS 148865 (S.D.N.Y. Oct. 15, 2012) ("*Harborview I*") (same); *Dynex*, 2011 U.S. Dist. LEXIS 22484, at *24-25  (Baer, J.) ("Cohen, Milstein, Sellers & Toll, PLLC has the experience, knowledge, commitment and record of work on this case to merit appointment as Class Counsel.").  *See also* Ex. 10, Firm Resume of Cohen Milstein.  They will

17

adequately and fairly represent the Class as they have done thus far.  These qualifications also satisfy Rule 23(g).[8]

      C.      <u>The Rule 23(b)(3) Requirements Are Satisfied</u>

          1.     <u>Common Questions of Law and Fact Predominate Over Any Questions Affecting Only Individual Members</u>

"Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citation and internal quotation marks omitted).  "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). "[I]ndividual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole."  *Sykes*, 780 F.3d at 81 (citation omitted). "[P]redominance is a test readily met in certain cases alleging . . . securities fraud . . . ."  *HEMT II*, 2014 U.S. Dist. LEXIS 35326 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997)).

To prove these Securities Act claims, each class member must demonstrate:  the role of Defendants in the Offerings,[9] the falsity of identical underwriting misstatements, the materiality

---

[8] Rule 23(g) requires a district court to assess the adequacy of the proposed class counsel. "To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources counsel will commit to representing the class."  Fogarazzo, 232 F.R.D. at 182 (emphasis in original).

[9] That they underwrote the offerings, signed the registration statement, or otherwise met one of the criteria for liability under the Securities Act.

of the misstatements and, if raised by the Underwriter Defendants as an affirmative defense, that their due diligence in connection with those misstatements was not "reasonable."  These issues are all common issues – whether or not a Defendant signed a registration statement is the same question for the entire class, whether or not each identical statements is false is an issue shared by the class – as is whether those same statements are material. *HEMT II*, 2014 U.S. Dist. LEXIS 35326, at *12-14 (whether identical representation in multiple sets of Offering Documents' statement that all mortgage originators adhered to their underwriting guidelines is false and whether that same representation is material are common questions "apt to drive the resolution of the litigation"); *Tsereteli,* 283 F.R.D. at 207 ("the central issues in this case are common to the claims of all"); *IndyMac*, 286 F.R.D. at 235 ("'[A] common course of conduct and a unitary legal theory for the entire class period' is alleged, namely that the Offering Documents contain materially misleading statements or omissions, and commonality . . . [is] satisfied") (citation omitted); *Goldman Sachs*, 280 F.R.D. at 135 ("Given that questions regarding the alleged misstatements in the Offering Documents and other issues articulated by Plaintiff are susceptible to common answers, Plaintiff has shown that commonality is satisfied."); *Merrill Lynch*, 277 F.R.D. at 106, 114 ("common questions presented by this case—essentially, whether the Offering Documents were false or misleading in one or more respects—are clearly susceptible to common answers . . . . Because materiality is determined by an objective rather than a subjective standard, the question of materiality . . . is in fact a common issue.").

As Defendants' affirmative defense of due diligence depends only on Defendants' actions and Defendants used the same due diligence provider and for all the Offerings, that too is a common issue for the class.  To prove the falsity of the misstatements, the Class must all show that NovaStar systematically disregarded its underwriting guidelines, that the deal teams

(common to all Offerings) systematically placed loans in the Offerings that failed to comply with underwriting guidelines; and that the practice of these shared deal teams was to fail to inform investors about adverse information about loans in their pools.  These issues are all "common" to the Class.  *See Goldman Sachs*, 280 F.R.D. at 139 ("issues [related to disregard of underwriting guidelines] are largely subject to generalized proof").

Finally, the methodology for calculating damages is a common issue.  Damages in this case for all class members will all be covered by the same statutorily mandated formula set out by the Securities Act – members of the class may either obtain rescission under Section 12 which is applicable on a class wide basis, or utilize a damage formula that would be applied uniformly to class members for purposes of establishing damages under Section 11(e) of the Securities Act as described in the Hartzmark Report.  *See*  Sections 12 and 11(e) of the Securities Act of 1933; Ex. 1, Hartzmark at ¶¶ 24-30; *McMahan & Co. v. Wherehouse Entm't*, 65 F.3d 1044, 1048 (2d Cir. 1995) ("The plain language of section 11(e) prescribes the method of calculating damages . . . and the statutory scheme requires courts to apply the prescribed formula in every Section 11 case").[10]  Therefore, the formula utilized to calculate damages is a common issue for a class.[11]

