**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW JERSEY CARPENTERS HEALTH FUND, *on Behalf of Itself and all Others Similarly Situated*, | Case No. 08-cv-5310 (DAB) |
| Plaintiff , | ECF Case |
| *v.* | |
| NOVASTAR MORTGAGE, INC., NOVASTAR MORTGAGE FUNDING CORPORATION, SCOTT F. HARTMAN, GREGORY S. METZ, W. LANCE ANDERSON, MARK HERPICH, RBS SECURITIES INC. f/k/a GREENWICH CAPITAL MARKETS, INC., d/b/a RBS GREENWICH CAPITAL, DEUTSCHE BANK SECURITIES INC., WELLS FARGO ADVISORS, LLC f/k/a WACHOVIA SECURITIES LLC, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF THE SETTLEMENT; (II) CERTIFICATION OF A SETTLEMENT CLASS; (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS; AND (IV) SCHEDULING OF FINAL APPROVAL HEARING**

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND OF THE LITIGATION................................................................ 5
        A.      Initial Ruling on Motion to Dismiss .................................................... 6
        B.      Second Ruling on Motion to Dismiss and Appeal................................ 7
        C.      Motion for Reconsideration and Reinstatement of Dismissed Offerings ............. 7
        D.      Third Amended Complaint ..................................................................... 8
        E.      Discovery Commences and Motion for Class Certification ................... 8
        F.      Exhaustive Fact and Class-Certification Discovery .............................. 8
        G.      NovaStar Mortgage Inc. and NovaStar Mortgage Funding Corporation
                File for Bankruptcy, and Defendants Attempt to Stay Discovery in this
                Action..................................................................................................... 9
        H.      Class Certification Granted and Expert Discovery Formally Commences ........... 9

III.    SETTLEMENT NEGOTIATIONS ........................................................................ 10

IV.     ARGUMENT ........................................................................................................ 10
        A.      The Proposed Settlement Warrants Preliminary Approval.................... 10
        B.      A Settlement Class Should Be Certified................................................ 16
        C.      Notice to the Settlement Class Should Be Approved ........................... 16

V.      PROPOSED SCHEDULE OF EVENTS................................................................ 17

VI.     CONCLUSION...................................................................................................... 18

# TABLE OF AUTHORITIES

Page

CASES

Behzadi v. Int'l Creative Mgmt. Partners, LLC,
No. 14-cv-4382 (LGS), 2015 WL 4210906 (S.D.N.Y. July 9, 2015)......................................11

Clark v. Ecolab, Inc.,
No. 04 Civ. 4488(PAC), 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)...........................10, 11

D'Amato v. Deutsche Bank,
236 F.3d 78 (2d Cir. 2001)...........................................................................................14

Danieli v. Int'l Bus. Machs. Corp.,
No. 08 CV 3688(SHS), 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) .................4, 11, 13, 14

DeLeon v. Wells Fargo Bank, N.A.,
No. 12 Civ. 4494(RA), 2015 WL 821751 (S.D.N.Y. Jan. 12, 2015)............................3, 10, 11

In re Giant Interactive Grp., Inc., Sec. Litig.,
279 F.R.D. 151 (S.D.N.Y. 2011) ..................................................................................12

In re Global Crossing Sec. & ERISA Litig.,
225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................................14, 17

Hernandez v. Merrill Lynch & Co., Inc.,
No. 11 Civ. 8472(KBF)(DCF), 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) .................3, 11

In re NASDAQ Market-Makers Antitrust Litig.,
176 F.R.D. 99 (S.D.N.Y. 1997) .................................................................................3, 11

NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.,
693 F.3d 145 (2d Cir. 2012)..........................................................................................7

Sand v. Greenberg,
No. 08-cv-7840 (PAC), 2011 WL 1338196 (S.D.N.Y. Mar. 22, 2011) .....................11, 13, 14

In re Telik, Inc. Sec. Litig.,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)............................................................................14

In re Traffic Exec. Ass'n,
627 F.2d 631 (2d Cir.1980).........................................................................................10

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,
396 F.3d 93 (2d Cir. 2005).....................................................................................15, 16

## TABLE OF AUTHORITIES

Page

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515(WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008).............................16

*Yuzary v. HSBC Bank USA, N.A.*,
   No. 12 Civ. 3693(PGG), 2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013) ...........................3, 11

STATUTES

15 U.S.C. § 77k(e) ...............................................................................................................13