---

[10] The application of this statutorily prescribed common formula also automatically satisfies any requirement set up by the Supreme Court's *Comcast* decision, since if "Plaintiffs' proposed measure for damages is [] directly linked with their underlying theory of classwide liability" they are "in accord with the Supreme Court's recent decision in *Comcast v. Behrend*, — U.S. —, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013)."  *In re US FoodService Pricing Litig.*, 729 F.3d 108, 123 n.8 (2d Cir. 2013).  *See also Ira Holtzman, C.P.A., & Assocs. Ltd.  v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (where statute provides uniform penalty, the "sort of problem that prevented class certification in *Comcast Corp. v. Behrend*, — U.S. —, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013), does not arise."); *IndyMac*, 286 F.R.D. at 235 (Kaplan, J.) ("damages in Securities Act claims are calculated based on a statutory formula, so any differences in damages awards do not defeat class certification") (internal footnote omitted); *Harborview II*, 2013 U.S. Dist. LEXIS 180913, at *27 (*Comcast* is "inapposite here, where damages reflect liability by statutory formula").

[11] Utilizing this common, statutory formula to calculate damages will result in a different quantum of damages for each class member depending on how much of the securities they purchased and sold and at what prices, but it is well established that these differences do not interfere with class certification.  Specifically, "[t]he Supreme Court has explicitly determined that it is 'clear that individualized monetary claims belong in Rule 23(b)(3).'" *Sykes*, 780 F.3d at 82 (quoting *Dukes*, 131 S. Ct. at 2558).  Even after *Comcast* it remains "well-established in this Circuit that the fact that damages may have to be ascertained on an individual basis is not

In other words, all affirmative questions of liability are common as well as Defendants' main affirmative defense and the methodology for calculating damages.  Except for the quantum of damages, which – as discussed previously – cannot interfere with certification – and potential affirmative defenses which exist only in theory and which also should not interfere with certification[12] – every single issue is common.  In this scenario, there should be no doubt that common issues predominate.

In parallel mortgage-backed securities cases in this circuit involving multiple offerings and the central allegation that underwriting guidelines were systematically disregarded, every single Court has held that the predominance standard has been satisfied.  *See, e.g., HEMT II*, 2014 U.S. Dist. LEXIS 35326, at *22-23  ("Here, Plaintiffs have made a prima facie showing of predominance by citing evidence of the substantial factual and legal overlap between the two offerings: identical alleged misrepresentations, the same entities and employees involved in making the offerings, the same 'wrongful course of conduct' with regard to underwriting guidelines, and the overlap in mortgage originators"); *Merrill Lynch*, 277 F.R.D. at 120 ("In short, Plaintiffs have established predominance under Rule 23(b)(3)."); *Tsereteli*, 283 F.R.D. at 216 (Case "raise[s] sufficiently general issues to predominate over any individual inquiries that may arise."); *IndyMac*, 286 F.R.D. at 242 ("The Court is convinced that issues subject to generalized proof significantly predominate over any individualized considerations that are likely to arise in this case.").

---

sufficient to defeat class certification" under Rule 23(b)(3)."  *Roach*, 778 F.3d at 405 (citation and internal quotations omitted).

[12] It is well established, that any differences in secondary issues purportedly identified by Defendants cannot interfere with certification.  *IndyMac*, 286 F.R.D. at 236 (citing *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 75  (S.D.N.Y. 2009) (to permit "various secondary issues of plaintiffs' claim[s] to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws."); *HEMT II*, 2014 U.S. Dist. LEXIS 35326, at *22 ("[C]ourts have been reluctant to deny class action status because affirmative defenses might be available against different class members as long as the defenses do not overshadow the primary claims") (citation omitted).

21

2.      A Class Acton is Superior to Hundreds of Individual Actions Based on the Same Facts With the Same Witnesses

"Under Rule 23(b)(3), the following factors are to be considered in making the 'superiority' determination: (a) the interest of members of the class in individually controlling the prosecution of separate actions, (b) the extent and nature of any litigation concerning the controversy already commenced by members of the class, (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action."  *HEMT II*, 2014 U.S. Dist. LEXIS 35326, at *31.  All four of these factors strongly favor the use of the class action here.