15 U.S.C. § 77aa-(a)(7)...........................................................................................................5

15 U.S.C. § 77z-1...............................................................................................................16

Lead Plaintiff and Class Representative New Jersey Carpenters Health Fund ( "NJCHF")

and Class Representative Iowa Public Employees' Retirement System ("IPERS," and, together

with NJCHF, "Plaintiffs") respectfully submit this memorandum of law and the Declaration of

Michael L. Hartzmark, Ph.D. in Support of the Plan of Allocation ("Hartzmark Decl.") in

support of their unopposed motion for: (i) preliminary approval of the proposed $165 million

cash settlement ("Settlement"); (ii) certification of the Settlement Class;[1] (iii) approval of the

form and manner of notice to Settlement Class Members; and (iv) the scheduling of a hearing

(the "Final Approval Hearing") on final approval of the Settlement and Lead Counsel's motion

for an award of attorneys' fees and reimbursement of litigation expenses.

## I.    INTRODUCTION

At the time this action was commenced nine years ago the viability of claims asserted

under the Securities Act of 1933 ("Securities Act") on behalf of mortgage backed securities

("MBS") purchasers was largely untested and unknown. As a result, from the outset the risks of

non-recovery were very real. Indeed, the initial claims asserted in this case were dismissed

despite the filing of an amended pleading. Further, even after the action was permitted to proceed

following an appeal to the Second Circuit, bedrock issues such as standing and class certification

remained unsettled and thus were fiercely contested. In addition, the actual prosecution of the

claims on the merits required not only the production of over 9 million pages of documents and

the examination of 28 witnesses, but also the expenditure of millions of dollars in expert fees

with no certainty that those expenditures would be recouped. These uncertainties and

complexities, among many others, explain why achieving the $165 million settlement required

---

[1] Unless otherwise defined herein, all capitalized terms have the same definitions as set forth in paragraph 1 of the Stipulation and Agreement of Settlement ("Stipulation"), filed concurrently herewith.

an immense record of work[2] including: (1) investigating and drafting an initial and two amended

class action complaints asserting claims under the Securities Act on behalf of purchasers of

NovaStar Mortgage Funding Trust ("NMFT") bonds on multiple Offerings; (2) briefing two

motions to dismiss; (3) briefing and arguing an appeal to the Second Circuit; (4) briefing a

motion for class certification; (5) conducting class discovery, including taking or defending six

representative and two expert depositions on class issues; (6) briefing a motion for

reconsideration in light of a change in Second Circuit law pertaining to standing under the

Securities Act; (7) conducting substantial fact discovery, including the review of over *9 million*

*pages* of documents and taking or defending at least *26 fact depositions*; and (8) briefing and

arguing several discovery motions.

 While the prosecution of this action was long and complex, the result achieved justified

the time and effort expended. Despite all of the risks of non-recovery or substantially reduced

recovery that existed at the time of Settlement in 2016—including the risk of dismissal of some

or all of Plaintiffs' claims following summary judgment briefing, trial, or appeal, or the

substantial reduction of recoverable damages—Plaintiffs achieved for the Settlement Class a

recovery of $165 million in cash or approximately $30.84 per $1,000 of original face value.[3]

---

[2] Since this action was among the first MBS class actions filed in the nation, the parties and the Court, in its five memorandum opinions, addressed many legal issues for which there was very little precedent, including standing and class certification of MBS purchasers in connection with claims asserted under the Securities Act, as well as complications resulting from the intervening bankruptcy of certain of the defendants. *E.g.,* ECF No. 116 – March 31, 2011 (decision on defendants' motion to dismiss addressing, among other things, the issue of standing of MBS purchasers to assert class claims under the Securities Act); ECF No. 135 – March 29, 2012 (decision on motion to dismiss second amended complaint addressing, among other things, pleading standards for stating a claim under the Securities Act in connection with purchase of MBS tranche); ECF No. 140 – April 2, 2013 (decision on Lead Plaintiff's motion for reconsideration of dismissal ruling in light of a then-recent Second Circuit ruling relating to standing in MBS class cases); ECF No. 240 – September 2, 2016 (decision on scope of automatic bankruptcy stay); ECF No. 245 – November 4, 2016 (decision on class certification determining the scope of an MBS class).