As to the first factor, Plaintiffs' Counsel are unaware of any individual Securities Act claims brought by members of the class concerning the Certificates at issue here – clearly indicating the strong preference of investors for the class action vehicle and the strong endorsement of factors (a) and (b) for the superiority of a class action.[13]

It is also desirable to concentrate the litigation of the claims in this particular forum, making factor (c) also strongly supportive of certification.  The Southern District of New York has been the fulcrum of litigation with respect to mortgage-backed securities cases alleging violations of the Securities Act for systematic disregard of underwriting guidelines and the case-law concerning these claims is more developed here than in any other District in the country.  In fact, the only mortgage-backed securities case of this type to ever go to trial, *Federal Finance Housing Agency v. Nomura Holding America, Inc.*, was decided by Judge Cote of this District earlier this year.  *Nomura,* No. 11-cv-6201 (DLC), Dkt. 1686.  Moreover, ███████████████

---

[13] Even if there were a handful or two of cases by individual class members that Plaintiffs' Counsel were unaware of, that would only represent a tiny fraction of the more than ██ class members with claims, leaving the point that factors (a) and (b) strongly tilt toward the superiority of a class action intact.



Concentrating the litigation within the Southern District of New York in a single class action is far superior to scattering dozens or hundreds of individual cases around the country as it would save considerable judicial resources and prevent the emergence of different verdicts and opinions on the same facts in different jurisdictions.  Finally, keeping this litigation in this Court as a class case has significant practical benefits as this Court has been dealing with this class case for seven years and issued a number of rulings on important issues of law and discovery is well underway.  If this case proceeded as individual actions in different jurisdictions as opposed to a class action here, all of this work would have been wasted as the individual actions would have to start from the very beginning.  For all these reasons, factor (c), the desirability of concentrating the litigation of the claims in the Southern District of New York, strongly favors class treatment of these claims.

Factor (d), manageability, also falls strongly in favor of class treatment.  In general, "[s]ecurities cases easily satisfy the superiority requirement of Rule 23."  *HEMT II*, 2014 U.S. Dist. LEXIS 35326, at *31-32 (quoting *NYSE Specialists*, 260 F.R.D. at 80 (quotation marks omitted)).  Here, this case is even easier to manage as a class case than the typical securities case

---

14 ████████████████████████████████████████████████
████████████████████████████████████████████

15 Deutsche Bank Securities, Inc.'s operational headquarters are located in New York, NY; Greenwich Capital Markets, Inc.'s operational headquarters are located in Greenwich, CT; while Wachovia Capital Markets, LLC's operational headquarters are located in Charlotte, NC.

because it is a Securities Act case and not an Exchange Act case – meaning there is no element of reliance and no need to demonstrate market efficiency. ███████████████ ███████████████████████████████████████████████ ██████████████████████████████████████ As this Court will have little trouble managing this case as a single class action as opposed to numerous individual actions, factor (d), manageability, also weighs strongly in favor of certification.

> As all four factors weigh strongly in favor of certification, this Court should find that this putative class, like every other mortgage backed securities act class action making similar allegations in this Circuit, fulfills the superiority prong of Rule 23(b)(3).  *See, e.g., HEMT II*, 2014 U.S. Dist. LEXIS 35326, at *32-33 ("[T]he Court finds pursuant to Rule 23(b)(3) that 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"); *Merrill Lynch*, 277 F.R.D. at 120-121 (finding that all factors weigh in favor of superiority); *Tsereteli*, 283 F.R.D. at 216-218 (S.D.N.Y. 2012) (all factors weigh in favor of superiority); *IndyMac*, 286 F.R.D. at 243 ("concentrating this dispute in a class action in a single forum has clear benefits that outweigh any issues raised by defendant").

## IV.      CONCLUSION

> For all the above reasons, Lead Plaintiff's motion to certify the class and appoint New Jersey Carpenters Health Fund and IPERS as Class Representatives should be granted.

Dated: New York, New York
      June 16, 2015

Respectfully submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC


/s/ Michael Eisenkraft
Joel P. Laitman (JL-8177)
Christopher Lometti  (CL-9124)
Richard A. Speirs (RS-8872)
Michael B. Eisenkraft (ME-6974)
Daniel B. Rehns (DR-5506)
Kenneth M. Rehns (KR-9822)
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797

Steven J. Toll
Joshua S. Devore
S. Douglas Bunch (SB-3028)
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600

*Attorneys for Lead  Plaintiff New Jersey Carpenters
Health Fund*

2010410.1