[3] This figure is calculated as follows. The six Offerings have a combined original face value of approximately $7.745 billion. Of this amount, investors purchasing approximately $2.2003 billion in original face value have brought or settled individual claims and are expected to opt-out, and Defendants have represented that approximately $195 million in bonds were not purchased or offered by the underwriter. This leaves approximately

This result compares favorably to other MBS class action settlements, including the $95 million Morgan Stanley MBS settlement before Judge Katherine B. Forrest ($2.63 per $1,000 of original face), the $125 million Wells Fargo MBS settlement before Judge Lucy H. Koh ($2.70 per $1,000 of original face); the $280 million J.P. Morgan MBS settlement before Judge Pamela Chen of the Eastern District of New York ($11.95 per $1,000 of original face); the $340 million IndyMac settlement before Judge Lewis A. Kaplan ($14.42 per $1,000 of original face); the $315 million Merrill Lynch MBS settlement before Judge Jed S. Rakoff ($15.57 per $1,000 of original face); the Nomura MBS settlement presided over by Judge Richard G. Stearns ($18.92 per $1,000 of original face); and the Harborview MBS Settlement presided over by Judge Harold Baer ($16.73 per $1,000 of original face).[4] As a result, the settlement achieved in this case satisfies the preliminary approval requirement that the Settlement be within the range of possible recoveries. *E.g.*, *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494(RA), 2015 WL 821751, at *1 (S.D.N.Y. Jan. 12, 2015) (preliminary approval granted where the proposed settlement fell "within the range of possible approval."); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693(PGG), 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013) (same); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472(KBF)(DCF), 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (same); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (same).

---

$5.35 billion in original face value covered by the $165 million Settlement, or approximately $30.84 per $1,000 in original face value.

[4] Other MBS class action settlements have reported higher recoveries on a per $1,000 in original face value basis, including the $26.6 million Goldman Sachs MBS settlement before Judge Harold Baer ($30.52 per $1,000 of original face); the $335 million RALI settlement before Judge Katherine Polk Failla ($32.32 per $1,000 of original face); the $388 million JP Morgan MBS settlement before Judge J. Paul Oetken ($38.77 per $1,000 of original face); and the $110 million HEMT settlement before Judge Paul A. Crotty ($64,94 per $1,000 of original face). Also, the reported recovery per $1,000 figures in these and other cases may not have excluded bonds that were not expected to participate in the settlement as was done here, as explained in footnote 3 above.

3

Moreover, there is also no dispute that the Settlement satisfies another preliminary approval requirement that the Settlement be the result of "arms'-length negotiations," *DeLeon*, 2015 WL 821751, at *2, since the parties reached the Settlement here only after several rounds of mediation with a highly reputable mediator, the Honorable Layn Phillips (ret.), a former Federal Judge and United States Attorney. Specifically, the parties first participated in an in-person mediation session in December 2015. Although the parties did not reach a settlement at that time, discussions continued, facilitated by Judge Phillips, principally over email and phone. Then, the parties attended a second in-person mediation session in September 2016. The parties made further progress, and, after follow-up negotiations conducted through Judge Phillips, the parties reached a settlement in principle in December 2016. Thus, there can be no question that the Settlement was the result of arm's-length negotiation.

The preliminary approval requirement that the plan of allocation be "rationally related to the relative strengths and weaknesses of the respective claims asserted," *Danieli v. Int'l Bus. Machs. Corp.*, No. 08 CV 3688(SHS), 2009 WL 6583144, at *5 (S.D.N.Y. Nov. 16, 2009), is also clearly satisfied here because the plan determines loss based on the methodology set forth in the Securities Act as explained in the accompanying declaration of Dr. Michael Hartzmark, a highly respected economic expert.

Finally, notice to the Settlement Class should be approved in the form proposed. Thus, Plaintiffs request that the Court enter the proposed Order Preliminarily Approving the Settlement, Certifying Settlement Class, Approving Notice to the Class and Scheduling Final Approval Hearing (the "Preliminary Approval Order"), attached to the Stipulation as Exhibit A, which, *inter alia*, will:

(i)       approve the form and content of the Notice of Pendency of Class Action, Preliminary Approval Order and Proposed Settlement, Final Approval Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice") and Summary Notice ("Summary Notice"), attached as Exhibits A-1 and A-2 to the Stipulation, respectively;

(ii)      certify the Settlement Class;

(iii)     find that the procedures established for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 27(a)(7) of the Securities Act, as amended by the PSLRA, 15 U.S.C. § 77aa-(a)(7); and

(iv)     schedule the Final Approval Hearing and establish a schedule and procedures for: disseminating the Notice and publishing the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement or Lead Counsel's Motion for Attorneys' Fees and Reimbursement of Litigation Expenses; and submitting papers in support of final approval of the Settlement.

## II.    BACKGROUND OF THE LITIGATION

This securities class action alleges that Defendants violated Sections 11, 12 and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l and 77o, in the offer and sale of certain NovaStar-issued mortgage-backed securities by issuing to investors materially false and misleading registration statement and prospectuses. Plaintiffs allege, *inter alia*, that the offering materials (*i.e.*, the registration statement, prospectuses, and prospectus supplements) failed to disclose that Defendants had "systematically disregarded" the applicable underwriting guidelines in the origination of mortgage loans underlying the Certificates. These material misstatements and

omissions allegedly led to massive downgrades in the ratings for the Certificates and investors being damaged when the value of the Certificates they purchased collapsed.

The case commenced on May 21, 2008 when Lead Plaintiff New Jersey Carpenters Health Fund filed a Securities Class Action Complaint against Defendants in the New York State Supreme Court, New York County. On June 10, 2008, Defendants removed the Action to the United States District Court for the Southern District of New York. On June 16, 2009, Lead Plaintiff filed the Consolidated First Amended Securities Class Action Complaint ("First Amended Complaint") against Defendants on behalf of a class of purchasers of NMFT mortgage-backed securities. Specifically, the First Amended Complaint asserted claims on behalf of purchasers of NMFT 2006-3, NMFT 2006-4, NMFT 2006-5, NMFT 2006-6, NMFT 2007-1, and NMFT 2007-2 Certificates.[5]

### A.   Initial Ruling on Motion to Dismiss

On August 31, 2009, Defendants moved to dismiss the First Amended Complaint. On March 31, 2011, the Court granted Defendants' motion with prejudice as to certain claims, and without prejudice as to others ("First MTD Order"). The Court dismissed with prejudice Lead Plaintiff's claims with respect to the NMFT 2006-3, 2006-4, 2006-5, 2006-6, and 2007-1 offerings for lack of standing. As for NMFT 2007-2, the Court dismissed certain of Lead Plaintiff's claims under Section 11 and Section 12(a) with leave to amend within 45 days, while dismissing other such claims with prejudice.[6] On May 18, 2011 Lead Plaintiff filed the Second Amended Class Action Complaint ("Second Amended Complaint") in accordance with the First MTD Order.

---

[5] The First Amended Complaint also asserted claims against Moody's Investors Service, Inc. and The McGraw-Hill Companies, Inc. (the "Rating Agencies").

[6] The Court also dismissed with prejudice the claims against the Rating Agencies.

6

### B.   Second Ruling on Motion to Dismiss and Appeal

Defendants moved to dismiss the Second Amended Complaint on July 8, 2011 ("Second MTD Order"). On March 29, 2012, the Court granted that motion with prejudice. Lead Plaintiff filed a notice of appeal of the First MTD Order and the Second MTD Order on April 25, 2012. Appellate briefing before the Second Circuit was completed by September 2012, and oral argument was held on December 12, 2012. On March 1, 2013, the Second Circuit issued a decision reversing and vacating, in part, the First MTD Order and the Second MTD Order and remanded for further proceedings. Specifically, the Second Circuit held that Lead Plaintiff's factual allegations permitted "the reasonable inference that Defendants-Appellees are liable under §§ 11 & 12 of the [Securities] Act." The Second Circuit also vacated the holding in the First MTD Order that Lead Plaintiff "lacked standing to assert claims based on securities in which it had not invested," in light of the intervening Second Circuit decision in *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), and remanded for reconsideration in light of that opinion. The Second Circuit issued its mandate on March 25, 2013.

### C.   Motion for Reconsideration and Reinstatement of Dismissed Offerings

On April 2, 2013, the Court ordered supplemental briefing on the issue of Lead Plaintiff's standing to assert claims relating to the five NMFT offerings in which it had not purchased certificates, which the Court had previously dismissed in its First MTD Order. On April 23, 2013, Lead Plaintiff submitted its motion for reconsideration of the First MTD Order and requested reinstatement of those claims. On February 5, 2015, the Court granted Lead Plaintiff's request, ordered Lead Plaintiff to filed a Third Amended Class Action Complaint ("Third Amended Complaint") within 30 days, and ordered Defendants to answer within 30 days of the filing of the Third Amended Complaint.

D.      **Third Amended Complaint**

Lead Plaintiff filed the Third Amended Complaint on March 9, 2015, and Defendants filed answers on April 9, 2015.

E.      **Discovery Commences and Motion for Class Certification**

Around the same time, the parties began negotiating a discovery and case management schedule. The parties agreed that fact discovery should commence immediately, and agreed on a briefing schedule for class certification and the completion of fact discovery. However, the parties disagreed on the schedule for expert discovery and summary judgment proceedings. Lead Plaintiff's position was that the schedule for expert discovery and summary judgment should be fixed at dates certain, while Defendants' position was that those events should be based on when the Court ruled on class certification. The parties submitted their positions to the Court on May 8, 2015. On July 9, 2015, the Court entered an order approving the parties' agreed schedule for class certification and fact discovery, and approving Defendants' proposed schedule for expert discovery and summary judgment briefing.

On June 16, 2015, after subpoenaing a number of financial institutions for trading records, reviewing certain documents produced by Defendants, and employing an expert on mortgage-backed securities, Lead Plaintiff moved to certify a class consisting of purchasers of Certificates in the NMFT 2006-3, NMFT 2006-4, NMFT 2006-5, NMFT 2006-6, NMFT 2007-1, and NMFT 2007-2 Offerings. Lead Plaintiff also moved to appoint itself as well as IPERS as Class Representatives, and to approve Lead Counsel Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as counsel for the certified class.

F.      **Exhaustive Fact and Class-Certification Discovery**

While Plaintiffs' motion for class certification was pending, the parties commenced intensive discovery. Specifically, from August 2015 through October 2016, the parties took *28*

8

depositions, including two expert depositions in connection with class certification. In addition, the parties collectively produced, and Lead Counsel reviewed, over ***9 million pages of document discovery***, including hundreds of thousands of documents relating to each Offering produced by Defendants and thousands of individual loan files produced by third-party loan servicers. Further, although formal expert discovery and exchange of expert reports would not commence until the Court's later class-certification ruling (discussed below), the amount and complexity of the data produced—including the sheer number of individual mortgage loan files that needed to be analyzed—meant that a substantial amount of expert work and review was being performed in parallel with fact discovery, both in connection with anticipated expert reports, and to assist with preparation for dozens of fact depositions.

### G.     NovaStar Mortgage Inc. and NovaStar Mortgage Funding Corporation File for Bankruptcy, and Defendants Attempt to Stay this Action

On July 22, 2016, defendants NovaStar Mortgage Inc. ("NMI") and NovaStar Mortgage Funding Corporation ("NMFC," and together with NMI the "Debtor Defendants") filed a notice of suggestion of bankruptcy in light of their filing for chapter 11 bankruptcy two days earlier. As a result, the action was automatically stayed against NMI and NMFC by operation of the bankruptcy laws. However, Defendants took the position that in light of the nature and circumstances of this case the stay applied to the action in its entirety. The parties then submitted a series of letter briefs on the issue of whether the stay applied to the non-Debtor Defendants. On September 2, 2016, the Court held that it did not.

### H.     Class Certification Granted and Expert Discovery Formally Commences

On November 4, 2016, the Court granted Lead Plaintiff's class certification motion, certifying a class comprising all those who purchased or otherwise acquired publicly offered certificates in the Offerings prior to May 21, 2008, pursuant or traceable to the Registration

9

Statement, and were damaged thereby (excluding Defendants), appointing Plaintiffs as class representatives, and appointing Lead Counsel as lead counsel for the certified class.

In accordance with the Court's July 9, 2015 order, Plaintiffs produced to Defendants the sample loan files to be used for expert re-underwriting reports on December 5, 2016.

## III.   SETTLEMENT NEGOTIATIONS

As noted the settlement here was negotiated under the auspices of the Honorable Layn Phillips (ret.), a former Federal Judge and U.S. Attorney and one of the most experienced and respected mediators in the country. On or around December 2015, Lead Counsel began formal mediation with Defendants. After the submission of mediation statements and supplemental mediation statements, a full day of in-person mediation was held on December 3, 2015 in New York City, with Judge Phillips presiding. Although progress was made, the parties did not reach an agreement on that date.

The parties continued to negotiate, with Judge Phillips' assistance, throughout 2016. Additional mediation statements were exchanged in the summer of 2016, and then again in September 2016 at Judge Phillips' invitation, before another in-person mediation was held in New York City on September 30, 2016, again with Judge Phillips presiding. Thereafter, following additional telephone and email negotiations facilitated by Judge Phillips, the parties reached an agreement in principle on December 11, 2016 with respect to the Settlement Amount of $165 million. On December 20, 2016, the parties executed a term sheet setting forth additional terms of the Settlement.

## IV.   ARGUMENT

### A.   The Proposed Settlement Warrants Preliminary Approval

Plaintiffs here seek preliminary approval, which "is the first step in the settlement process." *DeLeon*, 2015 WL 821751, at *1 (citing *Clark v. Ecolab, Inc.*, No. 04 Civ. 4488(PAC),

2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)). "To grant preliminary approval, the court

need only find that there is 'probable cause to submit the settlement proposal to class members

and hold a full-scale hearing as to its fairness.'" *DeLeon*, 2015 WL 821751, at *1 (quoting *In re*

*Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir.1980)) (modification omitted).

In particular, "[i]f the proposed settlement 'appears to fall within the range of possible

approval,' the court should order that the class members receive notice of the settlement."

*DeLeon*, 2015 WL 821751, at *1 (quoting *Clark*, 2009 WL 6615729, at *3).

The Court should also grant preliminary approval where the "proposed plan of allocation

is rationally related to the relative strengths and weaknesses of the respective claims asserted."

*Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14-cv-4382 (LGS), 2015 WL 4210906, at *2

(S.D.N.Y. July 9, 2015); *see also*, *e.g.*, *Sand v. Greenberg*, No. 08-cv-7840 (PAC), 2011 WL

1338196, at *5 (S.D.N.Y. Mar. 22, 2011) (noting that "[t]he method of allocation need not be

perfect; it must only be 'rationally related to the relative strengths and weaknesses of the

respective claims asserted.'") (quoting *Danieli*, 2009 WL 6583144, at *5).

The Court should also grant preliminary approval where the proposed settlement

"appears to be the product of serious, informed, non-collusive negotiations." *NASDAQ*, 176

F.R.D. at 102. Indeed, courts in this district routinely grant preliminary approval where proposed

settlements are the result of "arms'-length negotiations." *E.g.*, *DeLeon*, 2015 WL 821751, at *2

(granting preliminary approval where the settlement was a result of "arms'-length negotiations");

*Yuzary*, 2013 WL 1832181, at *2 (same); *Hernandez*, 2012 WL 5862749, at *2 (same); *Clark*,

2009 WL 6615729, at *4 (same).

Applying these standards, the proposed Settlement clearly warrants preliminary approval.

*First*, the proposed Settlement of $165 million should be preliminarily approved because it is well within the range of possible approval. Although Plaintiffs and Lead Counsel believe that the claims asserted in the Action are meritorious, continued litigation against Defendants posed significant risks that made any recovery for the Class uncertain. For example, even if Plaintiffs prevailed at trial in establishing untrue material statements and omissions in the offering documents, Defendants would still have the opportunity to persuade the Court, or the jury, that the statutory damages pursuant to Section 11 of the Securities Act should be reduced or eliminated because some or all of the losses are attributable to causes other than the misstatements or omissions. Under Section 11, recoverable damages are subject to reduction for "negative causation." Defendants here have contended throughout the litigation that any losses were caused by factors other than untrue statements in the offering documents, such as the downturn in the economy and the housing market, or the alleged inherent riskiness of the loans themselves. Given the dearth of precedent on "negative causation," particularly as it relates to MBS, and the fact that the parties would likely have submitted competing expert evidence on the issue, even if Plaintiffs had prevailed on loss causation at summary judgment or trial, Defendants' "negative causation" argument would likely have engendered significant appellate litigation, with no guarantee that Plaintiffs would prevail on appeal. *See, e.g., In re Giant Interactive Grp., Inc., Sec. Litig.*, 279 F.R.D. 151, 161-62 (S.D.N.Y. 2011) (approving settlement where the litigation risks included a "credible defense of 'negative causation'").

Further, numerous hurdles aside from negative causation existed. For one, numerous other essential elements of Plaintiffs' claims were hotly disputed, including whether the representations about adherence to mortgage underwriting guidelines were false, and whether the underwriter defendants conducted reasonable due diligence on the Offerings. Each of these

elements were to be the subject of expert testimony. That expert testimony, in turn, was virtually certain to be the subject of *Daubert* motions, given the frequency of such motions in complex cases like the instant case. If any or all of Plaintiffs' experts were disqualified, there would be a dearth of evidence of essential elements, and the viability of Plaintiffs' claims would have been severely jeopardized. And that is to say nothing of the risks of having some or all of Plaintiffs' claims narrowed or even dismissed at summary judgment, at trial, or on appeal, proceedings which would have taken several more years to complete.

When viewed in the context of these risks and uncertainties, the proposed Settlement of $165 million is extremely beneficial to the Settlement Class. This is particularly true given that, as described above, the proposed Settlement compares favorably with a number of other MBS class action settlements in terms of recovery per $1,000 of original face value—both in this District and otherwise—that have been granted final approval. Thus, Plaintiffs and Lead Counsel submit that the proposed Settlement clearly "falls within the range of possible approval."

***Second***, the Settlement should be preliminarily approved because the proposed Plan of Allocation, which was based on similar plans of allocation prepared by, and was evaluated by Dr. Michael Hartzmark, an economist with significant experience in securities class actions, including MBS class actions, *see* Hartzmark Decl. ¶ 1, is "rationally related to the relative strengths and weaknesses of the respective claims asserted." *Sand*, 2011 WL 1338196, at *5 (quoting *Danieli*, 2009 WL 6583144, at *5). In particular, as Dr. Hartzmark explains, the Plan of Allocation is based on the damages formula set forth in Section 11(e) of the Securities Act. Hartzmark Decl. ¶¶ 9-10. Specifically, the Plan of Allocation tracks Section 11(e)'s damages formula, which provides that damages are the "difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the

13

value thereof as of the time such suit was brought, or (2) the price at which such security shall

have been disposed of in the market before suit, or (3) the price at which such security shall have

been disposed of after suit but before judgment if such damages shall be less than the damages

representing the difference between the amount paid for the security (not exceeding the price at

which the security was offered to the public) and the value thereof as of the time such suit was

brought." 15 U.S.C. § 77k(e). It accomplishes this by requiring a determination of, among other

things, "(a) the face value of the Certificates purchased; (b) when the Certificates were purchased

or acquired and the price paid; (c) any principal payments received; (d) whether the Certificates

were sold, and if so, when the Certificates were sold and the price received; and/or (e) if held on

May 21, 2008 (the day the lawsuit was filed), the price of the Certificates on that date."

Hartzmark Decl. ¶ 11. Based on this data, a Section 11 loss, if one exists, can be calculated. *See*

*generally id.*, ¶¶ 13-17.

Because the Plan of Allocation is grounded in the Securities Act's statutory damages

formula, it is "rationally related to the relative strengths and weaknesses of the respective claims

asserted." *Sand*, 2011 WL 1338196, at *5 (quoting *Danieli*, 2009 WL 6583144, at *5); *see also*

Hartzmark Decl. ¶ 20 ("[F]rom a financial perspective, the Plan of Allocation as described in the

Notice treats Claimants equitably," and is "consistent with … Section 11 of the Securities Act.").

Very similar plans of allocation devised by Dr. Hartzmark based on the same principles have

been approved in MBS settlements in this District over the last few years by Judges Preska,

Failla, and Crotty.

*Third*, the proposed Settlement should be preliminarily approved because it is the result

of arm's-length, non-collusive negotiation. Indeed, the Settlement was achieved following

multiple mediations with Judge Phillips beginning in 2015, which mediations were approved by

14

Plaintiffs, both of whom are sophisticated institutional investors. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in … settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) (the use of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion."); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (the participation of sophisticated institutional investor lead plaintiffs in the settlement process supports approval of settlement).

Moreover, the Settlement was reached only after fact discovery was largely completed. This included the depositions of *28* witnesses, including two experts in connection with class certification, and the review of over *9 million* pages of documents. This creates a presumption that the Settlement is fair, adequate, and reasonable, and should be preliminarily approved. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 93, 116 (2d Cir. 2005) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached … ***after meaningful discovery***.'") (emphasis added) (quoting Manual for Complex Litigation, Third, § 30.42 (1995)).

In sum, the proposed Settlement: (1) provides an excellent recovery to the Settlement Class, both *en toto* and in terms of the recovery per $1,000 of original face value; (2) will be allocated pursuant to a Plan of Allocation that was put together by an economic expert based on damages principles set out in the Securities Act; and (3) is the product of arms'-length, non-collusive negotiations facilitated by Judge Phillips, following the completion of exhaustive discovery. As such, the Settlement clearly "falls within the range of possible approval," with a Plan of Allocation that is "rationally related to the strengths and weaknesses of the respective

claims asserted," and is the result of "arms'-length," "non-collusive," and "informed" negotiations. Therefore, the Settlement should be preliminarily approved.

### B.   The Settlement Class Should Be Certified

The Stipulation contemplates the certification of a Settlement Class defined as:

> All Persons who purchased or otherwise acquired publicly offered Certificates representing interests in any of the Offerings prior to May 21, 2008, pursuant or traceable to the Registration Statement, and who were damaged thereby, *except* those Persons that timely and validly request exclusion from the class pursuant to and in accordance with the terms of the Preliminary Approval Order. Also excluded from the Settlement Class are all Defendants, their officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which any Defendant has or had a controlling interest, *except* for any Investment Vehicle.

The Court has already certified a class using essentially the same class definition. *See* ECF No. 245. The Settlement Class meets the requirements of Rule 23 for substantially the same reasons set forth in the Court's class certification decision. Thus, the Settlement Class as defined above should be certified.

### C.   Notice to the Settlement Class Should Be Approved

As outlined in the proposed Preliminary Approval Order, Plaintiffs will notify Settlement Class Members of the Settlement by mailing the Notice to all Settlement Class Members who can be identified with reasonable effort. The Notice will advise Settlement Class Members of (i) the pendency of the class action; (ii) the essential terms of this Settlement; and (iii) information regarding Lead Counsel's Motion for Attorneys' Fees and Reimbursement of Litigation Expenses. The Notice also will provide specifics on the date, time and place of the Final Approval Hearing and set forth the procedures for objecting to the Settlement and related motions. The proposed Preliminary Approval Order further requires Plaintiffs to cause the Notice to be sent to Settlement Class Members at their last known address and to identifiable

16

nominees for Settlement Class members. A Summary Notice will also be published in *The Wall Street Journal* and on *PR Newswire*.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 77z-1. The Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (citation and internal quotation marks omitted). The manner of providing notice, which includes individual notice by mail to all Settlement Class members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008); *Global Crossing*, 225 F.R.D. at 448-49.

## V.   PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule for the Settlement-related events in this case.

| EVENT | PROPOSED DATE/DEADLINE |
|---|---|
| **Publish Summary Notice of Settlement and Begin Mailing Long Form Notice to Settlement Class Members** | 10 business days after Preliminary Approval Order is entered |
| **Deadline to File Requests for Exclusion from Settlement** | 28 calendar days before Final Approval Hearing |
| **Deadline to File Motions for Final Approval of Settlement and for Attorneys' Fees and Reimbursement of Litigation Expenses** | 28 calendar days before Final Approval Hearing |
| **Objections to Motions for Final Approval and for Attorneys' Fees and Reimbursement of Litigation Expenses** | 14 calendar days before Final Approval Hearing |
| **Reply to Objections, if any** | 7 calendar days before Final Approval Hearing |
| **Final Approval Hearing in District Court** | 4 months from date of entry of Preliminary Approval Order |

## VI.   CONCLUSION

Plaintiffs respectfully request that the Court (i) preliminarily approve the settlement; (ii) certify the Settlement Class; (iii) approve the proposed form and manner of notice to Settlement Class Members; and (iv) schedule a hearing on Plaintiffs' motion for final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses. A proposed Preliminary Approval Order is being submitted herewith.[7]

---

[7] Plaintiffs respectfully request that the Court fix a date for the final hearing that is at least 120 days from the date it signs the proposed Preliminary Approval Order attached as Exhibit A to the Stipulation. *See* Preliminary Approval Order, ¶ 11 n.1.

Dated: March 15, 2017                    Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**


*/s/ Joel P. Laitman*
Joel P. Laitman (JL-8177)
Christopher Lometti (CL-9124)
Michael B. Eisenkraft (ME-6974)
Robert Dumas
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797

Steven J. Toll (*pro hac vice*)
Times Wang (*pro hac vice*)
1100 New York Avenue, N.W.
West Tower, Ste. 500
Washington, DC 20005
Telephone: (202) 408-4600

*Counsel for Plaintiffs and the Class*

19